UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

ESTATE OF JOHN R. DONOVAN, JR.,
deceased, JOHN J. DONOVAN, SR.,
executor,

           Plaintiff,

           v.                                    Civ. No. 04-10594 DPW

UNITED STATES OF AMERICA,

           Defendant.

---

## STIPULATION OF FACTS FOR MOTION FOR SUMMARY JUDGMENT

It is hereby stipulated by and between counsel for the plaintiff and counsel for the defendant, solely for purposes of the United States' Motion for Summary Judgment, as follows:

1. On January 4, 1999, the decedent, John J. Donovan, Jr., won the Massachusetts lottery. On this date he received the first of twenty $100,000 payments due from the state of Massachusetts.

2. The decedent died on July 23, 1999. His estate tax return was filed on April 9, 2000, showing no estate tax due. On Schedule F, Item 1 of the estate tax return, the estate showed as an asset of the estate, the remaining nineteen annual payments of $100,000 due from the state of Massachusetts. This asset was valued on the estate tax return at $367,482.00. This valuation was based upon an appraisal obtained by the estate. Attached as Exhibit A is a copy of the appraisal submitted by the estate with the estate tax

2

return.

3. Upon audit of the estate tax return, the IRS determined the value of the nineteen annual payments, using the IRS annuity tables found in Internal Revenue Code Section 7520, to be $1,091,553.28. If the court determines that the IRS annuity tables must be used to value the stream of the nineteen annual payments due from the state of Massachusetts, the parties agree that the value determined by the IRS on audit is the correct estate tax value of such payments.

4. The changes made by the IRS auditor to the decedent's estate tax return resulted in an increase in estate tax of $173,610.99 plus interest. This asserted deficiency in tax and interest was paid by the estate. On July 31, 2001, the estate filed a claim for refund of this tax and interest paid. The estate executed a Waiver of Statutory Notice of Claim Disallowance on May 1, 2002. This suit for refund was commenced on March 26, 2004.

5. When the decedent died, the remaining nineteen payments on his winning lottery ticket were payable to his estate. The state of Massachusetts has continued to make these payments to the decedent's estate after his death.

EDWARD DEFRANCESCHI
Attorney for Plaintiff

STEPHEN T. LYONS
Attorney for United States

Dated: October 22, 2004

# GORDON ASSOCIATES INC.

BUSINESS VALUATION & FINANCIAL CONSULTING

March 20, 2000

Sarah M. Richards
Palmer & Dodge, LLP
One Beacon Street
Boston, MA 02108-3190

Re: **Fair Market Value of John J. Donovan Lottery Ticket**

Dear Ms. Richards:

At your request, for estate tax purposes, we have determined the fair market value ("FMV") of John J. Donovan's Massachusetts State Lottery Ticket (the "Lottery Ticket") as of July 23, 1999, (the "Valuation Date").

Our conclusion of fair market value amounts to $367,882.

In the following sections of this report we have described the Lottery Ticket restrictions and the principles and procedures used to obtain fair market value.

## 1.0 Limitations

Gordon Associates ("Gordon") is a business valuation and financial consulting firm that regularly appraises intangible assets, businesses, business assets and business interests for estate and gift taxes, income taxes and for various business purposes. Gordon does not have any financial interest in the Lottery Ticket or in other assets held by Mr. Donovan on the Valuation Date.

In arriving at our estimate of value we have relied, in part, upon information provided by the Donovan Estate and under MGL Chapter 10, Section 28. Information provided by the Estate included the date of death of Mr. Donovan

(July 23, 1999), the remaining number of payments (19), the date of the first payment (January 4, 1999), and the amount of each payment ($100,000). This information was not audited or otherwise verified by us. Although we have no reason to believe that the information is not accurate, we cannot be responsible for any errors or omissions that may have occurred.

## 2.0 Fair Market Value

### 2.1 Definition

For estate tax purposes, fair market value is defined in Treas. Reg. 20.2031-1(b) as *"...that price at which a willing buyer will buy and a willing seller will sell a certain item of property, neither being under any compulsion to buy or sell and both having a reasonable knowledge of all relevant facts."*

### 2.2 Valuation Guidelines

Guidelines established for the valuation of interests in closely-held securities for estate tax purposes are set forth in Revenue Ruling 59-60, 1959-1 C.B.237. The ruling states that the following factors are to be taken into account during the valuation process:

1. The nature of the business including its history since organization
2. The economic status of the industry and the nation at the critical date of valuation
3. Asset values
4. Earnings
5. Dividends and dividend-paying capacity
6. The existence, or lack of, intangible value.
7. Sales of the stock and the size of the block to be valued
8. The selling price of comparable securities relative to their earnings, dividends and asset values.

The guidelines set forth by the IRS for valuing closely held securities are equally applicable to other, unlisted, income-producing assets. For purposes of this report, the Lottery Ticket is deemed to be an income-producing intangible asset, and fair market value is defined as the payment that would be made by any third party (buyer) to Donovan for the right to receive future cash flow payments arising from his Lottery Ticket. It is understood from your letter dated February 29, 2000, that Donovan was to receive 19 more payments of $100,000 each. He received his first payment on January 4, 1999. (It is assumed that future payments would also have been received on January 4.)

### 3.0 Valuation Procedures

Annual cash payments to a third party will be comprised of direct payments to the buyer, net of income taxes. The present value of these cash flow streams, appropriately discounted for risk and lack of marketability, will be representative of what a buyer would pay, i.e., the fair market value of the Lottery Ticket.

Considering that the Commonwealth of Massachusetts was in sound financial condition as of the Valuation Date, the risk on each annual payment that would have been made to Mr. Donovan is deemed equal to that of a 19 year Massachusetts tax-exempt G.O. bond, i.e. approximately 5.16% at that time.

### 3.1 Lack of Marketability

The holder of a Lottery Ticket faces a considerable hurdle in attempting to market the property. Accordingly, to estimate fair market value, a marketability discount must be applied to the present value of the annual payments. Factors contributing to the lack of marketability of Mr. Donovan's ticket include the provision, under MGL Chapter 10, Section 28, that future lottery payments may not be directly assigned to a third party (other than to a family member via a trust, or as a result of

3

a court order). Therefore a potential buyer would lack the ability to perfect a security interest; would be unable to collect if the seller became mentally incompetent or died; and would also suffer from lack of marketability as there would be no public market for his future cash flow stream.

Citing Shannon P. Pratt in his book "Valuing A Business":

> *"The importance of the marketability factor in business valuation has been gaining increasing recognition over the years. There is considerable evidence suggesting that the discount for lack of marketability factor alone...should average between 35 and 50 percent."*

A review of the valuation literature indicates that discounts of approximately 35% have been applied to stock and other properties that were not traded on public exchanges. <u>None of the restrictions imposed by statute, however, were present during these transactions.</u> Therefore, a marketability discount of at least 50% should be applied to the present value of the income stream in order to determine the fair market value of the Lottery Ticket.

In further support of a 50% lack of marketability discount we cite <u>Estate of Shackleford v. United States (E.D. Cal.99-2 USTC, 8/6/99)</u>.

The Court stated, in part:
> *The lack of a market must be considered in determining a fair valuation of property for estate tax purposes. It is proper to discount the value of an asset due to governmental restrictions*

4

> *restricting the asset's marketability....The realistic value of Mr. Shackleford's prize at the time of his death was $2,012,500.*

This amount, $2,012,500, represented 50% of $4,023,903, the present value of the future payments to Shackleford before discounting for lack of marketability.

### 3.2 Present Value Computations

On *Schedule 1*, the present value of cash flows generated by the Lottery Ticket has been computed and then discounted 50% for lack of marketability. These results are summarized below:

| | |
|---|---:|
| Present Value 7/23/99, 5.16%, 19 payments @ Jan.4 | $1,226,273 |
| Federal and state combined tax at 40% | (490,509) |
| Fair market value before marketability discount | $ 735,764 |
| Marketability Discount at 50% | 367,482 |
| Fair Market Value | $ 367,482 |

### 4.0 Conclusion of Value

Based upon the analysis set forth above we have concluded that the fair market value of the Lottery Ticket held by John J. Donovan on the date of his death, July 23, 1999, amounted to $367,882.

If you have questions regarding this letter report, please contact me in Boston at (617) 227-2707.

Very truly yours,

Eugene A. Sommer, ASA
Senior Vice President

5

SCHEDULE 1
John J. Donovan Lottery Ticket

Present Value, 19 Payments, 5.16%/Yr., July 23, 1999

| Payment Number | 23-Jul-99 | 4-Jan-00 | 4-Jan-01 | 4-Jan-02 | 4-Jan-03 | 4-Jan-04 | 4-Jan-05 | 4-Jan-06 | 4-Jan-07 | 4-Jan-08 |
|---|---|---|---|---|---|---|---|---|---|---|
| | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| | | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 |
| PV Factor at 5.16% (1) | | 0.9775 | 0.9295 | 0.8839 | 0.8406 | 0.7993 | 0.7601 | 0.7228 | 0.6873 | 0.6536 |
| | | $97,751 | $92,955 | $88,394 | $84,056 | $79,932 | $76,010 | $72,280 | $68,733 | $65,361 |

| Payment Number | 4-Jan-09 | 4-Jan-10 | 4-Jan-11 | 4-Jan-12 | 4-Jan-13 | 4-Jan-14 | 4-Jan-15 | 4-Jan-16 | 4-Jan-17 | 4-Jan-18 |
|---|---|---|---|---|---|---|---|---|---|---|
| | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 |
| PV Factor at 5.16% | 0.6215 | 0.5910 | 0.5620 | 0.5345 | 0.5082 | 0.4833 | 0.4596 | 0.4370 | 0.4156 | 0.3952 |
| | $62,154 | $59,104 | $56,204 | $53,446 | $50,824 | $48,330 | $45,958 | $43,703 | $41,559 | $39,520 |

Present Value, 7/23/99          $1,226,273
Less Income Tax at 40% (2)       (490,509)
                                  $735,764
Marketability Discount at 50%    ($367,882) (3)
Fair Market Value                 $367,882

Notes
1. Municipal bond rate as set forth in *The Wall Street Journal*, 7/26/99. Discount factor on jan 4, 2000 computed as $(1/1.0516)^{(0.452)}$. On Jan 4, 2001, factor becomes $(1/1.0516)^{(1.452)}$. This process is continued for 19 + years.
2. Assumed combined federal and Massachusetts tax rate.
3. See text for discussion of marketability discount.

<u>Curriculum Vitae</u>

| | |
|---|---|
| Name: | Eugene Abraham Sommer, A.S.A. |
| Residence: | 210 Beverly Road<br>Chestnut Hill, MA 02167 |
| Business Address: | Gordon Associates, Inc.<br>One State Street, Suite 750<br>Boston, Massachusetts 02109 |
| Occupation: | Valuation of Closely-Held Businesses; Financial Consulting |
| Education: | M.B.A. - Fordham University<br>M.M.E. - New York University<br>B.M.E. - College of the City of New York |
| Professional Designations, Societies: | American Society of Appraisers, Senior Member<br>Professional Engineer, New York State<br>Pi Tau Sigma (National Honorary Mechanical Engineering Society)<br>Massachusetts Continuing Legal Education, Inc., Visiting Faculty Member<br>FDIC Approved Business Appraiser |
| Professional Experience: | <u>Vice President, Gordon Associates, Inc.</u>, 1993 - 1997;<br><u>Senior Vice President, Gordon Associates, Inc.</u>, 1998 - Present<br>Performs and directs valuations of closely-held businesses, business interests, ESOPs, intangible assets and conducts lost profit analyses for fairness opinions, mergers & acquisitions, bankruptcies, matrimonial disputes, income tax studies, estate planning and expert witness testimony.<br><br><u>Director, Coopers & Lybrand</u>, 1985 - 1992;<br>Directed a group of economists, financial analysts and engineers in valuing closely-held businesses and assets of business entities, organizations and individuals. Valuations are performed for business litigation support, divorce or matrimonial dispute resolution, gift, estate and federal income tax purposes and in connection with merger and acquisition consulting services. |

Between 1979 and 1985, Mr. Sommer worked in the New York City office of Coopers & Lybrand as a Manager of Valuation Services. During that period, he directed various groups of professional engineers, primarily for the purpose of valuing tangible and intangible assets, such as real estate, plant and equipment, inventory, partnership and shareholder interest, books of business, customer lists, covenants not to compete, leasehold interests, patents, franchises, trademarks, tradenames, and contract rights.

<u>Internal Revenue Service, 1975 - 1979</u>;

Between 1975 and 1979, Mr. Sommer worked as a valuation engineer for the Internal Revenue Service in New York City. In that capacity, he performed asset and stock valuations in connection with audits of the largest national and international corporations.

| | |
|---|---|
| Articles: | "The Business Valuation Expert Can Make or Break Your Case", Massachusetts Lawyers Weekly, August 29, 1994 |
| Lectures and Seminars: | The Foundation for Continuing Education<br>"Valuation of Closely Held Companies"<br>June 3, 1994 |
| | Newton Marriott Hotel<br>"Valuations of Limited Partnership Interests"<br>February 1, 1994. |
| | The Estate Planning Council of Hamden County, Inc.<br>"Valuation of Closely-Held Businesses," 1988 and "Debate with IRS Estate Tax Examiner," 1992. |
| | The Tax Club of Greater Springfield<br>"Current Valuation Issues"<br>February 27, 1989. |
| | Insurance Library Association of Boston<br>"Tax Issues in Buying, Selling, Merging, or Setting Up Insurance Agencies," 1989 and 1990. |

Massachusetts Continuing Legal Education, Inc.
Family Law Trial Advocacy - Moot Court Expert Witness
1990, 1991 and 1992

Various Presentations before Law Firms regarding Valuation Issues, 1989-1992.

| | |
|---|---|
| Expert Testimony: | Federal District and Family/Probate Courts in Albany and Mineola, New York; Boston, Worcester, Springfield, Salem, Marlboro and Cambridge, Massachusetts; Nashua, New Hampshire; and Kansas City, Kansas. Accepted for expert witness testimony in Providence, Rhode Island and Hartford, Connecticut. |