UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ESTATE OF JOHN R. DONOVAN, DECEASED,
JOHN J. DONOVAN, SR., EXECUTOR

        Plaintiff,

    v.                               Civ. No. 04-10594 DPW

UNITED STATES OF AMERICA,

        Defendant.

UNITED STATES' BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

MICHAEL J. SULLIVAN
United States Attorney

STEPHEN T. LYONS
Senior Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 307-6546

Barbara Healy Smith
Assistant United States Attorney

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii,iii

ISSUE PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

APPLICATION OF SUMMARY JUDGMENT PRINCIPLES . . . . . . . . . . . . . . . . . . . . . . . . .1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

ii

# TABLE OF AUTHORITIES

## FEDERAL CASES

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Bank of California v. United States, 672 F.2d 758 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . 15

Barnhart v.Walton, 535 U.S. 212, 122 S. Ct. 1265 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Baylev. v. Commissioner, 624 F.2d 884 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Estate of Bird v. United States, 534 F.2d 1214 (6th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . 7

Celotex v. Catrett, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984) . . . . . 11

Cloverdale Equipment Co. v. Simon Aerials, Inc., 869 F.2d 934 (6th Cir. 1989) . . . . . . . . . . 2

Estate of Cook v. Commissioner, 82 T.C.M. 154 (2001), aff'd 349 F.3d 850 (5th Cir. 2003)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,13,15

E. Norman Peterson Marital Trust v. Commissioner, 78 F.3d 795 (2d Cir. 1996) . . . . . . . . . 11

Frank v. D'Ambrosi, 4 F.3d 1378 (6th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fulman v. United States, 434 U.S. 528 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Estate of Gribauskas v. Commissioner, 116 T.C. 142, rev'd, 342 F.2d 85 (2nd Cir. 2003) . . 8,14

Guggenheim v. Rasquin, 312 U.S. 254 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Hanley v. U.S., 1994 WL 723678 (1st Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Hospital Corp. of America v. Commissioner, 2003 WL 22454298 . . . . . . . . . . . . . . . . . . . . . 11

Ithaca Trust v. United States, 279 U.S. 151 (1929) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Mailloux v. Commissioner, 320 F.2d 60 (5th Cir. 1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) . . . . . . . . . . . 2

McDaniels v. United States, 300 F.3d 407 (4th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

McMurtry v. Commissioner, 203 F.2d 659 (1st Cir. 1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Miami Beach First National Bank v. United States, 443 F.2d 116 (5th Cir. 1971) . . . . . . . . . 15

Miller v. United States, 65 F.3d 687 (8th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

National Muffler Dealers Association v. United States, 440 U.S. 472 (1979) . . . . . . . . . . . . . 12

NationsBank of N. C., N. A. v. Variable Annuity Life Insurance Co., 513 U.S. 251 (1995). . . .11

O'Reilly v. Commissioner, 973 F.2d 1403 (8th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Redlark v. Commissioner, 141 F.3d 936 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Rowan Cos. v. United States, 452 U.S. 247 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Estate of Shackleford v. United States, 262 F.3d 1028 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . 8

Estate of Shapiro v. Commissioner, T.C.M. 1992-483 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Tate & Lyle, Inc. v. Commissioner, 87 F.3d 99 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 12

Trust Services of America, Inc. v. United States, 885 F.2d 561 (9th Cir. 1989) . . . . . . . . . . . 17

United States v. Mead Corp., 533 U.S. 218 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## STATE CASES

First Natl.Ins. Co. of Am. v. Commonwealth, 376 Mass. 248 (1978) . . . . . . . . . . . . . . . . . . . 8

Midland States Life Insurance Co. v. Cardillo, 59 Mass. App. Ct. 531 (2003) . . . . . . . . . . . . 8

Singer Friedlander Corp. v. State Lottery Commission, 423 Mass. 562 (1996) . . . . . . . . . . . . 9

iii

# FEDERAL STATUTES

IRC §§2031, 2033, 2039 and 7520 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim
IRC §2051 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
IRC §2702(a)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
IRC §7805 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,12

# TREASURY REGULATIONS

Reg. §1.664-2(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Reg. §1.664-2(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Reg. §20.2031-1(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4
Reg. §20.2031-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
Reg. § 20.2031-7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim
Reg. §20.2039-1(b)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,7
Reg. §§20.2039-2(c)(1)(viii) and (c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4
Reg. § 20.7520-1(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,6
Reg. §§ 20.7520-1(b)(1) and (2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
Reg. §20.7520-1(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4
Reg. §20.7520-3(a,b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim
Reg. §20.7520-3(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,8
Reg. §25.2512-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
Temp. Reg. §20.7520-1T . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

# MISCELLANEOUS

5 Boris I. Bittker & Lawrence Lokken, Federal Taxation of Income, Estates and Gifts, ¶135.10 at
    135-82 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
Gerzog, The Lottery Cases and Ithaca Trust, 101 Tax Notes 289, 291 (October 13, 2003) . . . 20
Mass. Gen. Law, chapter 10, section 28 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,10
Rev. Rul. 59-60, 1959-1 C.B. 237 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

iv

## ISSUE PRESENTED

Internal Revenue Code (IRC) Sections 2031 and 2033 provide that an estate shall include in its estate tax return the value of all interests in property the decedent owned at the time of his death.[1]  The estate tax regulations under those sections provide that the value to be included in the estate tax return shall be the fair market value of the decedent's interest in the property as of the date of the decedent's death or the alternate valuation date if elected.  IRC §7520 and Treasury Regulation §§20.2031-7, 20.7520-1(a)(1) and 20.7520-3(a,b) provide that the value of an annuity, for estate tax purposes, shall be its present value as determined under the tables found in the regulations under IRC §§2031 and 7520.  Those regulations do not provide any special adjustment for "marketability". On the date of the decedent's death, he owned the right to 19 annual payments from the State of Massachusetts as the result of winning a Massachusetts lottery.  That right is a private annuity.  Must the tables in IRC §§2031 and 7520 be used to determine the fair market value of those nineteen payments?

---

[1]All relevant IRC sections and the regulations thereunder are attached as Exhibit A.

STATEMENT OF FACTS

The facts pertaining to this motion have been submitted to the Court in a separate stipulation. That stipulation was filed pursuant to the Court's Scheduling Order dated August 17, 2004. The facts in the stipulation will not be repeated, but several additional comments regarding the stipulated facts are warranted. If the Court determines that the annuity tables must be used to determine the fair market value of the nineteen payments in issue (i.e., the annuity), there will be no need for the court to make any calculations of the value of the annuity for estate tax purposes since the parties have stipulated as to its fair market value under the tables.[2] If, on the other hand, the Court determines, as the plaintiff contends, that the tables can not be used to determine the value of the annuity because they do not take into account "lack of marketability", then expert testimony will be necessary to determine such value. The amount of any refund would also have to be redetermined if the tables are not used. Because all of the documents referred to in the Stipulation are attached to the plaintiff's complaint, they are not attached to the stipulation.

APPLICATION OF SUMMARY JUDGMENT PRINCIPLES

A trilogy of Supreme Court cases confirms a clear intent on the part of the federal judiciary to encourage motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); and Celotex v. Catrett, 477 U.S. 317 (1986).

---

[2]Although the value of the annuity for estate tax purposes is the only issue in this case, a recalculations of the estate tax due may have to be made even if the Court finds that the annuity tables must be used since the plaintiff may claim an additional deduction for reasonable attorneys fees incurred in prosecuting this action.

2

The three Supreme Court cases make it clear that the initial procedural burden on the moving party is to show a lack of genuine issue of material fact regarding the non-moving party's claims or defenses. This burden may be met by either demonstrating a lack of material issue of fact or by showing that the non-moving party can not set forth facts necessary to prevail at trial. Celotex, supra. The burden then shifts to the non-moving party to show there are material facts in issue. A moving party who does not have the burden of proof at trial (here the United States) may properly support a motion for summary judgment by showing the court that there appears to be no evidence to support the non-moving party's case. Id. If the motion is so supported, the party opposing the motion must then demonstrate with "concrete evidence" that there is a genuine issue of material fact for trial. Id.; Frank v. D'Ambrosi, 4 F.3d 1378, 1384 (6th Cir. 1993).

Although the facts must be considered in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. at 586. More than a "scintilla" of evidence must be produced by the non-moving party to defeat the motion for summary judgment. Cloverdale Equipment Co. v. Simon Aerials, Inc., 869 F. 2d 934, 937 (6th Cir. 1989).[3] If no rational fact finder could find in the non-movant's favor, there is no material issue of fact and summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). In essence, the standards for granting a motion for summary judgment are

---

[3]The Court may have to be a fact finder in considering the motion for summary judgment for the limited purpose of weighing the reasonableness and persuasiveness of facts and the inferences to be drawn therefrom.

3

the same as those for granting a verdict as a matter of law pursuant to Rule 50(a) of the Federal

Rules of Civil Procedure.  Liberty Lobby, supra.

   The material facts as they relate to the issues in this motion are not in dispute.  Thus the

granting of summary judgment in favor of the United States and against the plaintiff is

appropriate.

ARGUMENT

THE ACTUARIAL TABLES IN IRC §§2031 AND 7520 MUST BE USED TO DETERMINE
THE FAIR MARKET VALUE OF THE 19 PAYMENTS REMAINING DUE THE
DECEDENT FROM HIS WINNING MASSACHUSETTS LOTTERY TICKET AT THE TIME
OF HIS DEATH

   IRC §2031 imposes a tax on the "taxable estate of every decedent who is a citizen or

resident of the United States."  The "taxable estate" is defined by IRC §2051 to be the value of

the "gross estate," as determined under IRC §2031, minus any applicable deductions.  Under IRC

§2031, the value of the gross estate includes 'the value at the time of death of all property, real or

personal, tangible or intangible," to the extent provided by IRC §§2033 through 2045.

   Section 2033 provides that "[t]he value of the gross estate shall include the value of all

property to the extent of the interest therein of the decedent at the time of his death."  Under

Section 2039(a), the value of an annuity is includable in the gross estate.  The amount includable

is "proportionate to that part of the purchase price therefor contributed by the decedent."  IRC

§2039(b). While the term "annuity" is not defined in IRC §2039, Estate Tax Reg. §20.2039-

1(b)(ii) broadly defines an annuity as one or more payments extending over any period of time

that are made under the terms of a contract or agreement.

   Once it is determined that the decedent's interest in an annuity must be included in his

gross estate, whether it be under IRC §2033 or §2039, the value of the annuity for estate tax

4

purposes must be determined.  In general, the value of an item included in the gross estate is the

fair market value of that item at the time of a decedent's death.  IRC §2031; Treas. Reg.

§20.2031-1(b).  The fair market value of property is measured by "the price at which the property

would change hands between a willing buyer and a willing seller, neither being under any

compulsion to buy or to sell and both having reasonable knowledge of the relevant facts." Treas.

Reg. § 20.2031-1(b).  With respect to certain types of property the regulations are more specific

in setting forth how the value of that property is determined for estate tax purposes. The way in

which the value of an annuity is determined is found at reg. §20.2031-7.

Section 20.2031-7(a) provides that except as otherwise provided in paragraph

(b)(commercial annuities and insurance contracts)[4] and §20.7520-3(b)(dealing with limits on the

use of the tables regarding certain beneficial interests), the value of an annuity for estate tax

purposes is the present value of the annuity as determined under reg. §20.2031-7(d).[5]  See also

Reg. §20.7520-1(a)(1) to the same effect.[6]  Reg. §20.2031-7(d)(1) states that for decedents whose

valuation date is after April 30, 1999, and except as otherwise provided in Reg. §§20.2031-7(b)

and 20.7520-3(b), the value of an annuity for estate tax purposes is the present value determined

---

[4]The plaintiff has never contended that the lottery payments constitute a commercial annuity issued by a company regularly engaged in their sale as required under Reg §20.2031-7(b).  As noted below in the text, it is too late now to make such an argument and at any rate it is beyond question that these payments are a private, not a commercial, annuity.  As such, their value for estate tax purposes must be determined under the actuarial tables found in IRC §§2031 and 7520.

[5]Estate Tax Reg. §20.7520-3(b) applies to estates of decedents dying after December 13, 1995. See Estate Tax Reg. §20.7520-3(c). Estate Tax Reg. §20.2031-7(d) applies to valuation dates that are after April 30, 1999.  The valuation date in this case is July 23, 1999, the date of death of the decedent.  See Exhibit A to the plaintiff's complaint.

[6]While Reg. §20.7520-1(a)(1) expired on April 30, 1999 (see Reg. §20.7520-1(d)), its existence was seamlessly continued by Temp. Reg. §20.7520-1T.  This latter regulation is effective for valuation dates after April 30, 1999. See Temp. Reg. §20.7520-1T(d).  The only reason for the issuance of this temporary regulation was to update the annuity tables to reflect the most current census data as required by statute.  See Treasury Decision 8819 dated April 29, 1999.

5

by using the tables in IRC §7520. Reg. §20.2031-7(d)(2(iv)(A-C) provides for the specific way in which the present value of an annuity is calculated. The present value is determined by using the interest rate component provided in IRC §7520(a) and the mortality component provided by tables contained in Treas. Reg. § 20.2031-7. <u>See</u> Treas. Reg. §§ 20.7520-1(b)(1) and (2).[7] Application of the valuation tables in IRC §§7520 and 2031 results in a value of $1,091,553.28 for the lottery winnings at issue here. Stip. para. 3.

To be sure, the tables in IRC §7520 are not used to determine the value for estate tax purposes of all annuities. In general, IRC §7520 states that the value of all annuities shall be determined under the tables prescribed by the Secretary of the Treasury unless exempted by the provisions of IRC §7520(b). Specifically, IRC §7520(a) states that for purposes of Title 26 (the Internal Revenue Code), the value of an annuity shall be determined using the tables prescribed by the Secretary. IRC §7520(b) states that these tables shall not apply to certain statutory provisions (Reg. §20.7520-3(a) sets out those statutory provisions and is applicable as of May 1, 1989) and to any other provisions specified in the regulations (these regulations are found at 20.7520-3(b) and are effective for decedents dying after December 13, 1995). See also Reg. §20.2031-7(a,b) where it is provided the value of commercial annuities for estate tax purposes is determined outside the actuarial tables.

---

[7]Throughout this brief, any reference to the IRC §7520 tables includes the mortality tables contained in Reg. §20.2031-7.

6

After December 13, 1995,[8] the only exceptions to the use of the §7520 actuarial tables to determine the value for estate tax purposes of an annuity, other than commercial annuities or life insurance contracts, are found in Reg. §20.7520-3(a,b).  See Treas. Reg. § 20.7520-1(a)(1) providing that annuities, etc. are valued using the actuarial tables prescribed under §7520 "[e]xcept as otherwise provided in this section and §20.7520-3... ."  Reg. §20.2031-7(a) is to the same effect.  Reg. §20.7520-3(b) was promulgated pursuant to the congressional mandate found in IRC §7520(b).  That regulation is applicable to transactions occurring after December 13, 1995.  No discussion of the exceptions found in Reg. §20.7520-3(a) is warranted since that regulation does not apply here.

There are three exceptions to the use of the §7520 tables found in Reg. §20.7520-3(b). Reg. §20.7520-3(b)(1)(ii) provides that the standard section 7520 annuity factor may not be used to value an annuity that is a restricted beneficial interest, that is, an annuity subject to any "contingency, power, or other restriction, whether the restriction is provided for by the terms of a trust, will, or other governing instrument or is caused by other circumstances."  Section 20.7520-3(b)(2)(I) states that a standard section 7520 annuity factor may not be used to determine the present value of an annuity for a specified term of years or the life of one or more individuals unless the effect of the trust, will, or other governing instrument is to ensure that the annuity will be paid for the entire defined period. In the case of an annuity payable from a trust or

_____

[8]The United States does not concede that even before this date, lack of marketability of an annuity, whose value would otherwise be determined under the tables, was a reason to abandon the tables in favor of the willing buyer/willing seller standard to arrive at the annuity's value for estate tax purposes.  See Estate of Cook v. Commissioner, 82 TCM 154 (2001), aff'd 349 F.3d 850 (5th Cir. 2003), where the decedent died before December 13, 1995, owning the right to 19 annual payments from a winning Texas lottery ticket and the court found the actuarial tables must be used to determine the value of the remaining 19 payments for estate tax purposes.  As noted below in the text, however, lack of marketability of an annuity is simply not an issue after December 13, 1995, in determining whether the value for estate tax purposes of a stream of unpaid installments from a winning lottery ticket must be calculated using the actuarial tables.

7

other limited fund, the annuity is not considered as payable for the entire defined period, if the fund is expected to exhaust prior to termination of the annuity term. Section 20.7520-3(b)(3) provides that the mortality component prescribed under section 7520 may not be used to determine the present value of an annuity if an individual who is a measuring life is terminally ill at the time of the decedent's death.

Turning now to the facts of this case, it must first be determined whether the 19 remaining payments are an annuity within the meaning of IRC §§2039 and 7520 and the regulations under IRC §§2031, 2039 and 7520.[9] If the payments are such an annuity, then it must be determined whether any of the exceptions to the use of the tables applies. It is difficult to determine whether the plaintiff is contending that the 19 payments due from the decedent's winning lottery ticket do not constitute an annuity within the meaning of the relevant statutes. See plaintiff's claim for refund, Exhibit D to plaintiff's complaint, and plaintiff's answers to United States First Set of Interrogatories number two, which are attached as Exhibit B. There is, however, no room for such a contention.[10]

First, Estate Tax Reg. §20.2039-1(b)(ii) broadly defines an annuity as one or more payments extending over any period of time that are made under the terms of a contract or

---

[9]Congress clearly intended to distinguish between annuities and other kinds of assets. Section 2039, enacted in 1954, stands alone among the inclusion statutes (IRC §§2031-2045) as not referring to property. This distinction was necessary because prior to 1954, the estate tax provisions required the inclusion of property and interests in property but not annuities. This difference reflects the long-standing distinction Congress has made between the character of annuities and other property interests, and perforce, the way in which they are valued.

[10]There are no specific grounds for relief set forth in the plaintiff's claim for refund. Rather the plaintiff's claim merely states it is awaiting the outcome of two cases to see if his original valuation is correct. It is axiomatic that this court only has jurisdiction to consider those grounds asserted in the plaintiff's claim for refund and that any other grounds for relief asserted by the plaintiff in this action can not be considered by this Court. See Hanley v. U.S., 1994 WL 723678 (1st Cir. 1994). See also Estate of Bird v. United States, 534 F. 2d 1214, 1219 (6th Cir. 1976) ("Numerous cases sustain the principle that the grounds on which a claim for a tax refund is made must be specifically set forth in the claim for refund itself, otherwise the court in a refund action is without jurisdiction to consider them." [citations omitted]).

8

agreement.[11] Second, Reg. §20.7520-3(b)(1)(i)(A) provides that an annuity "is the right to receive

a fixed dollar amount at the end of each year during one or more measuring lives or for some

other defined period." This regulation is effective for transactions after December 13, 1995. See

Reg. §20.7520-3(c). Lastly, the only cases to have addressed this issue have concluded that a

stream of lottery payments that remain unpaid at the date of the owner/decedent's death is a

private annuity for purposes of IRC §§2031 and 7520. In Estate of Gribauskas v. Commissioner,

116 T.C. at 150-151, rev'd on other grounds, 342 F.2d 85 (2nd Cir. 2003), where the issue was

whether the value for estate tax purposes of the remaining lottery payments owed the decedent

had to be determined using the actuarial tables or could be valued using the more general willing-

buyer/willing-seller standard, the Tax Court concluded that whether the stream of lottery

payments in issue were included in the decedent's gross estate pursuant to IRC §2033 or §2039,

those lottery payments still constituted a private annuity for purposes of IRC §§2031 and 7520.

In Estate of Cook, supra, the court, following the Tax Court's holding in Estate of Gribauskas

that the lottery payments were a private annuity, stated (p. 855) that "a private annuity may be

defined broadly, as the right to a series of fixed payments independent of market forces. The

lottery prize, an unsecured right to a series of fixed payments for a certain term with virtually no

risk of default, falls within the definition of a private annuity, valuable under the §7520 tables."

In accord, Estate of Shackleford v. United States, 262 F.3d 1028, 1031 (9th Cir. 2001).

Thus, at least after December 13, 1995, the value for estate tax purposes of every annuity

must be determined using the actuarial tables, unless it is specifically excepted under either Reg.

---

[11]The plaintiff has never contended that the decedent's relationship to the Massachusetts Lottery Commission was other than a contractual one and for good reason. It has long been held in Massachusetts that there is a direct contractual relationship between the Lottery and a lottery winner. See Midland States Life Ins. Co. v. Cardillo, 59 Mass. App. Ct. 531, 537 (2003), citing First Natl. Ins. Co. of Am. v. Commonwealth, 376 Mass. 248, 250 (1978).

9

§§20.2031-7(a,b) or 20.7520-3(a,b).  As noted above, the commercial annuity exception in Reg.

§20.2031-7(b) and the statutory exceptions mentioned in IRC §7520 (b) and delineated in Reg.

§20.7520-3(a) are not applicable and thus will not be discussed any further.  As to the exceptions

to using the §7520 tables found in Reg. §20.7520-3(b), none of those exceptions apply in this

case. Specifically, the lottery winnings will not be paid from a fund that is expected to exhaust

prior to the last annuity payment (§20.7520-3 (b) (2) (i)) nor is the annuity subject to any

contingency that would cause the payments to terminate (§20.7520-3(b)(1)(ii)) since it is the

State of Massachusetts that will be making the payments.  Finally, the lottery winning payments

are not based on a measuring life of an individual who is terminally ill (§20.7520-3 (b) (3)).  In

fact, the payments are not based on the measuring life of anyone but rather are based only on the

passage of time.

　　　　While it is not entirely clear from the plaintiff's claim for refund, he may be contending

that the annuity constitutes a "restricted beneficial interest" within the meaning of Reg.

§20.7520-3(b)(1)(ii), because Massachusetts law prohibits the transfer, etc. of the annuity.[12]

However, the restriction imposed under Massachusetts law on transferring the lottery winnings is

not the type of restriction referenced in the regulations that would justify departure from the use

of the actuarial tables. Section 20.7520-3(b)(1)(ii) provides a general rule defining a "restricted

---

[12]The pertinent provision of Massachusetts law, as in effect on July 23, 1999, the valuation date in this case, Mass. Gen. Law, chapter 10, section 28, provides as follows: "No right of any person to a prize shall be assignable, except that payment of any prize may be made to the estate of a deceased prize winner or to the IV-D agency as set forth in chapter one hundred and nineteen A, and except that any person pursuant to an appropriate judicial order may be paid the prize to which the winner is entitled, and except that the commission may, by regulations adopted pursuant to section twenty-four, permit assignment of prizes for purposes of paying estate and inheritance taxes, or to a trust the beneficiaries of which are the prize winner, his mother, father, children, grandchildren, brothers, sisters, or spouse. Neither the commission nor the director shall be liable for the payment of a prize pursuant to this section. This section prevails over section 9-405 of chapter 106."  This section was later amended, effective July 1, 2004. That amendment allowed voluntary assignment of the lottery winnings under certain limited circumstances.  This amendment was the legislative response to the decision in Singer Friedlander Corp. v. State Lottery Commission, 423 Mass. 562 (1996)(holding that only involuntary court-ordered assignments were permitted under section 28).

10

beneficial interest" as an annuity that is subject to a contingency, power, or other restriction. Used in this manner, the term "restriction" references other limitations similar to contingencies (e.g., events that if occurring can result in termination of the payment of the annuity) or powers (e.g., powers to divert the annuity payments, or the funds from which the annuity payment is to be made), such that it is doubtful the annuity payment can be made.

Reg. §20.7520-3(b)(2)(i) provides specific rules regarding annuities and makes it clear that the phrase "contingency, power, or other restriction" references only limitations that impact on the ability of the payor to make the payments for the entire defined period. Examples illustrating limitations on annuity, income, remainder, and reversionary interests that constitute "restricted beneficial interests" are set forth in Reg. §20.7520-3(b)(2)(v), Examples 1 through 5, and Reg. §25.7520-3(b)(2)(v), Example 5. The examples in Reg. §20.7520-3(b)(2)(v) involve income, remainder, and reversionary interests focusing on limitations or invasion powers that impinge on the ability to pay the interest. Similarly, the example illustrating an annuity that is a restricted beneficial interest focuses on limitations that make it doubtful whether the annuity will be paid for the defined period. See, e.g., Reg. §25.7520-3(b) (2) (v) , Example 5.

Massachusetts law restricting transfers of the annuity (see Mass. Gen. Laws, chapter 10, section 28 quoted above) does not affect the right of an annuitant to receive all of the future payments. Thus, the restriction on transferability is not a restriction that would cause the annuity to be characterized as a restricted beneficial interest under Reg. §20.7520-3(b)(1)(ii). Because the right of decedent's estate or beneficiaries to receive the annuity payments was not restricted or limited in a manner described in Reg. §20.7520-3(b)(1)(ii), the remaining stream of annual lottery payments must be valued for estate tax purposes using the tables prescribed under IRC §7520.

11

The plaintiff's main line of defense seems to be its contention that the regulations promulgated under IRC §§2031 and 7520, especially legislative Reg. §20.7520-3(b), are invalid because they do not take into account the lack of marketability of the annuity.  The standard applicable to determining the validity of Treasury regulations is well established.  In general, Treasury regulations, promulgated under the Secretary's general rule-making power found in IRC §7805, are valid and must be upheld "if they implement the congressional mandate in some reasonable manner," Rowan Cos. v. United States, 452 U.S. 247, 252 (1981), or if they are "based on a permissible construction of the statute," Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 (1984).[13]  The Supreme Court has restated, in NationsBank of N. C., N. A. v. Variable Annuity Life Ins. Co., 513 U.S. 251, 257 (1995), the standard as follows: "Under the formulation now familiar, when we confront an expert administrator's statutory exposition, we inquire first whether 'the intent of Congress is clear' as to 'the precise question at issue.' Chevron U.S.A. Inc. v. Natural Resources Defense Counsel, Inc., 467 U. S. 837, 842 (1984).  If so, 'that is the end of the matter.' Ibid."  See also McDaniels v. United States, 300 F.3d 407, 411 (4th Cir. 2002). "If, however, the statute 'is silent or ambiguous with respect to the specific issue,' we must sustain the Agency's interpretation if it is 'based on a permissible construction' of the Act. * * *.  Hence we must decide (1) whether the statute unambiguously forbids the Agency's interpretation, and, if not, (2) whether the

---

[13]There is no distinction in legal effect between temporary regulations and permanent regulations.  See Hospital Corp. of America v. Commissioner, 2003 WL 22454298 at p. 2, No. 01-1810 (6th Cir. Oct. 30, 2003) ("the agency regulations at issue in this case [temporary revised treasury regulations] should be evaluated under the principles of Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984) . . . . ".  See also  E. Norman Peterson Marital Trust v. Commissioner, 78 F.3d 795, 798 (2d Cir. 1996) ("[u]ntil the passage of final regulations, temporary regulations are entitled to the same weight we accord to final regulations"); Redlark v. Commissioner, 141 F.3d 936, 939-940 (9th Cir. 1998)(assessing validity of Treas. Reg. § 1.163-9T by reference to standard generally applicable to final regulations); Miller v. United States, 65 F.3d 687, 689 (8th Cir. 1995) (same).

12

interpretation, for other reasons, exceeds the bounds of the permissible." Barnhart v.Walton, 535 U.S. 212, 122 S.Ct. 1265, 1269 (2002), quoting Chevron USA, Inc. v. Natural Res. Def. Council, 467 U.S. 837, 842-843 (1984).

Thus, a reviewing court is not free to set aside a regulation simply because the Court would have implemented the statute in a different manner.  See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. at 843 n.11  ("The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding.").  Rather, "[t]he choice among reasonable interpretations is for the Commissioner, not the courts." National Muffler Dealers Ass'n v. United States, 440 U. S. 472, 488 (1979).  See Fulman v. United States, 434 U.S. 528, 534, 536 (1978) (upholding regulation that had a "reasonable basis" in the statutory history, even though the taxpayer's challenge to its policy had "logical force"); see also Tate & Lyle, Inc. v. Commissioner, 87 F.3d 99, 104 (3d Cir. 1996).

As noted above, Reg. §20.7520-3(b) was promulgated pursuant to the Congressional mandate in IRC §7520(b).  Where Congress has specifically delegated to the Secretary of the Treasury the duty to prescribe rules under a certain statute or statutes, such as the legislative delegation to the Secretary in IRC §7520(b) to set forth the rules under which the IRC §7520 tables will not apply, those rules are entitled to even more deference than regulations that are promulgated under the Secretary's general interpretative rulemaking powers found in IRC §7805(a).  As the Supreme Court recently noted  "when Congress has 'explicitly left a gap for an agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation,' Chevron, 467 U.S. at 843-844, and any ensuing regulation

13

is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute." United States v. Mead Corp., 533 U.S. 218, 227 (2001).

The validity of the regulations in question must be evaluated under the standards set forth above. Since there can be no question that the intent of Congress, as set forth in IRC §§2031 and 7520(b), is not clear as to the precise question at issue, the regulations are valid whether they are viewed as interpretative or legislative. If they are interpretative, they must be accepted as valid because the Secretary's interpretation is reasonable. If the regulation is legislative, which clearly seems to be the case for Reg. §20.7520-3(b), it is valid because it is not arbitrary or capricious.

The tables prescribed under section 7520 are compiled based on three assumptions: (1) that funds will earn an assumed rate of return; (2) that the fund from which the interest is paid will not exhaust or be otherwise diverted; and (3) if the duration of the interest is measured by an individual's life, then the individual measuring life has a normal life expectancy. Departure from the tables has always been authorized under pre-regulation case law (at least before Shackleford and Gribauskas) only where the actual facts presented (e.g., the rate of return of the trust or the life expectancy of the measuring life) are so significantly different from the underlying assumptions on which the tables are based, that use of the tables produces an unrealistic result. See Estate of Cook v. Commissioner, 349 F.3d 850, 855 (5th Cir. 2003) and the cases cited therein.

As discussed above, the regulations do not authorize departure from the tables for lack of marketability.[14] As the court pointed out in Estate of Cook v. Commissioner (p. 856),"[t1he

---

[14]In answer to the United States' Request to Admit numbered 2, attached as Exhibit B to this brief, the plaintiff seems to contend that there is a market for unassignable Massachusetts lottery winnings. The evidence cited by the plaintiff does not support this contention. For example, the internet sites listed by the plaintiff, which may not have even been in existence on the valuation date, seem to say that they will not purchase Massachusetts lottery winnings because they are unassignable. In addition, the two Massachusetts cases cited by the plaintiff hold that only

14

"non-marketability of a private annuity is an assumption underlying the annuity tables" because a private annuity does not have as one element of its value, lack of marketability.  See also Estate of Gribauskas, supra, 116 T.C. at p. 164, rev'd on other grounds 342 F.2d 85 ("the value of an annuity . . . exists solely in the anticipated payments, and inability to prematurely liquidate these installments does not lessen the value of an enforceable right to $X annually for X number of years.")  Thus, the position adopted in the regulations, that lack of marketability of an annuity does not justify departure from the tables, is perfectly consistent with the enactment of section 7520 mandating the use of prescribed tables that are based on the assumption that the annuity interest to be valued is not marketable.

Further, if marketability is an appropriate factor to be taken into account in determining whether the statutorily prescribed tables apply, then the tables would rarely, if ever, apply. Virtually all temporary interests valued under the tables either cannot be transferred, or are unmarketable. For example, charitable remainder annuity trusts must be valued under the §7520 tables notwithstanding that the lead interest in such trust cannot be transferred. See Reg. §1.664-2(c)(requiring use of actuarial tables); Reg. §1.664-2(a)(4) (prohibiting transfer). Similarly, annuities includable under IRC §2039, such as survivor annuities payable under qualified plans, are valued under the tables and are not discounted, even though the benefit is not transferable under ERISA. See Reg. §§20.2039-2(c)(1)(viii) and (c)(2)(valuation required under

_____

involuntary court-ordered assignments of lottery winnings are permitted under Massachusetts law.  At any rate, as the Court in Gribauskas noted (p. 164), "any attempted comparison to the 'small market of those willing to purchase unassignable lottery winnings', which the parties stipulated to exist, would be inapposite. Decedent died owning an enforceable right to a series of payments. Yet any purchaser buys only an unenforceable right and so is necessarily valuing a different species of interest. What a LOTTO prize might be worth to such a speculator hardly reflects its value in the hands of a legitimate owner. Hence, because there is no market for the precise interest held by decedent, the need for a standardized approach becomes even more apparent."  See also Guggenheim v. Rasquin, 312 U.S. 254 (1941).

15

tables). Additionally, retained interests in grantor retained annuity trusts (GRATS) are required to be valued under IRC §7520 notwithstanding that the retained annuity would clearly lack marketability. IRC §2702(a)(2)(B) (requiring valuation under IRC §7520). If the regulations were to permit departure from the tables based on the lack of marketability, IRC §7520 would be inapplicable to virtually any inalienable or difficult to market interest which covers almost the entire population of interests intended to be covered by the regulations.[15] Clearly such a result would be contrary to the intent of Congress in enacting IRC §7520(a).

Finally, it is well settled that the tables serve an important administrative function by providing a standardized method and a degree of certainty in determining the value for tax purposes of property interests. Estate of Cook v. Commissioner, supra, 349 F.3d at 854 ("In enacting §7520(a)(1) and requiring valuation by the tables, Congress displayed a preference for convenience and certainty over accuracy in the individual case.")  As the Ninth Circuit explained in Bank of California v. United States, 672 F.2d 758, 760 (9th Cir. 1982), "actuarial tables provide a needed degree of certainty and administrative convenience in ascertaining property values and prove accurate when applied in large numbers of cases, although discrepancies inevitably arise in individual cases." See also Miami Beach First National Bank v. United States, 443 F.2d 116, 119 (5th Cir. 1971) and McMurtry v. Commissioner, 203 F.2d 659, 667 (1st Cir. 1953).  If transferability or marketability of an interest were factors to be taken into account under the tables, it would be necessary to "hypothesize as to the facts and circumstances of each case." Estate of Shapiro v. Commissioner, T.C.M. 1992-483.  IRC §7520(a), requiring the use of

---

[15]Private annuities generally are established for the purpose of the owner receiving the benefits over a long period of time rather than for the purpose of sale.  Thus, there is normally not an active market in private annuities as there is for stocks (See 5 Boris I. Bittker & Lawrence Lokken, Federal Taxation of Income, Estates and Gifts, ¶135.10 at 135-82 (1993)and all similar interests would arguably require a lack of marketability discount based on the plaintiff's theory

16

actuarial tables was intended to avoid such an ad hoc analysis of each case. Departure from the

tables because of the absence of transferability of an interest in property undermines that goal.

Thus, based on all of the above, the regulations that require the use of the §7520 tables to

determine the value for tax purposes of the annuity in question, even though those tables ignore

the marketability or liquidity of such annuity, more than meet the test of validity of a regulation,

whether legislative or interpretative.  As such the Secretary's interpretation in those regulations

must be accepted, even if it is only an interprertative regulation.

The plaintiff's reliance on the Ninth Circuit's decision in <u>Estate of Shackleford</u> and the

Second Circuit's decision in <u>Gribauskas</u>, which followed <u>Estate of Shackleford</u>, while

understandable, is misplaced for several reasons.   In both of these cases, the decedent died

before December 13, 1995, owning unpaid installments on winning lottery tickets.  The courts of

appeals allowed the plaintiffs to depart from the IRC §7520 tables in determining the fair market

value of the lottery ticket payments for estate tax purposes.  Because the decedents in these two

cases both died prior to the effective date of Reg. §20.7520-3(b), neither court discussed this

controlling regulation.  For this reason alone, neither of these cases offers any support to the

plaintiff.  On the other hand, however, <u>Estate of Cook</u> presented a powerful argument as to why

lack of liquidity, even in the absence of the regulation, did not justify departing from the actuarial

tables.  The rationale in <u>Cook</u> provides strong support for the validity of the identical position

taken in the regulations.

In addition to not being applicable to the facts of this case, <u>Shackelford</u>, and by extension,

<u>Gribauskas</u>, are simply wrongly decided and the court in  <u>Cook</u> correctly rejected their reasoning.

In <u>Shackleford</u>, the Ninth Circuit upheld the district court's determination that departure from the

annuity tables was warranted in valuing a stream of lottery payments (which also could not be

transferred) because the tables produced an unrealistic result.  The court held that the value provided by the tables was presumptively correct and was subject to revision only if the party seeking departure shows that the tables produce an unrealistic and unreasonable value.  The court went on to hold, however, that there was little doubt that the lack of transferability of the lottery payments reduced their fair market value, and upheld the district court's conclusion that the tables produced a substantially unrealistic and unreasonable result because they did not take into account the restrictions on transferability.

The Ninth Circuit's reasoning in Shackleford is simply unpersuasive.  As a preliminary matter, the court agreed with the standard for departure from actuarial table valuation set forth by the Eighth Circuit in O'Reilly v. Commissioner, 973 F.2d 1403 (8th Cir. 1992) .  The Ninth Circuit stated that "the general rule requires that the tables be used because they provide both certainty and convenience when applied in large numbers," and thus that departure from actuarial table valuation is appropriate only in the exceptional circumstance "[w]hen use of the tables produces a substantially unrealistic and unreasonable result and when a more reasonable and realistic valuation technique is available [such that] faith that the tables will 'average out' in the long run will not suffice."  Shackleford, 262 F.3d at 1031-1032, quoting O'Reilly, 973 F.2d at 1409.

In then concluding that limits on the transferability of a private annuity are a circumstance justifying departure from actuarial table valuation, however, the Ninth Circuit relied entirely on cases in which use of the actuarial tables was not in issue, and which involved considerations of marketability in the valuation of corporate stock.  See, e.g., Trust Services of America, Inc. v. United States, 885 F.2d 561 (9th Cir. 1989); Baylev. Commissioner, 624 F.2d 884 (9th Cir. 1980); Mailloux v. Commissioner, 320 F.2d 60 (5th Cir. 1963).  The Ninth Circuit gave no

18

explanation for ignoring the fact that, in contrast to the actuarial table valuation generally

required for private annuities, corporate stock interests are never valued pursuant to the actuarial

tables.  Indeed, federal revenue laws expressly require independent valuation of corporate

interests under a willing buyer/willing seller standard that considers marketability or liquidity.

*See* Treas. Reg. §§ 25.2512-3, 20.2031-3, Rev. Rul. 59-60, 1959-1 C.B. 237.

  The Ninth Circuit also failed to explain why the differences between the assets valued in

the stock cases and a private annuity did not compel adherence to the actuarial tables when

valuing a state lottery annuity; the appellate court simply reiterated the holding of the district

court.  The value of stock in a closely-held business, however, turns on very different factors.

For example, value will be influenced by considerations such as the type of assets held by the

company, whether the company pays or is likely to pay dividends, whether the company is owned

by unrelated persons or solely by family members, whether the interest holder also has any

ownership interest in company assets, whether the relevant interest has management or

operational control or is a noncontrolling minority interest, whether the interest holder is at risk

for company liabilities, and whether buy-sell agreements or other restrictions on transfer or

assignment are in place.  State-paid lottery annuities such as the ones at issue in Shackleford and

here, on the other hand, are virtually risk-free streams of future income payments.

  In short the Ninth Circuit's decision in Shackleford is not well-reasoned, and it should not

be followed even without consideration of the December 13, 1995 regulation.  Indeed, the tax

court in Cook referred to the district court's decision in Shackleford, which the Ninth Circuit

followed, as anomalous.  The Fifth Circuit in Cook picked up the tax court's criticism of the

Ninth Circuit's decision Shackleford.  First, the court noted that the case law provided no support

19

for considering transferability or marketability when valuing annuities. Second, the court pointed out that the statutory mandate in IRC §7520 reflects a strong policy in favor of standardized actuarial valuation, which would be undercut by requiring a court to probe each aspect of a taxpayer's rights when those aspects neither alter or jeopardize the essential entitlement to a stream of fixed payments. Third, an annuity's value consists only of a promised stream of fixed payments, and is therefore far different than an interest to which a marketability discount is normally applied, such as closely held stock, or partial interests in property. Those discounts, as the Tax Court noted in Gribauskas, were appropriate "in that capital appreciation, which can usually be accessed only through disposition, is a significant component of value." 116 T.C. at 163-164. The value of an annuity, on the other hand, derives only from anticipated payments, and the inability to prematurely liquidate those payments does not lessen the value of the enforceable right to those payments for a specified number of years. The Ninth Circuit did not address the tax court's criticisms of the district court's decision in Shackleford, and did not even cite to the tax court's decisions in Gribauskas and Cook.

In sum, both the Tax Court and the Court of Appeals in Cook correctly recognized that the case law authorizes departure from annuity tables only in cases where the assumptions underlying the annuity tables (the mortality rate, the depletion of the asset, or the rate of return) are not present in the case in which departure is sought. In the instant case, none of those factors is present. The only justification offered by the plaintiff for departing from the tables is that the stream of lottery payments could not be transferred. Restrictions on transferability, however, should not properly be taken into account in determining whether departure from the tables is warranted, both before and after Reg. §20.7520-3(b) was promulgated pursuant to IRC §7520(b).

20

Thus, the decisions in <u>Shackleford</u> and <u>Gribauskas</u> should be rejected as precedent here both because the decedents in those cases died before December 13, 1995, the date of enactment of Reg. §20.7520-3(b), and because they are simply wrongly decided. [16]

CONCLUSION

The plaintiff's complaint should be dismissed with prejudice, the United States' motion for summary judgment granted and the plaintiff ordered to pay the costs of the United States because, in determining the fair market value of the annuity in question, the tables in IRC §7520 must be used.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

BARBARA HEALY SMITH
Assistant U.S. Attorney

   /s/ stephen t. lyons
STEPHEN T. LYONS
Senior Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6546
e-mail: stephen.t.lyons@usdoj.gov

---

[16]One commentator has correctly noted that the courts of appeals in <u>Shackleford</u> and <u>Gribauskas</u> ignored the holding in <u>Ithaca Trust v. United States,</u> 279 U.S. 151 (1929) that there should be no departure from the actuarial tables "even where the tables produce 'unrealistic' results. Essentially, allowing *any* adjustment to the value determined by the tables in the lottery cases contravenes the legislative mandate of their use. . . . Certainly, <u>Gribauskas</u> and <u>Shackleford</u> do not present facts more compelling than <u>Ithaca Trust</u>." Gerzog, The Lottery Cases and <u>Ithaca Trust</u>, 101 Tax Notes 289, 291 (October 13, 2003). A copy of this article is attached as Exhibit C.

CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing UNITED STATES' BRIEF IN

SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT has this ____ day of October,

2004, been electronically filed with the Clerk of the District Court using its CM/ECF system.


    /s/ stephen t. lyons
STEPHEN T. LYONS
Senior Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C.  20044
Telephone:  (202) 307-6546