# EXHIBIT A

| Citation | Search Result | Rank 6882 of 14656 | Database |
|---|---|---|---|
| 26 USCA S 2031 | | | USCA99 |
| 26 U.S.C.A. § 2031 | | | |

UNITED STATES CODE ANNOTATED
TITLE 26. INTERNAL REVENUE CODE
SUBTITLE B--ESTATE AND GIFT TAXES
CHAPTER 11--ESTATE TAX
SUBCHAPTER A--ESTATES OF CITIZENS OR RESIDENTS
PART III--GROSS ESTATE

Copr. © West Group 1999. No Claim to Orig. U.S. Govt. Works

§ 2031. Definition of gross estate

(a) General.--The value of the gross estate of the decedent shall be determined by including to the extent provided for in this part, the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated.

(b) Valuation of unlisted stock and securities.--In the case of stock and securities of a corporation the value of which, by reason of their not being listed on an exchange and by reason of the absence of sales thereof, cannot be determined with reference to bid and asked prices or with reference to sales prices, the value thereof shall be determined by taking into consideration, in addition to all other factors, the value of stock or securities of corporations engaged in the same or a similar line of business which are listed on an exchange.

(c) Estate tax with respect to land subject to a qualified conservation easement.--

(1) In general.--If the executor makes the election described in paragraph (6), then, except as otherwise provided in this subsection, there shall be excluded from the gross estate the lesser of--

(A) the applicable percentage of the value of land subject to a qualified conservation easement, reduced by the amount of any deduction under section 2055(f) with respect to such land, or

(B) the exclusion limitation.

(2) Applicable percentage.--For purposes of paragraph (1), the term "applicable percentage" means 40 percent reduced (but not below zero) by 2 percentage points for each percentage point (or fraction thereof) by which the value of the qualified conservation easement is less than 30 percent of the value of the land (determined without regard to the value of such easement and reduced by the value of any retained development right (as defined in paragraph (5)).

(3) Exclusion limitation.--For purposes of paragraph (1), the exclusion limitation is the limitation determined in accordance with the following table:

```
In the case of estates of decedents dying during:        The exclusion
                                                         limitation is:
    1998 ................................................... $100,000
    1999 ...................................................  200,000
    2000 ...................................................  300,000
    2001 ...................................................  400,000
    2002 or thereafter .....................................  500,000.
```

(4) Treatment of certain indebtedness.--

(A) In general.--The exclusion provided in paragraph (1) shall not apply to the extent that the land is debt-financed

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

property.

(B) Definitions.--For purposes of this paragraph--

(i) Debt-financed property.--The term "debt-financed property" means any property with respect to which there is an acquisition indebtedness (as defined in clause (ii)) on the date of the decedent's death.

(ii) Acquisition indebtedness.--The term "acquisition indebtedness" means, with respect to debt-financed property, the unpaid amount of--

(I) the indebtedness incurred by the donor in acquiring such property,

(II) the indebtedness incurred before the acquisition of such property if such indebtedness would not have been incurred but for such acquisition,

(III) the indebtedness incurred after the acquisition of such property if such indebtedness would not have been incurred but for such acquisition and the incurrence of such indebtedness was reasonably foreseeable at the time of such acquisition, and

(IV) the extension, renewal, or refinancing of an acquisition indebtedness.

(5) Treatment of retained development right.--

(A) In general.--Paragraph (1) shall not apply to the value of any development right retained by the donor in the conveyance of a qualified conservation easement.

(B) Termination of retained development right.--If every person in being who has an interest (whether or not in possession) in the land executes an agreement to extinguish permanently some or all of any development rights (as defined in subparagraph (D)) retained by the donor on or before the date for filing the return of the tax imposed by section 2001, then any tax imposed by section 2001 shall be reduced accordingly. Such agreement shall be filed with the return of the tax imposed by section 2001. The agreement shall be in such form as the Secretary shall prescribe.

(C) Additional tax.--Any failure to implement the agreement described in subparagraph (B) not later than the earlier of--

(i) the date which is 2 years after the date of the decedent's death, or

(ii) the date of the sale of such land subject to the qualified conservation easement,

shall result in the imposition of an additional tax in the amount of the tax which would have been due on the retained development rights subject to such agreement. Such additional tax shall be due and payable on the last day of the 6th month following such date.

(D) Development right defined.--For purposes of this paragraph, the term "development right" means any right to use the land subject to the qualified conservation easement in which such right is retained for any commercial purpose which is not subordinate to and directly supportive of the use of such land as a farm for farming purposes (within the meaning of section 2032A(e)(5)).

(6) Election.--The election under this subsection shall be made on or before the due date (including extensions) for filing the return of tax imposed by section 2001 and shall be made on such return. Such an election, once made, shall be irrevocable.

(7) Calculation of estate tax due.--An executor making the election described in paragraph (6) shall, for purposes of calculating the amount of tax imposed by section 2001, include the value of any development right (as defined in

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

paragraph (5)) retained by the donor in the conveyance of such qualified conservation easement. The computation of tax on any retained development right prescribed in this paragraph shall be done in such manner and on such forms as the Secretary shall prescribe.

(8) Definitions.--For purposes of this subsection--

(A) Land subject to a qualified conservation easement.--The term "land subject to a qualified conservation easement" means land--

(i) which is located--

(I) in or within 25 miles of an area which, on the date of the decedent's death, is a metropolitan area (as defined by the Office of Management and Budget),

(II) in or within 25 miles of an area which, on the date of the decedent's death, is a national park or wilderness area designated as part of the National Wilderness Preservation System (unless it is determined by the Secretary that land in or within 25 miles of such a park or wilderness area is not under significant development pressure), or

(III) in or within 10 miles of an area which, on the date of the decedent's death, is an Urban National Forest (as designated by the Forest Service),

(ii) which was owned by the decedent or a member of the decedent's family at all times during the 3-year period ending on the date of the decedent's death, and

(iii) with respect to which a qualified conservation easement has been made by an individual described in subparagraph (C), as of the date of the election described in paragraph (6).

(B) Qualified conservation easement.--The term "qualified conservation easement" means a qualified conservation contribution (as defined in section 170(h)(1)) of a qualified real property interest (as defined in section 170(h)(2)(C)), except that clause (iv) of section 170(h)(4)(A) shall not apply, and the restriction on the use of such interest described in section 170(h)(2)(C) shall include a prohibition on more than a de minimis use for a commercial recreational activity.

(C) Individual described.--An individual is described in this subparagraph if such individual is--

(i) the decedent,

(ii) a member of the decedent's family,

(iii) the executor of the decedent's estate, or

(iv) the trustee of a trust the corpus of which includes the land to be subject to the qualified conservation easement.

(D) Member of family.--The term "member of the decedent's family" means any member of the family (as defined in section 2032A(e)(2)) of the decedent.

(9) Treatment of easements granted after death.--In any case in which the qualified conservation easement is granted after the date of the decedent's death and on or before the due date (including extensions) for filing the return of tax imposed by section 2001, the deduction under section 2055(f) with respect to such easement shall be allowed to the estate but only if no charitable deduction is allowed under chapter 1 to any person with respect to the grant of such easement.

(10) Application of this section to interests in partnerships, corporations, and trusts.--This section shall apply to an

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

interest in a partnership, corporation, or trust if at least 30 percent of the entity is owned (directly or indirectly) by the decedent, as determined under the rules described in section 2057(e)(3).

(d) Cross reference.--

For executor's right to be furnished on request a statement regarding any valuation made by the Secretary within the gross estate, see section 7517.

## CREDIT(S)

### 1999 Pocket Part

(Aug. 16, 1954, c. 736, 68A Stat. 380; Oct. 16, 1962, Pub.L. 87-834, § 18(a)(1), 76 Stat. 1052; Oct. 4, 1976, Pub.L. 94-455, Title XX, § 2008(a)(2)(A), 90 Stat. 1891; Aug. 5, 1997, Pub.L. 105-34, Title V, § 508(a), 111 Stat. 857; July 22, 1998, Pub.L. 105-206, Title VI, § 6007(g), 112 Stat. 810; Oct. 21, 1998, Pub.L. 105-277, Div. J, Title IV, § 4006(c)(3), 112 Stat. 2681-___.)

## HISTORICAL AND STATUTORY NOTES

Revision Notes and Legislative Reports

1954 Act. House Report No. 1337, Senate Report No. 1622, and Conference Report No. 2543, see 1954 U.S.Code Cong. and Adm.News, pp. 4456, 5112.

1962 Act. Senate Report No. 1881 and Conference Report No. 2508, see 1962 U.S.Code Cong. and Adm.News, p. 3297.

1976 Act. House Report Nos. 94-658, 94-1380, Senate Report No. 94-938, and Conference Report No. 94-1515, see 1976 U.S.Code Cong. and Adm.News, p. 2897.

1997 Acts. House Report No. 105-148, Senate Report No. 105-33, House Conference Report No. 105-220, and Statement by President, see 1997 U.S. Code Cong. and Adm. News, p. 678.

1998 Acts. House Conference Report No. 105-599, see 1998 U.S. Code Cong. and Adm. News, p. 297.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Citation
26 USCA S 2033
26 U.S.C.A. § 2033

Search Result

Rank 6844 of 14580

Database
USCA99

UNITED STATES CODE ANNOTATED
TITLE **26**. INTERNAL REVENUE CODE
SUBTITLE B--ESTATE AND GIFT TAXES
CHAPTER 11--ESTATE TAX
SUBCHAPTER A--ESTATES OF CITIZENS OR RESIDENTS
PART III--GROSS ESTATE

Copr. © West Group 1999.  No Claim to Orig. U.S. Govt. Works

§ **2033.** Property in which the decedent had an interest

The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death.

CREDIT(S)

1989 Main Volume

(Aug. 16, 1954, c. 736, 68A Stat. 381;  Oct. 16, 1962, Pub.L. 87-834, § 18(a)(2)(A), 76 Stat. 1052.)

HISTORICAL AND STATUTORY NOTES

Revision Notes and Legislative Reports

1954 Act. House Report No. 1337, Senate Report No. 1622, and Conference Report No. 2543, see 1954 U.S.Code Cong. and Adm.News, pp. 4456, 5112.

1962 Act. Senate Report No. 1881 and Conference Report No. 2508, see 1962 U.S.Code Cong. and Adm.News, p. 3297.

Amendments

1962 Amendment. Pub.L. 87-834 eliminated provisions which excepted real property situated outside of the United States.

Effective Dates

1962 Act. Amendment by Pub.L. 87-834 applicable, except as otherwise provided, to the estates of decedents dying after Oct. 16, 1962, see § 18(b) of Pub.L. 87-834, set out as a note under § 2031 of this title.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Citation                     Search Result                Rank 6850 of 14580                    Database
26 USCA S 2039                                                                                  USCA99
26 U.S.C.A. § 2039

UNITED STATES CODE ANNOTATED
TITLE **26**. INTERNAL REVENUE CODE
SUBTITLE B--ESTATE AND GIFT TAXES
CHAPTER 11--ESTATE TAX
SUBCHAPTER A--ESTATES OF CITIZENS OR RESIDENTS
PART III--GROSS ESTATE

Copr. © West Group 1999. No Claim to Orig. U.S. Govt. Works

§ 2039. Annuities

(a) General.--The gross estate shall include the value of an annuity or other payment receivable by any beneficiary by reason of surviving the decedent under any form of contract or agreement entered into after March 3, 1931 (other than as insurance under policies on the life of the decedent), if, under such contract or agreement, an annuity or other payment was payable to the decedent, or the decedent possessed the right to receive such annuity or payment, either alone or in conjunction with another for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death.

(b) Amount includible.--Subsection (a) shall apply to only such part of the value of the annuity or other payment receivable under such contract or agreement as is proportionate to that part of the purchase price therefor contributed by the decedent. For purposes of this section, any contribution by the decedent's employer or former employer to the purchase price of such contract or agreement (whether or not to an employee's trust or fund forming part of a pension, annuity, retirement, bonus or profit sharing plan) shall be considered to be contributed by the decedent if made by reason of his employment.

CREDIT(S)

1989 Main Volume

(Aug. 16, 1954, c. 736, 68A Stat. 384; Sept. 2, 1958, Pub.L. 85-866, Title I, §§ 23(e), 67(a), 72 Stat. 1622, 1658; Oct. 10, 1962, Pub.L. 87-792, § 7(i), 76 Stat. 830; Mar. 8, 1966, Pub.L. 89-365, § 2(a), 80 Stat. 33; Dec. 30, 1969, Pub.L. 91-172, Title I, § 101(j)(23), 83 Stat. 528; Oct. 27, 1972, Pub.L. 92-580, § 2(a), 86 Stat. 1276; Sept. 2, 1974, Pub.L. 93-406, Title II, § 2008(b)(4), 88 Stat. 994; Oct. 4, 1976, Pub.L. 94-455, Title XX, §

Citation                     Search Result              Rank 8242 of 14524                Database
26 USCA S 7520                                                                            USCA99
26 U.S.C.A. § 7520

UNITED STATES CODE ANNOTATED
TITLE **26.** INTERNAL REVENUE CODE
SUBTITLE F--PROCEDURE AND ADMINISTRATION
CHAPTER 77--MISCELLANEOUS PROVISIONS

Copr. © West Group 1999. No Claim to Orig. U.S. Govt. Works

§ **7520.** Valuation tables

(a) General rule.--For purposes of this title, the value of any annuity, any interest for life or a term of years, or any remainder or reversionary interest shall be determined--

(1) under tables prescribed by the Secretary, and

(2) by using an interest rate (rounded to the nearest 2/10 ths of 1 percent) equal to 120 percent of the Federal midterm rate in effect under section 1274(d)(1) for the month in which the valuation date falls.

If an income, estate, or gift tax charitable contribution is allowable for any part of the property transferred, the taxpayer may elect to use such Federal midterm rate for either of the 2 months preceding the month in which the valuation date falls for purposes of paragraph (2). In the case of transfers of more than 1 interest in the same property with respect to which the taxpayer may use the same rate under paragraph (2), the taxpayer shall use the same rate with respect to each such interest.

(b) Section not to apply for certain purposes.--This section shall not apply for purposes of part I of subchapter D of chapter 1 or any other provision specified in regulations.

(c) Tables.--

(1) In general.--The tables prescribed by the Secretary for purposes of subsection (a) shall contain valuation factors for a series of interest rate categories.

(2) Initial table.--Not later than the day 3 months after the date of the enactment of this section, the Secretary shall prescribe initial tables for purposes of subsection (a). Such tables may be based on the same mortality experience as used for purposes of section 2031 on the date of the enactment of this section.

(3) Revision for recent mortality charges.--Not later than December 31, 1989, the Secretary shall revise the initial tables prescribed for purposes of subsection (a) to take into account the most recent mortality experience available as of the time of such revision. Such tables shall be revised not less frequently than once each 10 years thereafter to take into account the most recent mortality experience available as of the time of the revision.

(d) Valuation date.--For purposes of this section, the term "valuation date" means the date as of which the valuation is made.

(e) Tables to include formulas.--For purposes of this section, the term "tables" includes formulas.

CREDIT(S)

1989 Main Volume

(Added Pub.L. 100-647, Title V, § 5031(a), Nov. 10, 1988, 102 Stat. 3668.)

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

26 USCA S 7520                                                                                      **Page 2**

HISTORICAL AND STATUTORY NOTES

Revision Notes and Legislative Reports

  1988 Act. Senate Report No. 100-445 and House Conference Report No. 100-1104, see 1988 U.S.Code Cong. and Adm.News, p. 4515.

References in Text

  The date of enactment of this section referred to in subsec. (c)(2) is the date of enactment of section 5031(a) of Pub.L. 100-647, which is Nov. 10, 1988.

Effective Dates

  1988 Act. Section 5031(c) of Pub.L. 100-647 provided that:  "The amendments made by this section [enacting this section] shall apply in cases where the date as of which the valuation is to be made occurs on or after the 1st day of the 6th calendar month beginning after the date of the enactment of this Act [Nov. 10, 1988]."

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

CODE OF FEDERAL REGULATIONS
TITLE 26--INTERNAL REVENUE
CHAPTER I--INTERNAL REVENUE SERVICE, DEPARTMENT OF THE TREASURY
SUBCHAPTER B--ESTATE AND GIFT TAXES
PART 20--ESTATE TAX; ESTATES OF DECEDENTS DYING AFTER AUGUST 16, 1954
ESTATES OF CITIZENS OR RESIDENTS
GROSS ESTATE

§ **20.2031-1** Definition of gross estate; valuation of property.

(a) Definition of gross estate. Except as otherwise provided in this paragraph the value of the gross estate of a decedent who was a citizen or resident of the United States at the time of his death is the total value of the interests described in sections 2033 through 2044. The gross estate of a decedent who died before October 17, 1962, does not include real property situated outside the United States (as defined in paragraph (b)(1) of § 20.0- 1). Except as provided in paragraph (c) of this section (relating to the estates of decedents dying after October 16, 1962, and before July 1, 1964), in the case of a decedent dying after October 16, 1962, real property situated outside the United States which comes within the scope of sections 2033 through 2044 is included in the gross estate to the same extent as any other property coming within the scope of those sections. In arriving at the value of the gross estate the interests described in sections 2033 through 2044 are valued as described in this section, §§ 20.2031-2 through 20.2031-9 and § 20.2032-1. The contents of sections 2033 through 2044 are, in general, as follows:

(1) Sections 2033 and 2034 are concerned mainly with interests in property passing through the decedent's probate estate. Section 2033 includes in the decedent's gross estate any interest that the decedent had in property at the time of his death. Section 2034 provides that any interest of the decedent's surviving spouse in the decedent's property, such as dower or curtesy, does not prevent the inclusion of such property in the decedent's gross estate.

(2) Sections 2035 through 2038 deal with interests in property transferred by the decedent during his life under such circumstances as to bring the interests within the decedent's gross estate. Section 2035 includes in the decedent's gross estate property transferred in contemplation of death, even though the decedent had not interest in, or control over, the property at the time of his death. Section 2036 provides for the inclusion of transferred property with respect to which the decedent retained the income or the power to designate who shall enjoy the income. Section 2037 includes in the decedent's gross estate certain transfers under which the beneficial enjoyment of the property could be obtained only by surviving the decedent. Section 2038 provides for the inclusion of transferred property if the decedent had at the time of his death the power to change the beneficial enjoyment of the property. It should be noted that there is considerable overlap in the application of sections 2036 through 2038 with respect to reserved powers, so that transferred property may be includible in the decedent's gross estate in varying degrees under more than one of those sections.

(3) Sections 2039 through 2042 deal with special kinds of property and powers. Sections 2039 and 2040 concern annuities and jointly held property respectively. Section 2041 deals with powers held by the decedent over the beneficial enjoyment of property not originating with the decedent. Section 2042 concerns insurance under policies on the life of the decedent.

(4) Section 2043 concerns the sufficiency of consideration for transfers made by the decedent during his life. This has a bearing on the amount to be included in the decedent's gross estate under sections 2035 through 2038, and 2041. Section 2044 deals with retroactivity.

(b) Valuation of property in general. The value of every item of property includible in a decedent's gross estate under sections 2031 through 2044 is its fair market value at the time of the decedent's death, except that if the executor elects the alternate valuation method under section 2032, it is the fair market value thereof at the date, and with the adjustments, prescribed in that section. The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts. The fair market value of a particular item of property includible in the decedent's gross estate is not to be determined by a forced sale price. Nor is the fair market value of an item of property to be determined by the sale price of the item in a market other than that in which such item is most

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

commonly sold to the public, taking into account the location of the item wherever appropriate. Thus, in the case of an item of property includible in the decedent's gross estate, which is generally obtained by the public in the retail market, the fair market value of such an item of property is the price at which the item or a comparable item would be sold at retail. For example, the fair market value of an automobile (an article generally obtained by the public in the retail market) includible in the decedent's gross estate is the price for which an automobile of the same or approximately the same description, make, model, age, condition, etc., could be purchased by a member of the general public and not the price for which the particular automobile of the decedent would be purchased by a dealer in used automobiles. Examples of items of property which are generally sold to the public at retail may be found in § § 20.2031-6 and 20.2031-8. The value is generally to be determined by ascertaining as a basis the fair market value as of the applicable valuation date of each unit of property. For example, in the case of shares of stock or bonds, such unit of property is generally a share of stock or a bond. Livestock, farm machinery, harvested and growing crops must generally be itemized and the value of each item separately returned. Property shall not be returned at the value at which it is assessed for local tax purposes unless that value represents the fair market value as of the applicable valuation date. All relevant facts and elements of value as of the applicable valuation date shall be considered in every case. The value of items of property which were held by the decedent for sale in the course of a business generally should be reflected in the value of the business. For valuation of interests in businesses, see § 20.2031-3. See § 20.2031-2 and §§ 20.2031-4 through 20.2031-8 for further information concerning the valuation of other particular kinds of property. For certain circumstances under which the sale of an item of property at a price below its fair market value may result in a deduction for the estate, see paragraph (d)(2) of § 20.2053-3.

(c) Real property situated outside the United States; gross estate of decedent dying after October 16, 1962, and before July 1, 1964--(1) In general. In the case of decedent dying after October 16, 1962, and before July 1, 1964, the value of real property situated outside the United States (as defined in paragraph (b)(1) of § 20.0-1) is not included in the gross estate of the decedent--

(i) Under section 2033, 2034, 2035(a), 2036(a), 2037(a), or 2038(a) to the extent the real property, or the decedent's interest in it, was acquired by the decedent before February 1, 1962;

(ii) Under section 2040 to the extent such property or interest was acquired by the decedent before February 1, 1962, or was held by the decedent and the survivor in a joint tenancy or tenancy by the entirety before February 1, 1962; or

(iii) Under section 2041(a) to the extent that before February 1, 1962, such property or interest was subject to a general power of appointment (as defined in section 2041) possessed by the decedent.

(2) Certain property treated as acquired before February 1, 1962. For purposes of this paragraph real property situated outside the United States (including property held by the decedent and the survivor in a joint tenancy or tenancy by the entirety), or an interest in such property or a general power of appointment in respect of such property, which was acquired by the decedent after January 31, 1962, is treated as acquired by the decedent before February 1, 1962, if

(i) Such property, interest, or power was acquired by the decedent by gift within the meaning of section 2511, or from a prior decedent by devise or inheritance, or by reason of death, form of ownership, or other conditions (including the exercise or nonexercise of a power of appointment); and

(ii) Before February 1, 1962, the donor or prior decedent had acquired the property or his interest therein or had possessed a power of appointment in respect thereof.

(3) Certain property treated as acquired after January 31, 1962. For purposes of this paragraph that portion of capital additions or improvements made after January 31, 1962, to real property situated outside the United States is, to the extent that it materially increases the value of the property, treated as real property acquired after January 31, 1962. Accordingly, the gross estate may include the value of improvements on unimproved real property, such as office buildings, factories, houses, fences, drainage ditches, and other capital items, and the value of capital additions and improvements to existing improvements, placed on real property after January 31, 1962, whether or not the value of such real property or existing improvements is included in the gross estate.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

26 CFR S 20.2031-1                                                                                   **Page 3**

[T.D. 6296, 23 FR 4529, June 24, 1958, as amended by T.D. 6684, 28 FR 11408, Oct. 24, 1963;  T.D. 6826, 30 FR 7708, June 15, 1965]

26 C. F. R. § **20.2031-1**

26 CFR § **20.2031-1**

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Citation                          Search Result                     Rank 23 of 40                          Database
26 CFR S 20.2031-7                                                                                         CFR99
26 C.F.R. § 20.2031-7

CODE OF FEDERAL REGULATIONS
TITLE 26--INTERNAL REVENUE
CHAPTER I--INTERNAL REVENUE SERVICE, DEPARTMENT OF THE TREASURY
SUBCHAPTER B--ESTATE AND GIFT TAXES
PART 20--ESTATE TAX;  ESTATES OF DECEDENTS DYING AFTER AUGUST 16, 1954
ESTATES OF CITIZENS OR RESIDENTS
GROSS ESTATE

§ **20.2031-7** Valuation of annuities, interests for life or term of years, and remainder or reversionary interests for estates of decedents for which the valuation date of the gross estate is after April 30, 1989.

(a) In general.  Except as otherwise provided in paragraph (b) of this section and § 20.7520-3(b) (pertaining to certain limitations on the use of prescribed tables), the fair market value of annuities, life estates, terms of years, remainders, and reversionary interests for estates of decedents is the present value of such interests, determined under paragraph (d) of this section.  The regulations in this and in related sections provide tables with standard actuarial factors and examples that illustrate how to use the tables to compute the present value of ordinary annuity, life, and remainder interests in property.  These sections also refer to standard and special actuarial factors that may be necessary to compute the present value of similar interests in more unusual fact situations.

(b) Commercial annuities and insurance contracts.  The value of annuities issued by companies regularly engaged in their sale, and of insurance policies on the lives of persons other than the decedent, is determined under § 20.2031-8.  See § 20.2042-1 with respect to insurance policies on the decedent's life.

(c) Actuarial valuations before May 1, 1989.  The present value of annuities, life estates, terms of years, remainders, and reversions for estates of decedents for which the valuation date of the gross estate is before May 1, 1989, is determined under the following sections:

```
-----------------------------------------
  Valuation date      Applicable section
  ------------------
  After     Before
-----------------------------------------
            01-01-52  20.2031-7A(a)
  12-31-51  01-01-71  20.2031-7A(b)
  12-31-70  12-01-83  20.2031-7A(c)
  11-30-83  05-01-89  20.2031-7A(d)
-----------------------------------------
```

(d) Actuarial valuations after April 30, 1989--(1) In general.  Except as otherwise provided in paragraph (b) of this section and § 20.7520- 3(b) (pertaining to certain limitations on the use of prescribed tables), if the valuation date for the gross estate of the decedent is after April 30, 1989, the fair market value of annuities, life estates, terms of years, remainders, and reversionary interests is their present value determined by use of standard or special section 7520 actuarial factors.  These factors are derived by using the appropriate section 7520 interest rate and, if applicable, the mortality component for the valuation date of the interest that is being valued.  See §§ 20.7520-1 through 20.7520-4.

(2) Specific Interests--(i) Charitable Remainder Trusts.  The fair market value of a remainder interest in a pooled income fund, as defined in § 1.642(c)-5 of this chapter, is its value determined under § 1.642(c)-6(e) of this chapter. The fair market value of a remainder interest in a charitable remainder annuity trust, as defined in § 1.664-2(a) of this chapter, is its present value determined under § 1.664-2(c) of this chapter.  The fair market value of a remainder interest in a charitable remainder unitrust, as defined in § 1.664-3 of this chapter, is its present value determined under § 1.664- 4(e) of this chapter.  The fair market value of a life interest or term of years in a charitable remainder

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

unitrust is the fair market value of the property as of the date of valuation less the fair market value of the remainder interest on that date determined under § 1.664-4(e) of this chapter.

(ii) Ordinary remainder and reversionary interests. If the interest to be valued is to take effect after a definite number of years or after the death of one individual, the present value of the interest is computed by multiplying the value of the property by the appropriate remainder interest actuarial factor (that corresponds to the applicable section 7520 interest rate and remainder interest period) in Table B (for a term certain) or Table S (for one measuring life), as the case may be. Tables B and S are included in paragraph (d)(6) of this section and in Internal Revenue Service Publication 1457. For information about obtaining actuarial factors for other types of remainder interests, see paragraph (d)(4) of this section.

(iii) Ordinary term-of-years and life interests. If the interest to be valued is the right of a person to receive the income of certain property, or to use certain nonincome-producing property, for a term of years or for the life of one individual, the present value of the interest is computed by multiplying the value of the property by the appropriate term-of-years or life interest actuarial factor (that corresponds to the applicable section 7520 interest rate and term-of-years or life interest period). Internal Revenue Service Publication 1457 includes actuarial factors for an interest for a term of years in Table B and for the life of one individual in Table S. However, term-of-years and life interest actuarial factors are not included in Table B or Table S in § **20.2031-7**(d)(6) of this chapter. If Internal Revenue Service Publication 1457 (or any other reliable source of term-of-years and life interest actuarial factors) is not conveniently available, an actuarial factor for the interest may be derived mathematically. This actuarial factor may be derived by subtracting the correlative remainder factor (that corresponds to the applicable section 7520 interest rate and the term of years or the life) in Table B (for a term of years) or in Table S (for the life of one individual) in § **20.2031-7**(d)(6), as the case may be, from 1.000000. For information about obtaining actuarial factors for other types of term-of-years and life interests, see paragraph (d)(4) of this section.

(iv) Annuities. (A) If the interest to be valued is the right of a person to receive an annuity that is payable at the end of each year for a term of years or for the life of one individual, the present value of the interest is computed by multiplying the aggregate amount payable annually by the appropriate annuity actuarial factor (that corresponds to the applicable section 7520 interest rate and annuity period). Internal Revenue Publication 1457 includes actuarial factors in Table B (for an annuity payable for a term of years) and in Table S (for an annuity payable for the life of one individual). However, annuity actuarial factors are not included in Table B or Table S in paragraph (d)(6) of this section. If Internal Revenue Service Publication 1457 (or any other reliable source of annuity actuarial factors) is not conveniently available, a required annuity factor for a term of years or for one life may be mathematically derived. This annuity factor may be derived by subtracting the applicable remainder factor (that corresponds to the applicable section 7520 interest rate and annuity period) in Table B (in the case of a term-of-years annuity) or in Table S (in the case of a one-life annuity) in paragraph (d)(6) of this section, as the case may be, from 1.000000 and then dividing the result by the applicable section 7520 interest rate expressed as a decimal number.

(B) If the annuity is payable at the end of semiannual, quarterly, monthly, or weekly periods, the product obtained by multiplying the annuity factor by the aggregate amount payable annually is then multiplied by the applicable adjustment factor set forth in Table K for payments made at the end of the specified periods. The provisions of this paragraph (d)(2)(iv)(B) are illustrated by the following example:

Example. At the time of the decedent's death in January 1990, the annuitant, age 72, is entitled to receive an annuity of $15,000 a year for life payable in equal monthly installments at the end of each period. The section 7520 rate for January 1990 is 9.6 percent. Under Table S, the remainder factor at 9.6 percent for an individual aged 72 is .40138. By converting the remainder factor to an annuity factor, as described above, the annuity factor at 9.6 percent for an individual aged 72 is 6.2356 (1.00000 minus .40138, divided by .096). Under Table K, the adjustment factor under the column for payments made at the end of each monthly period at the rate of 9.6 percent is 1.0433. The aggregate annual amount, $15,000, is multiplied by the factor 6.2356 and the product multiplied by 1.0433. The present value of the annuity at the date of the decedent's death is, therefore, $97,584.02 ($15,000 x 6.2356 x 1.0433).

(C) If an annuity is payable at the beginning of annual, semiannual, quarterly, monthly, or weekly periods for a term of years, the value of the annuity is computed by multiplying the aggregate amount payable annually by the annuity factor described in paragraph (d)(2)(iv)(A) of this section; and the product so obtained is then multiplied by the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

adjustment factor in Table J at the appropriate interest rate component for payments made at the beginning of specified periods. If an annuity is payable at the beginning of annual, semiannual, quarterly, monthly, or weekly periods for one or more lives, the value of the annuity is the sum of the first payment plus the present value of a similar annuity, the first payment of which is not to be made until the end of the payment period, determined as provided in this paragraph (d)(2)(iv).

(v) Annuity and unitrust interests for a term of years or until the prior death of an individual. See § 25.2512-5(d)(2)(v) of this chapter for examples explaining how to compute the present value of an annuity or unitrust interest that is payable until the earlier of the lapse of a specific number of years or the death of an individual.

(3) Transitional rule. (i) If the valuation date is after April 30, 1989, and before June 10, 1994, a taxpayer can rely on Notice 89-24, 1989-1 C.B. 660, or Notice 89-60, 1989-1 C.B. 700 (See § 601.601(d)(2)(ii)(b) of this chapter).

(ii) If a decedent dies after April 30, 1989, and if on May 1, 1989, the decedent was mentally incompetent so that the disposition of the decedent's property could not be changed, and the decedent dies without having regained competency to dispose of the decedent's property or dies within 90 days of the date on which the decedent first regains competency, the fair market value of annuities, life estates, terms for years, remainders, and reversions included in the gross estate of the decedent is their present value determined either under this section or under the corresponding section applicable at the time the decedent became mentally incompetent, at the option of the decedent's executor. For example, see § 20.2031-7A(d).

(4) Publications and actuarial computations by the Internal Revenue Service. Many standard actuarial factors not included in paragraph (d)(6) of this section are included in Internal Revenue Service Publication 1457, "Actuarial Values, Alpha Volume," (8-89). Publication 1457 also includes examples that illustrate how to compute many special factors for more unusual situations. A copy of this publication may be purchased from the Superintendent of Documents, United States Government Printing Office, Washington, DC 20402. If a special factor is required in the case of an actual decedent, the Service may furnish the factor to the executor upon a request for a ruling. The request for a ruling must be accompanied by a recitation of the facts including a statement of the date of birth for each measuring life, the date of the decedent's death, any other applicable dates, and a copy of the will, trust, or other relevant documents. A request for a ruling must comply with the instructions for requesting a ruling published periodically in the Internal Revenue Bulletin (see §§ 601.201 and 601.601(d)(2)(ii)(b) of this chapter) and include payment of the required user fee.

(5) Examples. The provisions of this section are illustrated by the following examples:

Example 1. Remainder payable at an individual's death. The decedent, or the decedent's estate, was entitled to receive certain property worth $50,000 upon the death of the decedent's elder sister, to whom the income was bequeathed for life. The decedent died in February 1990. At the time of the decedent's death, the elder sister was 47 years 5 months old. In February 1990, the section 7520 rate was 9.8 percent. Under Table S in paragraph (d)(6) of this section, the remainder factor at 9.8 percent for determining the present value of the remainder interest due at the death of a person aged 47, the number of years nearest the elder sister's actual age at the decedent's death, is . 11352. The present value of the remainder interest at the date of the decedent's death is, therefore, $5,676.00 ($50,000x.11352).

Example 2. Income payable for an individual's life. A's parent bequeathed an income interest in property to A for life, with the remainder interest passing to B at A's death. At the time of the parent's death in October 1989, the value of the property was $50,000 and A was 30 years 10 months old. The section 7520 rate in October 1989 was 10.2 percent. Under Table S in paragraph (d)(6) of this section, the remainder factor at 10.2 percent for determining the present value of the remainder interest due at the death of a person aged 31, the number of years closest to A's age at the decedent's death, is .03753. Converting this remainder factor to an income factor, as described in paragraph (d)(2)(iii) of this section, the factor for determining the present value of an income interest for the life of a person aged 31 is . 96247. The present value of A's interest at the time of the parent's death is, therefore, $48,123.50 ($50,000x.96247).

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Example 3. Annuity payable for an individual's life. A purchased an annuity for the benefit of both A and B. Under the terms of the annuity contract, at A's death, a survivor annuity of $10,000 a year payable in equal semiannual installments made at the end of each interval is payable to B for life. A died in September 1989. For September 1989, the section 7520 rate was 9.6 percent. At A's death, B was 45 years 7 months old. Under Table S in paragraph (d)(6) of this section, the factor at 9.6 percent for determining the present value of the remainder interest at the death of a person age 46 (the number of years nearest B's actual age) is .11013. By converting the factor to an annuity factor, as described in paragraph (d)(2)(iv) of this section, the factor for the present value of an annuity payable until the death of a person age 46 is 9.2695 (1.00000 minus .11013, divided by .096). The adjustment factor from Table K in paragraph (d)(6) of this section at an interest rate of 9.6 percent for semiannual annuity payments made at the end of the period is 1.0235. The present value of the annuity at the date of A's death is, therefore, $94,873.33 ($10,000x9.2695x1.0235).

Example 4. Annuity payable for a term of years. The decedent, or the decedent's estate, was entitled to receive an annuity of $10,000 a year payable in equal quarterly installments at the end of each quarter throughout a term certain. The decedent died in February 1990. For February 1990, the section 7520 rate was 9.8 percent. A quarterly payment had just been made prior to the decedent's death and payments were to continue for 5 more years. Under Table B in paragraph (d)(6) of this section for the interest rate of 9.8 percent, the factor for the present value of a remainder interest due after a term of 5 years is .626597. Converting the factor to an annuity factor, as described in paragraph (d)(2)(iv) of this section, the factor for the present value of an annuity for a term of 5 years is 3.8102. The adjustment factor from Table K in paragraph (d)(6) of this section at an interest rate of 9.8 percent for quarterly annuity payments made at the end of the period is 1.0360. The present value of the annuity is, therefore, $39,473.67 ($10,000x3.8102x1.0360).

(6) Actuarial Tables. Except as provided in § 20.7520-3(b) (pertaining to certain limitations on the use of prescribed tables), the following tables must be used in the application of the provisions of this section when the section 7520 interest rate component is between 4.2 and 14 percent.


[Note: The following TABLE/FORM is too wide to be displayed on one screen. You must print it for a meaningful review of its contents. The table has been divided into multiple pieces with each piece containing information to help you assemble a printout of the table. The information for each piece includes: (1) a three line message preceding the tabular data showing by line # and character # the position of the upper left-hand corner of the piece and the position of the piece within the entire table; and (2) a numeric scale following the tabular data displaying the character positions.]

*********************************************************************************
******** This is piece 1. -- It begins at character 1 of table line 1. ********
*********************************************************************************

            TABLE B.--TERM CERTAIN
------------------------------------

           ------------------------------
Years    4.2%      4.4%      4.6%
------------------------------------

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

| Citation | Search Result | Rank 2 of 5 | Database |
|---|---|---|---|
| 26 CFR S 20.2039-1 | | | CFR99 |
| 26 C.F.R. § 20.2039-1 | | | |

CODE OF FEDERAL REGULATIONS
TITLE 26--INTERNAL REVENUE
CHAPTER I--INTERNAL REVENUE SERVICE, DEPARTMENT OF THE TREASURY
SUBCHAPTER B--ESTATE AND GIFT TAXES
PART 20--ESTATE TAX; ESTATES OF DECEDENTS DYING AFTER AUGUST 16, 1954
ESTATES OF CITIZENS OR RESIDENTS
GROSS ESTATE

§ **20.2039-1** Annuities.

(a) In general. A decedent's gross estate includes under section 2039(a) and (b) the value of an annuity or other payment receivable by any beneficiary by reason of surviving the decedent under certain agreements or plans to the extent that the value of the annuity or other payment is attributable to contributions made by the decedent or his employer. Section 2039(a) and (b), however, has no application to an amount which constitutes the proceeds of insurance under a policy on the decedent's life. Paragraph (b) of this section describes the agreements or plans to which section 2039(a) and (b) applies; paragraph (c) of this section provides rules for determining the amount includible in the decedent's gross estate; and paragraph (d) of this section distinguishes proceeds of life insurance. The fact that an annuity or other payment is not includible in a decedent's gross estate under section 2039(a) and (b) does not mean that it is not includible under some other section of part III of subchapter A of chapter 11. However, see section 2039(c) and (d) and § 20.2039-2 for rules relating to the exclusion from a decedent's gross estate of annuities and other payments under certain "qualified plans".

(b) Agreements or plans to which section 2039(a) and (b) applies. (1) Section 2039(a) and (b) applies to the value of an annuity or other payment receivable by any beneficiary under any form of contract or agreement entered into after March 3, 1931, under which--

(i) An annuity or other payment was payable to the decedent, either alone or in conjunction with another person or persons, for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death, or

(ii) The decedent possessed, for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death, the right to receive such an annuity or other payment, either alone or in conjunction with another person or persons.

The term "annuity or other payment" as used with respect to both the decedent and the beneficiary has reference to one or more payments extending over any period of time. The payments may be equal or unequal, conditional or unconditional, periodic or sporadic. The term "contract or agreement" includes any arrangement, understanding or plan, or any combination of arrangements, understandings or plans arising by reason of the decedent's employment. An annuity or other payment "was payable" to the decedent if, at the time of his death, the decedent was in fact receiving an annuity or other payment, whether or not he had an enforceable right to have payments continued. The decedent "possessed the right to receive" an annuity or other payment if, immediately before his death, the decedent had an enforceable right to receive payments at some time in the future, whether or not, at the time of his death, he had a present right to receive payments. In connection with the preceding sentence, the decedent will be regarded as having had "an enforceable right to receive payments at some time in the future" so long as he had complied with his obligations under the contract or agreement up to the time of his death. For the meaning of the phrase "for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death", see section 2036 and § 20.2036-1.

(2) The application of this paragraph is illustrated and more fully explained in the following examples. In each example: (i) It is assumed that all transactions occurred after March 3, 1931, and (ii) the amount stated to be includible in the decedent's gross estate is determined in accordance with the provisions of paragraph (c) of this section.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Example (1). The decedent purchased an annuity contract under the terms of which the issuing company agreed to pay an annuity to the decedent for his life and, upon his death, to pay a specified lump sum to his designated beneficiary. The decedent was drawing his annuity at the time of his death. The amount of the lump sum payment to the beneficiary is includible in the decedent's gross estate under section 2039(a) and (b).

Example (2). Pursuant to a retirement plan, the employer made contributions to a fund which was to provide the employee, upon his retirement at age 60, with an annuity for life, and which was to provide the employee's wife, upon his death after retirement, with a similar annuity for life. The benefits under the plan were completely forfeitable during the employee's life, but upon his death after retirement, the benefits to the wife were forfeitable only upon her remarriage. The employee had no right to originally designate or to ever change the employer's designation of the surviving beneficiary. The retirement plan at no time met the requirements of section 401(a) (relating to qualified plans). Assume that the employee died at age 61 after the employer started

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

CODE OF FEDERAL REGULATIONS
TITLE 26--INTERNAL REVENUE
CHAPTER I--INTERNAL REVENUE SERVICE, DEPARTMENT OF THE TREASURY
SUBCHAPTER B--ESTATE AND GIFT TAXES
PART 20--ESTATE TAX; ESTATES OF DECEDENTS DYING AFTER AUGUST 16, 1954
GENERAL ACTUARIAL VALUATIONS

§ **20.7520-1** Valuation of annuities, unitrust interests, interests for life or term of years, and remainder or reversionary interests.

(a) General actuarial valuations. (1) Except as otherwise provided in this section and in § 20.7520-3 (relating to exceptions to the use of prescribed tables under certain circumstances), in the case of estates of decedents with valuation dates after April 30, 1989, the fair market value of annuities, interests for life or for a term of years (including unitrust interests), remainders, and reversions are their present value determined under this section. See § 20.2031-7(d) (and, for certain prior periods, § 20.2031-7A) of this chapter for the computation of the value of annuities, unitrust interests, life estates, terms of years, remainders, and reversions, other than interests described in paragraphs (a)(2) and (a)(3) of this section.

(2) In the case of a transfer to a pooled income fund with a valuation date after April 30, 1989, see § 1.642(c)-6(e) (or, for certain prior periods, § 1.642(c)-6A) of this chapter (Income Tax Regulations) with respect to the valuation of the remainder interest.

(3) In the case of a transfer to a charitable remainder annuity trust with a valuation date after April 30, 1989, see § 1.664-2 of this chapter with respect to the valuation of the remainder interest. See § 1.664-4 (or, for certain prior periods, § 1.664-4A) of this chapter with respect to the valuation of the remainder interest in property transferred to a charitable remainder unitrust.

(b) Components of valuation--(1) Interest rate component--(i) Section 7520 Interest rate. The section 7520 interest rate is the rate of return, rounded to the nearest two-tenths of one percent, that is equal to 120 percent of the applicable Federal mid-term rate, compounded annually, for purposes of section 1274(d)(1), for the month in which the valuation date falls. In rounding the rate to the nearest two-tenths of a percent, any rate that is midway between one two-tenths of a percent and another is rounded up to the higher of those two rates. For example, if 120 percent of the applicable Federal mid-term rate is 10.30, the section 7520 interest rate component is 10.4. The section 7520 interest rate is published monthly by the Internal Revenue Service in the Internal Revenue Bulletin (See § 601.601(d)(2)(ii)(b) of this chapter).

(ii) Valuation date. Generally, the valuation date is the date on which the transfer takes place. For estate tax purposes, the valuation date is the date of the decedent's death, unless the executor elects the alternate valuation date in accordance with section 2032, in which event, and under the limitations prescribed in section 2032 and the regulations thereunder, the valuation date is the alternate valuation date. For special rules in the case of charitable transfers, see § 20.7520-2.

(2) Mortality component. The mortality component reflects the mortality data most recently available from the United States census. As new mortality data becomes available after each decennial census, the mortality component described in this section will be revised periodically and the revised mortality component tables will be published in the regulations at that time. For decedents' estates with valuation dates after April 30, 1989, the mortality component table (Table 80CNSMT) is included in § 20.2031-7(d)(6). See § 20.2031-7A for mortality component tables applicable to decedent's estates with valuation dates before May 1, 1989.

(c) Tables. The present value on the valuation date of an annuity, life estate, term of years, remainder, or reversion is computed by using the section 7520 interest rate component that is described in paragraph (b)(1) of this section and the mortality component that is described in paragraph (b)(2) of this section. Actuarial factors for determining these present values are included in tables in these regulations and in publications by the Internal Revenue Service. If a special factor is required in order to value an interest, the Internal Revenue Service will furnish the factor upon a request for a ruling. The request for a ruling must be accompanied by a recitation of the facts, including the date of

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

birth for each measuring life and copies of relevant instruments. A request for a ruling must comply with the instructions for requesting a ruling published periodically in the Internal Revenue Bulletin (see Rev. Proc. 94-1, 1994-1 I.R.B. 10, and the first Rev. Proc. published each year, and §§ 601.201 and 601.601(d)(2)(ii)(b) of this chapter) and include payment of the required user fee.

(1) Regulation sections containing tables with interest rates between 4.2 and 14 percent. Section 1.642(c)-6(e)(4) of this chapter contains Table S used for determining the present value of a single life remainder interest in a pooled income fund as defined in § 1.642(c)-5 of this chapter (Income Tax Regulations). Section 1.664-4(e)(6) of this chapter contains Table D (actuarial factors used in determining the present value of a remainder interest postponed for a term of years), Table U(1) (actuarial factors for one life), and Table F (payout factors) used in determining the present value of a remainder interest in a charitable remainder unitrust as defined in § 1.664-3 of this chapter. Section 20.2031-7(d)(6) contains Table S (actuarial factors for one life), Table B (actuarial factors used in determining the present value of an interest for a term of years), Table K (annuity end-of-interval adjustment factors), Table J (term certain annuity beginning-of-interval adjustment factors), and Table 80CNSMT (mortality components) used in determining the present value of annuities, life estates, remainders, and reversions. The regulations will be revised periodically to include new mortality component tables and new tables of factors.

(2) Internal Revenue Service publications containing tables with interest rates between 2.2 and 26 percent. The following documents (except for Publication 1459) have been published for sale by the Superintendent of Documents, United States Government Printing Office, Washington, DC 20402:

(i) Internal Revenue Service Publication 1457, "Actuarial Values, Alpha Volume," (8/89). This publication includes tables of valuation factors, as well as examples that show how to compute other valuation factors, for determining the present value of annuities, life estates, terms of years, remainders, and reversions, measured by one or two lives. These factors may also be used in the valuation of interests in a charitable remainder annuity trust as defined in § 1.664-2 of this chapter (Income Tax Regulations) and a pooled income fund as defined in § 1.642(c)-5 of this chapter.

(ii) Internal Revenue Service Publication 1458, "Actuarial Values, Beta Volume," (8/89). This publication includes term certain tables and tables of one and two life valuation factors for determining the present value of remainder interests in a charitable remainder unitrust as defined in § 1.664-3 of this chapter.

(iii) Internal Revenue Service Publication 1459, "Actuarial Values, Gamma Volume," (8-89) is no longer available for purchase from the Superintendent of Documents. However, it may be obtained by requesting a copy from: CC:DOM:CORP:T:R (IRS Publication 1459), room 5228, Internal Revenue Service, POB 7604, Ben Franklin Station, Washington, DC 20044. This publication includes tables for computing depreciation adjustment factors. See § 1.170A-12 of this chapter (Income Tax Regulations).

(d) Effective date. This section is effective as of May 1, 1989.

[T.D. 8540, 59 FR 30170, June 10, 1994]

26 C. F. R. § **20.7520-1**

26 CFR § **20.7520-1**

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

life valuation factors for determining the present value of remainder interests in a charitable remainder unitrust as defined in § 1.664-3 of this chapter.

(iii) Internal Revenue Service Publication 1459, "Actuarial Values, Gamma Volume," (8-89). This publication includes tables for computing depreciation adjustment factors. See § 1.170A-12 of this chapter (Income Tax Regulations).

(d) *Effective date.*—This section applies after April 30, 1989, and before May 1, 1999. [Reg. § 20.7520-1.]

.01 **Historical Comment:** Proposed 11/2/92. Adopted 6/9/94 by T.D. 8540. Amended 4/29/99 by T.D. 8819.

• *Temporary Regulations*

[¶ 42,782C] § 20.7520-1T. **Valuation of annuities, unitrust interests, interests for life or term of years, and remainder or reversionary interests (Temporary).—** (a)(1) [Reserved].—For further guidance, see § 20.7520-1(a)1).

(2) In the case of a transfer to a pooled income fund with a valuation date after April 30, 1999, see § 1.642(c)-6T(e) (or, for certain prior periods, § 1.642(c)-6A) of this chapter (Income Tax Regulations) with respect to the valuation of the remainder interest.

(a)(3) through (b)(1) [Reserved]. For further guidance, see § 20.7520-1(a)(3) through (b)(1).

(2) *Mortality component.*—The mortality component reflects the mortality data most recently available from the United States Census. As new mortality data becomes available after each decennial census, the mortality component described in this section will be revised periodically and the mortality component tables will be published in the regulations at that time. For decedents' estates with valuation dates after April 30, 1999, the mortality component table (Table 90CM) is included in § 20.2031-7T(d)(7). See § 20.2031-7A for mortality component tables applicable to decedent's estates with valuation dates before May 1, 1999.

(c) [Reserved].—For further guidance, see § 20.7520-1(c).

(1) *Regulation sections containing tables with interest rates between 4.2 and 14 percent for valuation dates after April 30, 1999.*—Section 1.642(c)-6T(e)(6) of this chapter contains Table S used for determining the present value of a single life remainder interest in a pooled income fund as defined in § 1.642(c)-5 of this chapter. See § 1.642(c)-6A of this chapter for actuarial factors for one life applicable to valuation dates before May 1, 1999. Section 1.664-4(e)(6) of this chapter contains Table F (payout factors) and Table D (actuarial factors used in determining the present value of a remainder interest postponed for a term of years). Section 1.664-4T(e)(7) of this chapter contains Table U(1) (actuarial factors for one life). These tables are used in determining the present value of a remainder interest in a charitable remainder unitrust as defined in § 1.664-3 of this chapter. See § 1.664-4A of this chapter for actuarial factors for one life applicable to valuation dates before May 1, 1999. Section 20.2031-7(d)(6) contains Table B (actuarial factors used in determining the present value of an interest for a term of years), Table K (annuity end-of-interval adjustment factors), and Table J (term certain annuity beginning-of-interval adjustment factors). Section 20.2031-7T(d)(7) contains Table S (actuarial factors for one life) and Table 90CM (mortality components). These tables are used in determining the present value of annuities, life estates, remainders, and reversions. See § 20.2031-7A for actuarial factors for one life and mortality components applicable to valuation dates before May 1, 1999.

(2) *Internal Revenue Service publications containing tables with interest rates between 2.2 and 22 percent for valuation dates after April 30, 1999.*—The following documents are available for purchase from the Superintendent of Documents, United States Government Printing Office, Washington, DC 20402:

**2004(18) CCH—Standard Federal Tax Reports**    Reg. § 20.7520-1T(c)(2)    ¶ **42,782C**

(i) Internal Revenue Service Publication 1457, "Actuarial Values, Book Aleph," (1999). This publication includes tables of valuation factors, as well as examples that show how to compute other valuation factors, for determining the present value of annuities, life estates, terms of years, remainders, and reversions, measured by one or two lives. These factors may also be used in the valuation of interests in a charitable remainder annuity trust as defined in §1.664-2 of this chapter (Income Tax Regulations) and a pooled income fund as defined in §1.642(c)-5 of this chapter.

(ii) Internal Revenue Service Publication 1458, "Actuarial Values, Book Beth," (1999). This publication includes term certain tables and tables of one and two life valuation factors for determining the present value of remainder interests in a charitable remainder unitrust as defined in §1.664-3 of this chapter.

(iii) Internal Revenue Service Publication 1459, "Actuarial Values, Book Gimel," (1999). This publication includes tables for computing depreciation adjustment factors. See §1.170A-12T of this chapter.

(d) *Effective date.*—This section applies after April 30, 1999. [Temporary Reg. §20.7520-1T.]

.01 Historical Comment: Adopted 4/29/99 by T.D. 8819 (corrected 6/21/99).

• *Regulations*

[¶ 42,782D] §1.7520-2. **Valuation of charitable interests.**—(a) *In general.*—(1) *Valuation.*—Except as otherwise provided in this section and in §1.7520-3 (relating to exceptions to the use of prescribed tables under certain circumstances), the fair market value of annuities, interests for life or for a term of years, remainders, and reversions for which an income tax charitable deduction is allowable is the present value of such interests determined under §1.7520-1.

(2) *Prior-month election rule.*—If any part of the property interest transferred qualifies for an income tax charitable deduction under section 170(c), the taxpayer may elect (under paragraph (b) of this section) to compute the present value of the interest transferred by use of the section 7520 interest rate for the month during which the interest is transferred or the section 7520 interest rate component for either of the 2 months preceding the month during which the interest is transferred. Paragraph (b) of this section explains how a prior-month election is made. The interest rate for the month so elected is the applicable section 7520 interest rate. If the actuarial factor for either or both of the 2 months preceding the month during which the interest is transferred is based on a mortality experience that is different from the mortality experience at the date of the transfer and if the taxpayer elects to use the section 7520 rate for a prior month with the different mortality experience, the taxpayer must use the actuarial factor derived from the mortality experience in effect during the month of the section 7520 rate elected. All actuarial computations relating to the transfer must be made by applying the interest rate component and the mortality component of the month elected by the taxpayer.

(3) *Transfers of more than one interest in the same property.*—If a taxpayer transfers more than one interest in the same property at the same time, for purposes of valuing the transferred interests, the taxpayer must use the same interest rate and mortality component for each interest in the property transferred. If more than one interest in the same property is transferred in two or more separate transfers at different times, the value of each interest is determined by the use of the interest rate component and mortality component in effect during the month of the transfer of that interest or, if applicable under paragraph (a)(2) of this section, either of the two months preceding the month of the transfer.



(4) *Information required with tax return.*—The following information must be attached to the income tax return (or to the amended return) if the taxpayer claims a

**¶ 42,782D**  Reg. §20.7520-1T(c)(2)(i)                    ©2003, CCH INCORPORATED

CODE OF FEDERAL REGULATIONS
TITLE 26--INTERNAL REVENUE
CHAPTER I--INTERNAL REVENUE SERVICE, DEPARTMENT OF THE TREASURY
SUBCHAPTER B--ESTATE AND GIFT TAXES
PART 20--ESTATE TAX; ESTATES OF DECEDENTS DYING AFTER AUGUST 16, 1954
GENERAL ACTUARIAL VALUATIONS

§ **20.7520-3** Limitation on the application of section 7520.

(a) Internal Revenue Code sections to which section 7520 does not apply.  Section 7520 of the Internal Revenue Code does not apply for purposes of:

(1) Part I, subchapter D of subtitle A (section 401 et. seq.), relating to the income tax treatment of certain qualified plans.  (However, section 7520 does apply to the estate and gift tax treatment of certain qualified plans and for purposes of determining excess accumulations under section 4980A);

(2) Sections 72 and 101(b), relating to the income taxation of life insurance, endowment, and annuity contracts, unless otherwise provided for in the regulations under sections 72, 101, and 1011 (see, particularly, §§ 1.101-2(e)(1)(iii)(b)(2), and 1.1011-2(c), Example 8);

(3) Sections 83 and 451, unless otherwise provided for in the regulations under those sections;

(4) Section 457, relating to the valuation of deferred compensation, unless otherwise provided for in the regulations under section 457;

(5) Sections 3121(v) and 3306(r), relating to the valuation of deferred amounts, unless otherwise provided for in the regulations under those sections;

(6) Section 6058, relating to valuation statements evidencing compliance with qualified plan requirements, unless otherwise provided for in the regulations under section 6058;

(7) Section 7872, relating to income and gift taxation of interest-free loans and loans with below-market interest rates, unless otherwise provided for in the regulations under section 7872;  or

(8) Section 2702(a)(2)(A), relating to the value of a nonqualified retained interest upon a transfer of an interest in trust to or for the benefit of a member of the transferor's family;  and

(9) Any other sections of the Internal Revenue Code to the extent provided by the Internal Revenue Service in revenue rulings or revenue procedures.  (See §§ 601.201 and 601.601 of this chapter).

(b) Other limitations on the application of section 7520--(1) In general-- (i) Ordinary beneficial interests.  For purposes of this section:

(A) An ordinary annuity interest is the right to receive a fixed dollar amount at the end of each year during one or more measuring lives or for some other defined period.  A standard section 7520 annuity factor for an ordinary annuity interest represents the present worth of the right to receive $1.00 per year for a defined period, using the interest rate prescribed under section 7520 for the appropriate month.  If an annuity interest is payable more often than annually or is payable at the beginning of each period, a special adjustment must be made in any computation with a standard section 7520 annuity factor.

(B) An ordinary income interest is the right to receive the income from or the use of property during one or more measuring lives or for some other defined period.  A standard section 7520 income factor for an ordinary income interest represents the present worth of the right to receive the use of $1.00 for a defined period, using the interest rate prescribed under section 7520 for the appropriate month.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

(C) An ordinary remainder or reversionary interest is the right to receive an interest in property at the end of one or more measuring lives or some other defined period. A standard section 7520 remainder factor for an ordinary remainder or reversionary interest represents the present worth of the right to receive $1.00 at the end of a defined period, using the interest rate prescribed under section 7520 for the appropriate month.

(ii) Certain restricted beneficial interests. A restricted beneficial interest is an annuity, income, remainder, or reversionary interest that is subject to any contingency, power, or other restriction, whether the restriction is provided for by the terms of the trust, will, or other governing instrument or is caused by other circumstances. In general, a standard section 7520 annuity, income, or remainder factor may not be used to value a restricted beneficial interest. However, a special section 7520 annuity, income, or remainder factor may be used to value a restricted beneficial interest under some circumstances. See paragraphs (b)(2)(v) Example 4 and (b)(4) Example 1 of this section, which illustrate situations where special section 7520 actuarial factors are needed to take into account limitations on beneficial interests. See § 20.7520-1(c) for requesting a special factor from the Internal Revenue Service.

(iii) Other beneficial interests. If, under the provisions of this paragraph (b), the interest rate and mortality components prescribed under section 7520 are not applicable in determining the value of any annuity, income, remainder, or reversionary interest, the actual fair market value of the interest (determined without regard to section 7520) is based on all of the facts and circumstances if and to the extent permitted by the Internal Revenue Code provision applicable to the property interest.

(2) Provisions of governing instrument and other limitations on source of payment--(i) Annuities. A standard section 7520 annuity factor may not be used to determine the present value of an annuity for a specified term of years or the life of one or more individuals unless the effect of the trust, will, or other governing instrument is to ensure that the annuity will be paid for the entire defined period. In the case of an annuity payable from a trust or other limited fund, the annuity is not considered payable for the entire defined period if, considering the applicable section 7520 interest rate at the valuation date of the transfer, the annuity is expected to exhaust the fund before the last possible annuity payment is made in full. For this purpose, it must be assumed that it is possible for each measuring life to survive until age 110. For example, for a fixed annuity payable annually at the end of each year, if the amount of the annuity payment (expressed as a percentage of the initial corpus) is less than or equal to the applicable section 7520 interest rate at the date of the transfer, the corpus is assumed to be sufficient to make all payments. If the percentage exceeds the applicable section 7520 interest rate and the annuity is for a definite term of years, multiply the annual annuity amount by the Table B term certain annuity factor, as described in § 20.7520-1(c)(1), for the number of years of the defined period. If the percentage exceeds the applicable section 7520 interest rate and the annuity is payable for the life of one or more individuals, multiply the annual annuity amount by the Table B annuity factor for 110 years minus the age of the youngest individual. If the result exceeds the limited fund, the annuity may exhaust the fund, and it will be necessary to calculate a special section 7520 annuity factor that takes into account the exhaustion of the trust or fund. This computation would be modified, if appropriate, to take into account annuities with different payment terms. See § 25.7520-3(b)(2)(v) Example 5 of this chapter, which provides an illustration involving an annuity trust that is subject to exhaustion.

(ii) Income and similar interests--(A) Beneficial enjoyment. A standard section 7520 income factor for an ordinary income interest may not be used to determine the present value of an income or similar interest in trust for a term of years, or for the life of one or more individuals, unless the effect of the trust, will, or other governing instrument is to provide the income beneficiary with that degree of beneficial enjoyment of the property during the term of the income interest that the principles of the law of trusts accord to a person who is unqualifiedly designated as the income beneficiary of a trust for a similar period of time. This degree of beneficial enjoyment is provided only if it was the transferor's intent, as manifested by the provisions of the governing instrument and the surrounding circumstances, that the trust provide an income interest for the income beneficiary during the specified period of time that is consistent with the value of the trust corpus and with its preservation. In determining whether a trust arrangement evidences that intention, the treatment required or permitted with respect to individual items must be considered in relation to the entire system provided for in the administration of the subject trust. Similarly, in determining the present value of the right to use tangible property (whether or not in trust) for one or more measuring lives or for some other specified period of time, the interest rate component prescribed under section 7520 and § 1.7520-1 of this chapter may not be used unless, during the specified period, the effect of the trust, will or other governing instrument is to provide the beneficiary with that degree of use, possession, and enjoyment of the property

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

during the term of interest that applicable state law accords to a person who is unqualifiedly designated as a life tenant or term holder for a similar period of time.

(B) Diversions of income and corpus. A standard section 7520 income factor for an ordinary income interest may not be used to value an income interest or similar interest in property for a term of years, or for one or more measuring lives, if--

(1) The trust, will, or other governing instrument requires or permits the beneficiary's income or other enjoyment to be withheld, diverted, or accumulated for another person's benefit without the consent of the income beneficiary; or

(2) The governing instrument requires or permits trust corpus to be withdrawn from the trust for another person's benefit without the consent of the income beneficiary during the income beneficiary's term of enjoyment and without accountability to the income beneficiary for such diversion.

(iii) Remainder and reversionary interests. A standard section 7520 remainder interest factor for an ordinary remainder or reversionary interest may not be used to determine the present value of a remainder or reversionary interest (whether in trust or otherwise) unless, consistent with the preservation and protection that the law of trusts would provide for a person who is unqualifiedly designated as the remainder beneficiary of a trust for a similar duration, the effect of the administrative and dispositive provisions for the interest or interests that precede the remainder or reversionary interest is to assure that the property will be adequately preserved and protected (e.g., from erosion, invasion, depletion, or damage) until the remainder or reversionary interest takes effect in possession and enjoyment. This degree of preservation and protection is provided only if it was the transferor's intent, as manifested by the provisions of the arrangement and the surrounding circumstances, that the entire disposition provide the remainder or reversionary beneficiary with an undiminished interest in the property transferred at the time of the termination of the prior interest.

(iv) Pooled income fund interests. In general, pooled income funds are created and administered to achieve a special rate of return. A beneficial interest in a pooled income fund is not ordinarily valued using a standard section 7520 income or remainder interest factor. The present value of a beneficial interest in a pooled income fund is determined according to rules and special remainder factors prescribed in § 1.642(c)-6 of this chapter and, when applicable, the rules set forth under paragraph (b)(3) of this section if the individual who is the measuring life is terminally ill at the time of the transfer.

(v) Examples. The provisions of this paragraph (b)(2) are illustrated by the following examples:

Example 1. Unproductive property. A died, survived by B and C. B died two years after A. A's will provided for a bequest of corporation stock in trust under the terms of which all of the trust income was paid to B for life. After the death of B, the trust terminated and the trust property was distributed to C. The trust specifically authorized, but did not require, the trustee to retain the shares of stock. The corporation paid no dividends on this stock during the 5 years before A's death and the 2 years before B's death. There was no indication that this policy would change after A's death. Under applicable state law, the corporation is considered to be a sound investment that satisfies fiduciary standards. The facts and circumstances, including applicable state law, indicate that B did not have the legal right to compel the trustee to make the trust corpus productive in conformity with the requirements for a lifetime trust income interest under applicable local law. Therefore, B's life income interest in this case is considered nonproductive. Consequently, B's income interest may not be valued actuarially under this section.

Example 2. Beneficiary's right to make trust productive. The facts are the same as in Example 1, except that the trustee is not specifically authorized to retain the shares of stock. Further, the terms of the trust specifically provide that B, the life income beneficiary, may require the trustee to make the trust corpus productive consistent with income yield standards for trusts under applicable state law. Under that law, the minimum rate of income that a productive trust may produce is substantially below the section 7520 interest rate for the month of A's death. In this case, because B has the right to compel the trustee to make the trust productive for purposes of applicable local law during the beneficiary's lifetime, the income interest is considered an ordinary income interest for purposes of this paragraph, and the standard section 7520 life income interest factor may be used to determine the present value of B's income interest.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Example 3. Discretionary invasion of corpus. The decedent, A, transferred property to a trust under the terms of which all of the trust income is to be paid to A's child for life and the remainder of the trust is to be distributed to a grandchild. The trust authorizes the trustee without restriction to distribute corpus to A's surviving spouse for the spouse's comfort and happiness. In this case, because the trustee's power to invade trust corpus is unrestricted, the exercise of the power could result in the termination of the income interest at any time. Consequently, the income interest is not considered an ordinary income interest for purposes of this paragraph, and may not be valued actuarially under this section.

Example 4. Limited invasion of corpus. The decedent, A, bequeathed property to a trust under the terms of which all of the trust income is to be paid to A's child for life and the remainder is to be distributed to A's grandchild. The trust authorizes the child to withdraw up to $5,000 per year from the trust corpus. In this case, the child's power to invade trust corpus is limited to an ascertainable amount each year. Annual invasions of any amount would be expected to progressively diminish the property from which the child's income is paid. Consequently, the income interest is not considered an ordinary income interest for purposes of this paragraph, and the standard section 7520 income interest factor may not be used to determine the present value of the income interest. Nevertheless, the present value of the child's income interest is ascertainable by making a special actuarial calculation that would take into account not only the initial value of the trust corpus, the section 7520 interest rate for the month of the transfer, and the mortality component for the child's age, but also the assumption that the trust corpus will decline at the rate of $5,000 each year during the child's lifetime. The child's right to receive an amount not in excess of $5,000 per year may be separately valued in this instance and, assuming the trust corpus would not exhaust before the child would attain age 110, would be considered an ordinary annuity interest.

Example 5. Power to consume. The decedent, A, devised a life estate in 3 parcels of real estate to A's surviving spouse with the remainder to a child, or, if the child doesn't survive, to the child's estate. A also conferred upon the spouse an unrestricted power to consume the property, which includes the right to sell part or all of the property and to use the proceeds for the spouse's support, comfort, happiness, and other purposes. Any portion of the property or its sale proceeds remaining at the death of the surviving spouse is to vest by operation of law in the child at that time. The child predeceased the surviving spouse. In this case, the surviving spouse's power to consume the corpus is unrestricted, and the exercise of the power could entirely exhaust the remainder interest during the life of the spouse. Consequently, the remainder interest that is includible in the child's estate is not considered an ordinary remainder interest for purposes of this paragraph and may not be valued actuarially under this section.

(3) Mortality component--(i) Terminal illness. Except as provided in paragraph (b)(3)(ii) of this section, the mortality component prescribed under section 7520 may not be used to determine the present value of an annuity, income interest, remainder interest, or reversionary interest if an individual who is a measuring life is terminally ill at the time of the decedent's death. For purposes of this paragraph (b)(3), an individual who is known to have an incurable illness or other deteriorating physical condition is considered terminally ill if there is at least a 50 percent probability that the individual will die within 1 year. However, if the individual survives for eighteen months or longer after the date of the decedent's death, that individual shall be presumed to have not been terminally ill at the date of death unless the contrary is established by clear and convincing evidence.

(ii) Terminal illness exceptions. In the case of the allowance of the credit for tax on a prior transfer under section 2013, if a final determination of the federal estate tax liability of the transferor's estate has been made under circumstances that required valuation of the life interest received by the transferee, the value of the property transferred, for purposes of the credit allowable to the transferee's estate, shall be the value determined previously in the transferor's estate. Otherwise, for purposes of section 2013, the provisions of paragraph (b)(3)(i) of this section shall govern in valuing the property transferred. The value of a decedent's reversionary interest under sections 2037(b) and 2042(2) shall be determined without regard to the physical condition, immediately before the decedent's death, of the individual who is the measuring life.

(iii) Death resulting from common accidents. The mortality component prescribed under section 7520 may not be used to determine the present value of an annuity, income interest, remainder interest, or reversionary interest if the decedent, and the individual who is the measuring life, die as a result of a common accident or other occurrence.

(4) Examples. The provisions of paragraph (b)(3) of this section are illustrated by the following examples:

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Example 1. Terminal illness. The decedent bequeaths $1,000,000 to a trust under the terms of which the trustee is to pay $103,000 per year to a charitable organization during the life of the decedent's child. Upon the death of the child, the remainder in the trust is to be distributed to the decedent's grandchild. The child, who is age 60, has been diagnosed with an incurable illness, and there is at least a 50 percent probability of the child dying within 1 year. Assuming the presumption provided for in paragraph (b)(3)(i) of this section does not apply, the standard life annuity factor for a person age 60 may not be used to determine the present value of the charitable organization's annuity interest because there is at least a 50 percent probability that the child, who is the measuring life, will die within 1 year. Instead, a special section 7520 annuity factor must be computed that takes into account the projection of the child's actual life expectancy.

Example 2. Deaths resulting from common accidents, etc. The decedent's will establishes a trust to pay income to the decedent's surviving spouse for life. The will provides that, upon the spouse's death or, if the spouse fails to survive the decedent, upon the decedent's death the trust property is to pass to the decedent's children. The decedent and the decedent's spouse die simultaneously in an accident under circumstances in which it was impossible to determine who survived the other. Even if the terms of the will and applicable state law presume that the decedent died first with the result that the property interest is considered to have passed in trust for the benefit of the spouse for life, after which the remainder is to be distributed to the decedent's children, the spouse's life income interest may not be valued by use of the mortality component described under section 7520. The result would be the same even if it was established that the spouse survived the decedent.

(5) Additional limitations. Section 7520 does not apply to the extent as may otherwise be provided by the Commissioner.

(c) Effective date. Section § **20.7520-3**(a) is effective as of May 1, 1989. The provisions of paragraph (b) of this section are effective with respect to estates of decedents dying after December 13, 1995.

[T.D. 8540, 59 FR 30172, June 10, 1994;  T.D. 8630, 60 FR 63916, Dec. 13, 1995;  61 FR 7992, March 1, 1996]

26 C. F. R. § **20.7520-3**

26 CFR § **20.7520-3**

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

26 CFR S 25.7520-3
26 C.F.R. § 25.7520-3
**C**

Page 1

Treas. Reg. § **25.7520-3**

CODE OF FEDERAL REGULATIONS
TITLE 26--INTERNAL REVENUE
CHAPTER I--INTERNAL REVENUE SERVICE,
DEPARTMENT OF THE TREASURY
SUBCHAPTER B--ESTATE AND GIFT TAXES
PART 25--GIFT TAX; GIFTS MADE AFTER
DECEMBER 31, 1954
GENERAL ACTUARIAL VALUATIONS
Current through October 15, 2004; 69 FR 61158
§ **25.7520-3** Limitation on the application of section
7520.

(a) Internal Revenue Code sections to which section
7520 does not apply.   Section 7520 of the Internal
Revenue Code does not apply for purposes of--

(1) Part I, subchapter D of subtitle A (section 401 et.
seq.), relating to the income tax treatment of certain
qualified plans.  (However, section 7520 does apply
to the estate and gift tax treatment of certain qualified
plans and for purposes of determining excess
accumulations under section 4980A);

(2) Sections 72 and 101(b), relating to the income
taxation of life insurance, endowment, and annuity
contracts, unless otherwise provided for in the
regulations under sections 72, 101, and 1011 (see,
particularly, §§ 1.101- 2(e)(1)(iii)(b)(2), and
1.1011-2(c), Example 8);

(3) Sections 83 and 451, unless otherwise provided
for in the regulations under those sections;

(4) Section 457, relating to the valuation of deferred
compensation, unless otherwise provided for in the
regulations under section 457;

(5) Sections 3121(v) and 3306(r), relating to the
valuation of deferred amounts, unless otherwise
provided for in the regulations under those sections;

(6) Section 6058, relating to valuation statements
evidencing compliance with qualified plan
requirements, unless otherwise provided for in the
regulations under section 6058;

(7) Section 7872, relating to income and gift taxation
of interest-free loans and loans with below-market
interest rates, unless otherwise provided for in the
regulations under section 7872; or

(8) Section 2702(a)(2)(A), relating to the value of a
nonqualified retained interest upon a transfer of an
interest in trust to or for the benefit of a member of
the transferor's family;  and

(9) Any other section of the Internal Revenue Code
to the extent provided by the Internal Revenue
Service in revenue rulings or revenue procedures.
(See §§ 601.201 and 601.601 of this chapter).

(b) Other limitations on the application of section
7520--(1) In general-- (i) Ordinary beneficial
interests.  For purposes of this section:

(A) An ordinary annuity interest is the right to
receive a fixed dollar amount at the end of each year
during one or more measuring lives or for some other
defined period.  A standard section 7520 annuity
factor for an ordinary annuity interest represents the
present worth of the right to receive $1.00 per year
for a defined period, using the interest rate prescribed
under section 7520 for the appropriate month.  If an
annuity interest is payable more often than annually
or is payable at the beginning of each period, a
special adjustment must be made in any computation
with a standard section 7520 annuity factor.

(B) An ordinary income interest is the right to
receive the income from or the use of property during
one or more measuring lives or for some other
defined period.  A standard section 7520 income
factor for an ordinary income interest represents the
present worth of the right to receive the use of $1.00
for a defined period, using the interest rate prescribed
under section 7520 for the appropriate month.
However, in the case of certain gifts made after
October 8, 1990, if the donor does not retain a
qualified annuity, unitrust, or reversionary interest,
the value of any interest retained by the donor is
considered to be zero if the remainder beneficiary is a
member of the donor's family.  See § 25.2702-2.

(C) An ordinary remainder or reversionary interest is
the right to receive an interest in property at the end
of one or more measuring lives or some other defined
period.  A standard section 7520 remainder factor for
an ordinary remainder or reversionary interest
represents the present worth of the right to receive
$1.00 at the end of a defined period, using the interest
rate prescribed under section 7520 for the appropriate
month.

(ii) Certain restricted beneficial interests.    A

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

restricted beneficial interest is an annuity, income, remainder, or reversionary interest that is subject to any contingency, power, or other restriction, whether the restriction is provided for by the terms of the trust, will, or other governing instrument or is caused by other circumstances. In general, a standard section 7520 annuity, income, or remainder factor may not be used to value a restricted beneficial interest. However, a special section 7520 annuity, income, or remainder factor may be used to value a restricted beneficial interest under some circumstances. See paragraphs (b)(2)(v) Example 5 and (b)(4) of this section, which illustrate situations in which special section 7520 actuarial factors are needed to take into account limitations on beneficial interests. See § 25.7520-1(c) for requesting a special factor from the Internal Revenue Service.

(iii) Other beneficial interests. If, under the provisions of this paragraph (b), the interest rate and mortality components prescribed under section 7520 are not applicable in determining the value of any annuity, income, remainder, or reversionary interest, the actual fair market value of the interest (determined without regard to section 7520) is based on all of the facts and circumstances if and to the extent permitted by the Internal Revenue Code provision applicable to the property interest.

(2) Provisions of governing instrument and other limitations on source of payment--(i) Annuities. A standard section 7520 annuity factor may not be used to determine the present value of an annuity for a specified term of years or the life of one or more individuals unless the effect of the trust, will, or other governing instrument is to ensure that the annuity will be paid for the entire defined period. In the case of an annuity payable from a trust or other limited fund, the annuity is not considered payable for the entire defined period if, considering the applicable section 7520 interest rate on the valuation date of the transfer, the annuity is expected to exhaust the fund before the last possible annuity payment is made in full. For this purpose, it must be assumed that it is possible for each measuring life to survive until age 110. For example, for a fixed annuity payable annually at the end of each year, if the amount of the annuity payment (expressed as a percentage of the initial corpus) is less than or equal to the applicable section 7520 interest rate at the date of the transfer, the corpus is assumed to be sufficient to make all payments. If the percentage exceeds the applicable section 7520 interest rate and the annuity is for a definite term of years, multiply the annual annuity amount by the Table B term certain annuity factor, as

described in § 25.7520-1(c)(1), for the number of years of the defined period. If the percentage exceeds the applicable section 7520 interest rate and the annuity is payable for the life of one or more individuals, multiply the annual annuity amount by the Table B annuity factor for 110 years minus the age of the youngest individual. If the result exceeds the limited fund, the annuity may exhaust the fund, and it will be necessary to calculate a special section 7520 annuity factor that takes into account the exhaustion of the trust or fund. This computation would be modified, if appropriate, to take into account annuities with different payment terms.

(ii) Income and similar interests--(A) Beneficial enjoyment. A standard section 7520 income factor for an ordinary income interest is not to be used to determine the present value of an income or similar interest in trust for a term of years or for the life of one or more individuals unless the effect of the trust, will, or other governing instrument is to provide the income beneficiary with that degree of beneficial enjoyment of the property during the term of the income interest that the principles of the law of trusts accord to a person who is unqualifiedly designated as the income beneficiary of a trust for a similar period of time. This degree of beneficial enjoyment is provided only if it was the transferor's intent, as manifested by the provisions of the governing instrument and the surrounding circumstances, that the trust provide an income interest for the income beneficiary during the specified period of time that is consistent with the value of the trust corpus and with its preservation. In determining whether a trust arrangement evidences that intention, the treatment required or permitted with respect to individual items must be considered in relation to the entire system provided for in the administration of the subject trust. Similarly, in determining the present value of the right to use tangible property (whether or not in trust) for one or more measuring lives or for some other specified period of time, the interest rate component prescribed under section 7520 and § 1.7520-1 of this chapter may not be used unless, during the specified period, the effect of the trust, will or other governing instrument is to provide the beneficiary with that degree of use, possession, and enjoyment of the property during the term of interest that applicable state law accords to a person who is unqualifiedly designated as a life tenant or term holder for a similar period of time.

(B) Diversions of income and corpus. A standard section 7520 income factor for an ordinary income interest may not be used to value an income interest

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

or similar interest in property for a term of years, or for one or more measuring lives, if--

(1) The trust, will, or other governing instrument requires or permits the beneficiary's income or other enjoyment to be withheld, diverted, or accumulated for another person's benefit without the consent of the income beneficiary; or

(2) The governing instrument requires or permits trust corpus to be withdrawn from the trust for another person's benefit without the consent of the income beneficiary during the income beneficiary's term of enjoyment and without accountability to the income beneficiary for such diversion.

(iii) Remainder and reversionary interests. A standard section 7520 remainder interest factor for an ordinary remainder or reversionary interest may not be used to determine the present value of a remainder or reversionary interest (whether in trust or otherwise) unless, consistent with the preservation and protection that the law of trusts would provide for a person who is unqualifiedly designated as the remainder beneficiary of a trust for a similar duration, the effect of the administrative and dispositive provisions for the interest or interests that precede the remainder or reversionary interest is to assure that the property will be adequately preserved and protected (e.g., from erosion, invasion, depletion, or damage) until the remainder or reversionary interest takes effect in possession and enjoyment. This degree of preservation and protection is provided only if it was the transferor's intent, as manifested by the provisions of the arrangement and the surrounding circumstances, that the entire disposition provide the remainder or reversionary beneficiary with an undiminished interest in the property transferred at the time of the termination of the prior interest.

(iv) Pooled income fund interests. In general, pooled income funds are created and administered to achieve a special rate of return. A beneficial interest in a pooled income fund is not ordinarily valued using a standard section 7520 income or remainder interest factor. The present value of a beneficial interest in a pooled income fund is determined according to rules and special remainder factors prescribed in § 1.642(c)-6 of this chapter and, when applicable, the rules set forth under paragraph (b)(3) of this section if the individual who is the measuring life is terminally ill at the time of the transfer.

(v) Examples. The provisions of this paragraph (b)(2) are illustrated by the following examples:

Example 1. Unproductive property. The donor transfers corporation stock to a trust under the terms of which all of the trust income is payable to A for life. Considering the applicable federal rate under section 7520 and the appropriate life estate factor for a person A's age, the value of A's income interest, if valued under this section, would be $10,000. After A's death, the trust is to terminate and the trust property is to be distributed to B. The trust specifically authorizes, but does not require, the trustee to retain the shares of stock. The corporation has paid no dividends on this stock during the past 5 years, and there is no indication that this policy will change in the near future. Under applicable state law, the corporation is considered to be a sound investment that satisfies fiduciary standards. The facts and circumstances, including applicable state law, indicate that the income beneficiary would not have the legal right to compel the trustee to make the trust corpus productive in conformity with the requirements for a lifetime trust income interest under applicable local law. Therefore, the life income interest in this case is considered nonproductive. Consequently, A's income interest may not be valued actuarially under this section.

Example 2. Beneficiary's right to make trust productive. The facts are the same as in Example 1, except that the trustee is not specifically authorized to retain the shares of corporation stock. Further, the terms of the trust specifically provide that the life income beneficiary may require the trustee to make the trust corpus productive consistent with income yield standards for trusts under applicable state law. Under that law, the minimum rate of income that a productive trust may produce is substantially below the section 7520 interest rate on the valuation date. In this case, because A, the income beneficiary, has the right to compel the trustee to make the trust productive for purposes of applicable local law during A's lifetime, the income interest is considered an ordinary income interest for purposes of this paragraph, and the standard section 7520 life income factor may be used to determine the value of A's income interest. However, in the case of gifts made after October 8, 1990, if the donor was the life income beneficiary, the value of the income interest would be considered to be zero in this situation. See § 25.2702-2.

Example 3. Annuity trust funded with unproductive property. The donor, who is age 60, transfers corporation stock worth $1,000,000 to a trust. The trust will pay a 6 percent ($60,000 per year) annuity

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

in cash or other property to the donor for 10 years or until the donor's prior death. Upon the termination of the trust, the trust property is to be distributed to the donor's child. The section 7520 rate for the month of the transfer is 8.2 percent. The corporation has paid no dividends on the stock during the past 5 years, and there is no indication that this policy will change in the near future. Under applicable state law, the corporation is considered to be a sound investment that satisfies fiduciary standards. Therefore, the trust's sole investment in this corporation is not expected to adversely affect the interest of either the annuity beneficiary or the remainder beneficiary. Considering the 6 percent annuity payout rate and the 8.2 percent section 7520 interest rate, the trust corpus is considered sufficient to pay this annuity for the entire 10- year term of the trust, or even indefinitely. The trust specifically authorizes, but does not require, the trustee to retain the shares of stock. Although it appears that neither beneficiary would be able to compel the trustee to make the trust corpus produce investment income, the annuity interest in this case is considered to be an ordinary annuity interest, and a section 7520 annuity factor may be used to determine the present value of the annuity. In this case, the section 7520 annuity factor would represent the right to receive $1.00 per year for a term of 10 years or the prior death of a person age 60.

Example 4. Unitrust funded with unproductive property. The facts are the same as in Example 3, except that the donor has retained a unitrust interest equal to 7 percent of the value of the trust property, valued as of the beginning of each year. Although the trust corpus is nonincome-producing, the present value of the donor's retained unitrust interest may be determined by using the section 7520 unitrust factor for a term of years or a prior death.

Example 5. Eroding corpus in an annuity trust. (i) The donor, who is age 60 and in normal health, transfers property worth $1,000,000 to a trust. The trust will pay a 10 percent ($100,000 per year) annuity to a charitable organization for the life of the donor, payable annually at the end of each period, and the remainder will be distributed to the donor's child. The section 7520 rate for the month of the transfer is 6.8 percent. First, it is necessary to determine whether the annuity may exhaust the corpus before all annuity payments are made. Because it is assumed that any measuring life may survive until age 110, any life annuity could require payments until the measuring life reaches age 110. Based on a section 7520 interest rate of 6.8 percent, the determination of whether the annuity may exhaust the corpus before the annuity payments are made is computed as follows:

```
Age to which life annuity may continue ............................ 110
less: Age of measuring life at date of transfer ...................... 60
                                                    --------------
  Number of years annuity may continue ................................ 50
Annual annuity payment ...................................... $100,000.00
Times: Annuity factor for 50 years derived from Table B ......... 14.1577
                                                    --------------
  Present value of term certain annuity ................... $1,415,770.00
```

(ii) Since the present value of an annuity for a term of 50 years exceeds the corpus, the annuity may exhaust the trust before all payments are made. Consequently, the annuity must be valued as an annuity payable for a term of years or until the prior death of the annuitant, with the term of years determined by when the fund will be exhausted by the annuity payments.

(iii) Using factors based on Table 90CM at 6.8 percent (see § 20.2031-7(d)(7) of this chapter), it is determined that the fund will be sufficient to make 17 annual payments, but not to make the entire 18th payment. Specifically, the initial corpus will be able to make payments of $67,287.26 per year for 17 years plus payments of $32,712.74 per year for 18 years.

The annuity is valued by adding the value of the two separate temporary annuities.

(iv) Based on Table H of Publication 1457 (a copy of this publication may be purchased from the Superintendent of Documents, United States Government Printing Office, Washington, DC 20402), the present value of an annuity of $67,287.26 per year payable for 17 years or until the prior death of a person aged 60 is $588,016.64 ($67,287.26 x 8.7389). The present value of an annuity of $32,712.74 per year payable for 18 years or until the prior death of a person aged 60 is $292,196.74 ($32,712.74 x 8.9322). Thus, the present value of the charitable annuity interest is $880,213.38 ($588,016.64 + $292,196.74).

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

26 CFR S 25.7520-3

(3) Mortality component. The mortality component prescribed under section 7520 may not be used to determine the present value of an annuity, income interest, remainder interest, or reversionary interest if an individual who is a measuring life dies or is terminally ill at the time the gift is completed. For purposes of this paragraph (b)(3), an individual who is known to have an incurable illness or other deteriorating physical condition is considered terminally ill if there is at least a 50 percent probability that the individual will die within 1 year. However, if the individual survives for eighteen months or longer after the date the gift is completed, that individual shall be presumed to have not been terminally ill at the date the gift was completed unless the contrary is established by clear and convincing evidence.

(4) Example. The provisions of paragraph (b)(3) of this section are illustrated by the following example:

Example. Terminal illness. The donor transfers property worth $1,000,000 to a child in exchange for the child's promise to pay the donor $103,000 per year for the donor's life, payable annually at the end of each period. The donor is age 60 but has been diagnosed with an incurable illness and has at least a 50 percent probability of dying within 1 year. The section 7520 interest rate for the month of the transfer is 10.6 percent, and the standard annuity factor at that interest rate for a person age 60 in normal health is 7.5590. Thus, if the donor were not terminally ill, the present value of the annuity would be $778,577

($103,000 x 7.5590). Assuming the presumption provided in paragraph (b)(3) of this section does not apply, because there is at least a 50 percent probability that the donor will die within 1 year, the standard section 7520 annuity factor may not be used to determine the present value of the donor's annuity interest. Instead, a special section 7520 annuity factor must be computed that takes into account the projection of the donor's actual life expectancy.

(5) Additional limitations. Section 7520 does not apply to the extent as may otherwise be provided by the Commissioner.

(c) Effective date. Section **25.7520-3**(a) is effective as of May 1, 1989. The provisions of paragraph (b) of this section are effective with respect to gifts made after December 13, 1995.

[T.D. 8540, 59 FR 30178, June 10, 1994; T.D. 8630, 60 FR 63919, Dec. 13, 1995; 61 FR 7992, March 1, 1996; T.D. 8819, 64 FR 23228, April 30, 1999; T.D. 8886, 65 FR 36943, June 12, 2000]

<General Materials (GM) - References, Annotations, or Tables>

26 C. F. R. § **25.7520-3**

26 CFR § **25.7520-3**

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.