IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

ESTATE OF JOHN R. DONOVAN, JR., deceased;
JOHN J. DONOVAN, SR., executor,


Plaintiff,


v.


UNITED STATES OF AMERICA,


Defendant.

---

Civ. No. 04-10594 DPW

---

PLAINTIFF'S BRIEF IN OPPOSITION OF UNITED STATES'
MOTION FOR SUMMARY JUDGMENT

---

Edward DeFranceschi, PC
Edward DeFranceschi, Esq.
Jason Bell, Esq.
Attorneys for Plaintiff
6 Beacon Street, Ste 515
Boston, MA 02108
(617) 723-6068

TABLE OF CONTENTS

Table of Authorities---------------------------------------------------------------------------------ii

Argument------------------------------------------------------------------------------------------1

    I.     APPLICATION OF SUMMARY JUDGMENT PRINCIPALS-------------------1

    II.    THE SECTION 7520 ANNUITY TABLES ARE ONLY
           APPLICABLE TO "ORDINARY ANNUITY" INTERESTS---------------------2

          A.   Enactment of Internal Revenue Code Section 7520--------------------------3

          B.   Treasury Regulation § 20.7520-3: Limitation on the
               Application of Section 7520------------------------------------------------3

               1.    Treasury Regulation § 20.7520-3 (a)----------------------------------4

               2.    Treasury Regulation § 20.7520-3 (b)----------------------------------4

    III.   THE DECEDENT'S RIGHT TO RECEIVE THE
           NINETEEN REMAINING ANNUAL PAYMENTS FROM
           THE COMMONWEALTH OF MASSACHUSETTS AS
           THE RESULT OF WINNING A MASSACHUSETTS
           LOTTERY PRIZE WAS NOT AN ORDINARY ANNUITY
           WITHIN THE MEANING OF INTERNAL REVENUE
           CODE SECTION 7520-------------------------------------------------------5

          A.   An Ordinary Annuity------------------------------------------------------6

          B.   Massachusetts Law Imposed a Substantial Restriction on
               the Decedent's Interest in the Remaining Lottery Payments----------------7

    IV.   THE DEFENDANT HAS NOT SHOWN THAT THERE IS
           NO EVIDENCE TO SUPPORT THE PLAINTIFF'S CASE----------------------8

Conclusion--------------------------------------------------------------------------------------12

Appendix

       Exhibit A (T.D. 8630, 1996-1 C.B. 339)

       Exhibit B (59 Fed. Reg. 30180-01, 1994-2 C.B. 899)

TABLE OF AUTHORITIES

**CASES**

Acosta v. Ames Dep't Stores, Inc., No. 04-1016, 2004 U.S. App. LEXIS 19823

    (1st Cir. Sept. 22, 2004)----------------------------------------------------------------------2

Allstate Ins. Co. v. American Bankers' Ins. Co., 882 F.2d 856 (4th Cir. 1989)--------------------6

Estate of Cook v. Commissioner, 349 F.3d 850 (5th Cir. 2003)----------------------------------9, 10

Estate of Gribauskas v. Commissioner, 116 T.C. 142 (2001)-------------------------------------9, 10

Gribauskas v. Commissioner, 372 F.3d 85 (2nd Cir. 2003)----------------------------------------7

Ithaca Trust v. United States, 279 U.S. 151 (1929)----------------------------------------------4, 5

Estate of McLendon v. Commissioner, T.C.M. 1993-459 (1993)-------------------------------------3

Midland States Life Ins. Co. v. Cardillo. 797 N.E.2d 11 (Mass. App. Ct. 2003)--------------------7

Moffett v. Commissioner, 269 F.2d 738 (4th Cir. 1959)--------------------------------------------3

O'Reilly v. Commissioner, 973 F.2d 1403 (8th Cir. 1992)------------------------------------------3

Singer Friedlander Corp. v. State Lottery Comm'n, 670 N.E.2d 144 (Mass. 1996)----------------7

In re Smather's Will, 234 N.Y.S. 99 (N.Y. Sur. Ct. 1929)------------------------------------------6

**STATUTES**

I.R.C. § 7520------------------------------------------------------------------------------------passim

I.R.C. § 7520 (a)(1)-------------------------------------------------------------------------------3

I.R.C. § 7520 (b)----------------------------------------------------------------------------------3

Mass. Gen. Laws c. 10, § 28 (amended July 1, 2004)------------------------------------------7, 11

**REGULATIONS**

Treas. Reg. § 20.7520-3----------------------------------------------------------------------3, 4, 8, 10

Treas. Reg. § 20.7520-3 (a)-------------------------------------------------------------------4

Treas. Reg. § 20.7520-3 (b)-------------------------------------------------------------------4

Treas. Reg. § 20.7520-3 (b)(1)-----------------------------------------------------------4, 5, 9

Treas. Reg. § 20.7520-3 (b)(1)(i)(A)-------------------------------------------------------4

Treas. Reg. § 20.7520-3 (b)(1)(ii)--------------------------------------------------------5, 9

Treas. Reg. § 20.7520-3 (b)(1)(iii)----------------------------------------------------------5

Treas. Reg. § 20.7520-3 (b)(2)-------------------------------------------------------------9

Treas. Reg. § 20.7520-3 (b)(2)(i)----------------------------------------------------------9

Treas. Reg. § 20.7520-3 (b)(2)(v)---------------------------------------------------------9

## ADMINISTRATIVE DECISIONS

59 Fed. Reg. 30180-01, 1994-2 C.B. 899-------------------------------------------3, 4, 8, 10, 11

Rev. Rul. 77-454, 1977-2 C.B. 351-------------------------------------------------------3

Rev. Rul. 80-80, 1980-1 C.B. 194--------------------------------------------------------3

T.D. 8630, 1996-1 C.B. 339------------------------------------------------------------3, 4, 8

## OTHER AUTHORITY

4 AM JUR 2D *Annuities* § 20----------------------------------------------------------6

BNA, Tax Management Estates, Gifts & Trusts Portfolios, No. 805-2nd,

    Private Annuities, p. A-1 (1994)--------------------------------------------------6

<u>ARGUMENT</u>

The plaintiff respectfully requests that the court deny the defendant's motion for summary judgment, and as grounds for opposition, respectfully states that there is a genuine issue of material fact between the parties as to whether the decedent's right to receive nineteen remaining annual payments from the Commonwealth of Massachusetts as the result of winning a Massachusetts lottery constitutes an "ordinary annuity" that must be valued under the Internal Revenue Code section 7520 tables.

I.    APPLICATION OF SUMMARY JUDGMENT PRINCIPALS

The First Circuit has recently set for the standards for the granting of a motion for summary judgment as follows:

> The summary judgment device enables a court "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required."  That device functions successfully when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Faced with a properly documented summary judgment motion, the nonmovant can thwart the motion only by showing through materials of evidentiary quality that a genuine dispute exists about some material fact.  This evidence "must have substance in the sense that it

1

limns differing versions of the truth which a fact finder must resolve at an
ensuing trial." In assessing such a proffer, an inquiring court must resolve
all evidentiary conflicts and draw all reasonable inferences in the
nonmovant's favor. If the proffer, viewed through this prism, "is merely
colorable, or is not significantly probative, summary judgment may be
granted."

*Acosta v. Ames Dep't Stores, Inc.*, No. 04-1016, 2004 U.S. App. LEXIS 19823, at *4-6 (1st Cir.
Sept. 22, 2004)(citations omitted). Here, the defendant has not met this standard.

The defendant's motion for summary judgment assumes that the right to future lottery
payments is an "ordinary annuity" not subject to a restriction on beneficial interest. As set forth
below, this is an assumption that is not supported by either the regulations nor by the evidence
proffered in support of the motion. The plaintiff does not question the validity of the regulations.
There is a genuine issue of fact whether the regulations apply to the valuation of the remaining
lottery payments.

II.    THE SECTION 7520 ANNUITY TABLES ARE ONLY APPLICABLE
       TO "ORDINARY ANNUITY" INTERESTS

The plaintiff does not contend that the decedent's right to the nineteen remaining lottery
payments are not characterized for tax purposes as an annuity. Similarly, the plaintiff does not
contend that the regulations promulgated under Internal Revenue Code section 7520 are invalid.
There is, however, a genuine issue of material fact as to whether the decedent's right to the
lottery payments was an "ordinary annuity" or a "restricted beneficial interest."

2

A.    Enactment of Internal Revenue Code Section 7520.

Pursuant to Internal Revenue Code section 7520, the value of any annuity is determined under tables prescribed by the Secretary. *See* I.R.C. § 7520 (a)(1). While the Internal Revenue Service was given legislative sanction to draft regulations, it has long acknowledged that when Congress enacted section 7520 it did not intend to supersede the well-established case law and administrative ruling positions that have historically held that departure from the tables is appropriate when adherence to them produces a substantially unrealistic and unreasonable result. *See* T.D. 8630, 1996-1 C.B. 339 (citing *O'Reilly v. Commissioner*, 973 F.2d 1403 (8th Cir. 1992), *Estate of McLendon v. Commissioner*, T.C.M. 1993-459, Rev. Rul. 80-80 (1980-1 C.B. 194), *Moffett v. Commissioner*, 269 F.2d 738 (4th Cir. 1959), Rev. Rul 77-454 (1977-2 C.B. 351)), which accompanied the publication of § 20.7520-3, a copy of which is attached hereto as Exhibit A. Accordingly, Congress directed the Secretary to promulgate regulations describing situations where the tables did not apply. *See* I.R.C. § 7520 (b).

B.    Treasury Regulation § 20.7520-3: Limitation on the Application of Section 7520.

The *Actuarial Tables Exceptions* set forth in the Secretary's Notice of Proposed Rulemaking dated June 10, 1994, a copy of which is attached hereto as Exhibit B, explained that "[i]n cases requiring the valuation of ordinary annuities . . . , the courts have consistently recognized the need to use the standard actuarial factors prescribed by the regulations." 59 Fed. Reg. 30180-01, 1994-2 C.B. 899 (citing *Ithaca Trust v. United States*, 279 U.S. 151 (1929)). "[I]f the interest in property to be valued[,]" however, "is *not an ordinary annuity* . . . the

standard . . . factors in the tables of factors set forth in the regulations and IRS publication cannot be used." *Id.* (emphasis added). To ensure that the tables are applied to ordinary annuities only, Treasury Regulation § 20.7520-3 sets out the limitation on the application of the section 7520 annuity tables.

<u>1.   Treasury Regulation § 20.7520-3 (a).</u>

Treasury Regulation § 20.7520-3 (a) sets out several Internal Revenue Code sections to which section 7520 does not apply. None of the sections cited in paragraph (a) are applicable to this case.

<u>2.   Treasury Regulation § 20.7520-3 (b).</u>

Paragraph (b) sets out other limitations on the application of section 7520. Paragraph (b)(1) first sets out the limitations in general terms. First, the regulation explains that only *ordinary* annuity interests can be valued using a standard section 7520 annuity factor. *See* Treas. Reg. § 20.7520-3 (b)(1)(i)(A) (emphasis added). An ordinary annuity interest is defined as the right to receive a fixed dollar amount at the end of each year during one or more measuring lives. *See id*. An ordinary annuity provides "the beneficiary of the annuity . . . with the degree of beneficial enjoyment that is consistent with the traditional character of the property interest under applicable local law." T.D. 8630, 1996-1 C.B. 339.

Secondly, paragraph (b)(1) explains that certain restricted beneficial interests cannot be valued using a standard section 7520 annuity, income, or remainder factor. *See* Treas. Reg. § 20.7520-3 (b)(1)(ii). A restricted beneficial interest is an annuity, income, remainder, or reversionary interest that is subject to any contingency, power, or *other restriction*. *See id.* (emphasis added). The term "other restriction" is not defined by paragraph (b)(1)(ii). *See id.*

Finally, paragraph (b)(1) explains that if the standard section 7520 annuity, income, or remainder factors cannot be used, the actual fair market value of the interest is based on all facts and circumstances applicable to the property interest. *See* Treas. Reg. § 20.7520-3 (b)(1)(iii).

III.    THE DECEDENT'S RIGHT TO RECEIVE THE NINETEEN REMAINING ANNUAL PAYMENTS FROM THE COMMONWEALTH OF MASSACHUSETTS AS THE RESULT OF WINNING A MASSACHUSETTS LOTTERY PRIZE WAS NOT AN ORDINARY ANNUITY WITHIN THE MEANING OF INTERNAL REVENUE CODE SECTION 7520

There is a genuine issue of material fact concerning the application of the section 7520 annuity tables to the decedent's interest in the nineteen remaining annual lottery payments. If the decedent's interest in the lottery payments was consistent with that of an ordinary annuity, meaning that the decedent's interest was consistent with the type of property interest that the standard valuation tables are designed to measure, the standard section 7520 tables apply. If, however, the decedent's interest in the lottery payments was not an ordinary annuity, meaning that the decedent's interest was a restricted interest, the standard section 7520 tables do not apply and the value of the decedent's interest is based on a facts and circumstances test. Here, the

decedent's interest cannot be valued by the section 7520 tables because his interest was subject to a substantial restriction pursuant to Massachusetts law.

A.     An Ordinary Annuity.

An ordinary annuity is a transaction whereby an individual transfers cash to another individual in exchange for the transferee's promise to make periodic payments, representing both a portion of the original asset plus some return on that investment, in fixed amounts to the transferor for the remainder of the transferor's life or for a fixed term.  *See* BLACK'S LAW DICTIONARY 88-89 (7th ed. 1999); BNA, Tax Management Estates, Gifts & Trusts Portfolios, No. 805-2nd, Private Annuities, p. A-1 (1994).  An ordinary annuity can be alienated and assigned.  *See, e.g.,* 4 AM JUR. 2D *Annuities* § 20 (citing *Allstate Ins. Co. v. American Bankers' Ins. Co.*, 882 F.2d 856 (4th Cir. 1989); *In re Smather's Will*, 234 N.Y.S. 99 (N.Y. Sur. Ct. 1929)).

Here, the transaction associated with that of an ordinary annuity was notable absent, as the decedent did not transfer cash in exchange for the right to receive periodic payments. Instead, the decedent paid a nominal amount to the Massachusetts Lottery Commission for the mere chance to win a lottery jackpot.

B.    Massachusetts Law Imposed a Substantial Restriction on the
Decedent's Interest in the Remaining Lottery Payments.

At the time of the decedent's death, Massachusetts law prohibited the decedent from

assigning his right to receive the nineteen remaining lottery payments.  *See* MASS. GEN. LAWS c.

10, § 28 (amended July 1, 2004); *see also* Singer Friedlander Corp. v. State Lottery Comm'n, 670

N.E.2d 144 (Mass. 1996); Midland States Life Ins. Co. v. Cardillo, 797 N.E.2d 11 (Mass. App.

Ct. 2003).  This restriction on assignment affected the decedent's ability to exchange his rights to

future payments for a lump sum.  *See* Gribauskas v. Commissioner, 342 F.3d 85, 86 (2nd Cir.

2003).  Despite the restrictions imposed by Massachusetts General Laws chapter 10, section 28,

previous winners of Massachusetts lottery prizes have exchanged their rights to receive future

lottery payments.  *See Singer Friedlander Corp.*, 670 N.E.2d at 145 (Mass. 1996); *Midland*

*States Life Ins. Co.*, 797 N.E.2d at 12-14 (Mass. App. Ct. 2003).  A potential buyer of the

payments, however, lacked the ability to perfect a security interest in the future payments.  In

addition, a potential buyer of the payments ran the chance that he would be unable to collect

future payments if the lottery prize winner became mentally ill, incompetent, or died.  A

potential buyer had to factor in these risks when determining how much money he was willing to

pay for the future payments.  According to the appraisal report obtained by the plaintiff, which is

attached to the stipulation of facts as Exhibit A, these risks are facts and circumstances which

impacted the date of death value.  *See Worcester County Trust Co. v. Commissioner*, 134 F.2d

578, 582 (1st Cir. 1943)(explaining that "[a] commodity freely salable is obviously worth more

on the market than a precisely similar commodity, which cannot be freely sold.")

This inability of the decedent to assign (i.e., sell) his interest in the remaining lottery payments was a substantial restriction.  As a result, the decedent did not possess the same degree of beneficial enjoyment that was consistent with that of an ordinary annuity.  An owner of an ordinary annuity is free to alienate and assign his interest in the annuity, unlike the decedent. The standard section 7520 tables, therefore, cannot be used to value the decedent's interest in the future lottery payments.  *See* T.D. 8630, 1996-1 C.B.

IV.    THE DEFENDANT HAS NOT SHOWN THAT THERE IS NO
       EVIDENCE TO SUPPORT THE PLAINTIFF'S CASE

The defendant has submitted no evidence to substantiate its claim that the lottery prize is an ordinary annuity that must be valued according to the standard section 7520 annuity tables. The defendant merely argues that the lottery payments must be valued according to the tables because the decedent's interest did not fit within the exceptions to the section 7520 standard annuity factors.  The defendant maintains that there are only three exceptions contained within § 20.7520-3, which are: (1) restricted beneficial interest; (2) limitations on source of payment; and (3) the mortality component.  The defendant's attempt to narrow the limitation of the tables down to only three exceptions is inconsistent with the Secretary's explanation in its Notice of Proposed Rulemaking.  In the Federal Register, the Secretary explains that "[t]he IRS has never attempted to include in the regulations all of the different actuarial factors that could apply to the many different kinds of vested and contingent annuity, income, and remainder interests that can arise in tax administration."  59 FR 30180-01, 1994-2 C.B. 899.  As a result, the § 20.7520-3 regulations are written very broadly.

The regulations provide that a restricted beneficial interest cannot be valued by the standard section 7520 annuity factors. *See* Treas. Reg. § 20.7520-3 (b)(1)(ii). A restricted beneficial interest is defined very broadly as "an annuity, income, remainder, or reversionary interest that is subject to any contingency, power, or *other restriction*." Treas. Reg. § 20.7520-3 (b)(1)(ii)(emphasis added). Despite this broad language, the defendant argues that the restriction imposed by Massachusetts law prohibiting the assignment of lottery winnings is not the type of restriction contemplated by the regulations. The defendant maintains that the term "restriction" references other limitations similar to contingencies or powers, such that it is doubtful that annuity payment can be made. To support this argument, the defendant cites to Treasury Regulation § 20.7520-3 (b)(2)(i) and the five examples contained within Treasury Regulation § 20.7520-3 (b)(2)(v). Considering the Secretary's explanation in its Notice of Proposed Rulemaking coupled with the broad language of Treasury Regulation § 20.7520-3 (b)(1)(ii), the defendant's view as to what constitutes an "other restriction" is too narrow. Furthermore, nothing in Treasury Regulation § 20.7520-3 (b)(2)(i) suggests that it is expanding on the term "other restriction" contained within Treasury Regulation § 20.7520-3 (b)(1)(ii). Lastly, the defendant's reliance on the examples contained within Treasury Regulation § 20.7520-3 (b)(2)(v) is misplaced. Treasury Regulation § 20.7520-3 (b)(2)(v) states that the examples provided illustrate the provisions of this paragraph (b)(2) and makes no mention that they also illustrate the provisions of paragraph (b)(1).

Finally, the defendant argues that that the regulations do not authorize departure from the tables for lack of marketability. In support of this position, the defendant cites to the Fifth Circuit's opinion in *Estate of Cook v. Commissioner*, 349 F.3d 850 (5th Cir. 2003) and the Tax

Court's decision in *Estate of Gribauskas v. Commissioner*, 116 T.C. 142 (2001). The defendant's position is flawed for three reasons.

First, the analysis of the *Cook*, *supra* and *Gribauskas*, *supra* decisions are inapplicable to this case. As the defendant pointed out, Treasury Regulation § 20.7520-3 is effective for transactions after December 13, 1995. Here, the decedent's date of death was July 23, 1999 so Treasury Regulation § 20.7520-3 applies. In *Cook*, *supra* and *Gribauskas*, *supra*, however, the dates of the decedents' death were November 6, 1995 and June 4, 1994 respectively. Accordingly, Treasury Regulation § 20.7520-3 did not apply to these transactions. As a result, the Fifth Circuit and the Tax Court did not decide *Cook*, *supra* and *Gribauskas*, *supra* within the context of Treasury Regulation § 20.7520-3. Instead, the issue decided by the Fifth Circuit and the Tax Court was whether the adherence to the tables would produce a substantially unrealistic and unreasonable result. In contrast, the issue before this Court in this motion is whether the decedent's right to future lottery payments was an ordinary annuity interest to be valued by the annuity tables or a restricted beneficial interest to be valued by all the facts and circumstances applicable to the property interest. If the decedent's interest is a restricted beneficial interest to valued by all the facts and circumstances, the issue then to be tried is whether the adherence to the tables would produce a substantially unrealistic and unreasonable result. *See* Treas. Reg. § 20.7520-3 (b)(1)(iii).

Second, the defendant's position is inconsistent with the Secretary's position as set forth in the *Actuarial Tables Exceptions* Notice of Proposed Rulemaking dated June 10, 1994. *See* 59 Fed. Reg. 30180-01, 1994-2 C.B. 899. As the Secretary explains, the annuity tables apply when

the annuity beneficiary possesses the same "degree of beneficial enjoyment that is consistent with the type of property interest that the standard valuation tables are designed to measure." *Id.* As stated above, an ordinary annuity can be alienated and assigned whereas the decedent's right to the future lottery payments was subject to anti-assignment restrictions imposed by Massachusetts General Laws chapter 10 section 28. Because the decedent's interest is inconsistent with that of an ordinary annuity, lack of marketability is an appropriate factor to be taken into account in determining whether the tables apply.

Third, the defendant's attempt to analogize the decedent's interest in the remaining lottery payments to other interests that cannot be transferred (i.e., CRATS, survivor annuities payable under qualified plans, and GRATS) is unpersuasive. The rationale behind stricter adherence to the tables in these other situations is dictated by the ability of the transferor to abuse the private terms for valuation purposes. In contrast, all terms and conditions of the contract between the decedent and the Commonwealth of Massachusetts were dictated by statute and regulation, and not in a private transaction. Furthermore, in these other situations, the transferor has an ownership interest in the underlying securities. Here, the decedent had no ownership or legal claim to the underlying security that the Commonwealth of Massachusetts purchased to fund its prize payments. Legal ownership and title to the underlying security always remained with the Commonwealth of Massachusetts. For the foregoing reasons, the decedent's interest in the nineteen remaining lottery payments is distinguishable from these other interests.

<u>CONCLUSION</u>

This court should deny the defendant's motion for summary judgment because there is a genuine issue of material fact concerning the application of the section 7520 tables to the decedent's interest in the nineteen remaining annual lottery payments.

Respectfully submitted,

Edward DeFranceschi, PC

<u>/s/ Edward DeFranceschi</u>
Edward DeFranceschi, Esq.
Jason Bell, Esq.
Attorneys for the Plaintiff
6 Beacon Street, Ste 515
Boston, MA 02108
(617) 723-6068

Dated: November 5, 2004

EXHIBIT A

T.D. 8630, 1996-1 C.B. 339

1996-1 C.B. 339, T.D. 8630, 1995 WL 733098 (Dept. Treas.), 60 FR 63913, 60 FR 63913-01

RULES and REGULATIONS

DEPARTMENT OF THE TREASURY

Internal Revenue Service

26 CFR Parts 1, 20, and 25

[TD 8630]

RIN 1545-AR56

Actuarial Tables Exceptions

Wednesday, December 13, 1995

*63913* AGENCY: Internal Revenue Service (IRS), Treasury.

ACTION: Final regulations.

SUMMARY: This document contains final income, estate, and gift tax regulations relating to exceptions to the use of the valuation tables in the regulations for valuing annuities, interests for life or a term of years, and remainder or reversionary interests, the valuation of which was the subject of final regulations published on June 10, 1994. These regulations are necessary in order to provide guidance consistent with court decisions concluding that the valuation tables are not to be used in certain situations.

EFFECTIVE DATE: These regulations are effective December 13, 1995.

FOR FURTHER INFORMATION CONTACT: William L. Blodgett, telephone (202) 622-3090 (not a toll-free number).

SUPPLEMENTARY INFORMATION:

Background

On June 10, 1994, the IRS published in the Federal Register (59 FR 30100) final income tax regulations under sections 170, 642, 664 and 7520 of the Internal Revenue Code (Code), and final estate and gift tax regulations under sections 2031, 2512 and 7520 of the Code providing actuarial tables to be used in valuing annuities, interests for life or a term of years, and remainder or reversionary interests under section 7520. On June 10, 1994, the IRS also published in the Federal Register (59 FR 30180) proposed amendments to the income, estate, and gift tax regulations prescribing circumstances when the published actuarial tables cannot be used to

2

value interests. This regulation finalizes those amendments.
Written comments responding to the notice of proposed rulemaking were received. Requests for a public hearing were also received but were subsequently withdrawn. After consideration of all the comments received, those amendments are revised and adopted by this Treasury decision.

Explanation of Provisions

Section 7520(a), which is effective for transfers after April 30, 1989, provides that the value of annuities, interests for life or a term of years, and remainder or reversionary interests is to be determined under tables published by the IRS. Section 7520(e) provides that, for purposes of section 7520, the term tables includes formulas. Section 7520(b) provides that section 7520 shall not apply for purposes of any provision specified in regulations. The Conference Report accompanying the Technical and Miscellaneous Revenue Act of 1988, H.R. Conf. Rep. No. 1104, 100th Cong., 2d Sess. 113 (1988) (1988-3 C.B. 603), states that section 7520 does not apply in "situations specified in Treasury regulations." A summary of the principal comments received and revisions made in the final regulations in response to those comments is provided below.

1. Valuation of Annuities, Income Interests, etc.

Under the proposed regulations, the tables cannot be used if the instrument of transfer does not provide the beneficiary of the annuity, income interest, or remainder interest with the degree of beneficial enjoyment that is consistent with the traditional character of that property interest under applicable local law. One comment letter suggested that, as a result of enactment of section 2702, it may no longer be necessary to prescribe special rules in the case of a trust corpus consisting of nonproductive property. It was decided to retain these rules because this issue will continue to arise in certain situations where section 2702 does not apply; e.g., the valuation of a gift of an income interest for purposes of determining the section 2503(b) gift tax exclusion; the valuation of the bequest of an income interest for purposes of the section 2013 estate tax credit.

In response to comments, the final regulations provide additional guidance for determining under what circumstances a life tenant or term certain beneficiary of tangible property possesses adequate beneficial use such that the tables would be used to value the interest.
A number of comments were received on the valuation of an annuity that is payable from a trust corpus that will exhaust prior to the annuitant reaching the presumed terminal age prescribed by the tables (age 110). Under the proposed regulations, the interest would be valued, not as a right to receive the annuity for the life of the annuitant, but rather as the right to receive the annuity for the shorter of the life of the annuitant or the date on which the corpus will exhaust. One commentator agreed that the possibility of exhaustion of corpus should be taken into account in cases of relatively severe underfunding of the trust. However, it was suggested that, if the underfunding was relatively less severe, it should be disregarded. After further consideration of this issue, the IRS has concluded that the method described in the proposed regulations for determining the value of the annuity is consistent with fundamental principles for determining present value and long-standing IRS position. See, Rev. Rul. 77-454 (1977-2 C.B. 351); Rev. Rul. 70-452 (1970-2 C.B. 199); Moffett v. Commissioner, 269 F.2d 738 (4th Cir. 1959); United States v. Dean, 224 F.2d 26 (1st Cir. 1955). However, in response to requests, the explanation of

the methodology and computation has been amplified.

2. Terminal Illness

Under the proposed regulations, the tables cannot be used if the individual, who is the measuring life with respect to the property interest, is terminally ill. Under the proposed regulations, the individual is terminally ill if that individual was known to have an incurable illness or deteriorating physical condition such that there is at *63914* least a 50 percent probability that the individual will die within one year.

One commentator suggested that the value of a property interest that is dependent upon a measuring life should be determined in all events based on the mortality component contained in Table 80CNSMT (which is based on the life experience of the general population), rather than a mortality component that reflects the actual terminally ill condition of the individual. The commentator also suggested that if departure from the actuarial tables is deemed appropriate in the case of terminally ill individuals, then the standard in Rev. Rul. 80-80 (1980-1 C.B. 194), which is not explicitly expressed in the form of a percentage probability of survival (as is the standard in the proposed regulations), adequately differentiates between individuals that should not be considered terminally ill and those that should. This commentator also questioned whether a percentage probability standard, such as the one used in the proposed regulations, would be feasible to administer.

The IRS continues to believe that mortality tables such as Table 80CNSMT should not be used to predict the survival probabilities of an individual whose time of death is reasonably predictable based on the facts presented. To determine whether the proposed test for classifying an individual as terminally ill would be feasible, the IRS consulted with a number of medical specialists. Medical experts called upon to assess the probability of survival of a terminally ill individual base their assessment on statistical compilations of the percentage of individuals who survive for a specified period of time when suffering with a particular disease. Thus, the IRS believes that a test for classifying an individual as terminally ill can reasonably be based upon the probability of survival for a specified period of time.

One commentator suggested that the mortality test should take into account the actual period of survival after the transfer. For example, if the individual actually survived for one year, that individual should not be deemed to have been terminally ill. Although post-transaction events are not ordinarily determinative for valuation purposes, such events may provide evidence of value as of the valuation date. Accordingly, the final regulations provide a presumption that if the individual who is the measuring life survives for eighteen months or longer after the transfer, that individual shall be presumed to have not been terminally ill on the date of the transfer unless the contrary is established by clear and convincing evidence.

The commentator also questioned whether the proposed test for classifying an individual as terminally ill would result in the classification of elderly people suffering from the general infirmities of old age as "terminally ill." The IRS continues to believe that the test should be consistently applied to people of all ages. Under the regulations, the individual must be inflicted with an incurable illness or other deteriorating physical condition that is life threatening. Thus,

elderly people suffering from the general infirmities of old age, but not from a specific incurable life-threatening illness, would not be considered terminally ill under the test. Consequently, if an elderly person has one or more illnesses, none of which, standing alone or considered together, is life-threatening, that person would not be considered to be terminally ill.

The same commentator suggested that "knowledge" of the terminal illness should be limited to actual knowledge by the taxpayer or the decedent, rather than to "knowledge" by any of the parties involved. However, limitation of the requisite "knowledge" to the taxpayer or decedent would present a significant burden to the IRS regarding proof and would present opportunities for easy circumvention. Thus, the IRS believes that the requirement that the condition of the individual be "known," although not necessarily by the taxpayer or decedent, is reasonable. Commentators suggested that the regulations should make it clear that a special actuarial factor taking into account a transferor's terminal illness may be used in valuing a transfer to a pooled income fund. The final regulations incorporate that suggestion.

Comments were received that the language in §20.7520-3(b)(3)(ii) of the proposed regulations regarding the valuation of a property interest that is based upon a terminally ill measuring life, for purposes of determining the applicable credit for tax on prior transfers under section 2013, was ambiguous. Generally, if the final determination of the estate tax liability in the transferor's estate was dependent on the valuation of the life interest received by the transferee, then the value of the property transferred, for purposes of determining the credit allowable for the transferee's estate, is the value determined previously for the transferor's estate. Section 20.7520-3(b)(3)(ii) of the final regulations clarifies this rule. The IRS invites comments on whether the value of a reversionary interest under section 673 should be determined without regard to the physical condition of the decedent immediately before death, a related issue that was raised by commentators.


3. Application of Actuarial Tables

One commentator suggested that the tables prescribed by the regulations must be used for valuing all interests transferred between April 30, 1989 (the effective date of section 7520) and December 13, 1995 (the effective date of the regulations). However, these regulations generally adopt principles established in case law and published IRS positions. See, e.g., O'Reilly v. Commissioner, 973 F.2d 1403 (8th Cir. 1992), rem'd, T.C.M. 1994-61 (underproductive income interest); Estate of McLendon v. Commissioner, T.C.M. 1993-459; Rev. Rul. 80-80 (1980-1 C.B. 194) (terminal illness of measuring life); Moffett v. Commissioner, 269 F.2d 738 (4th Cir. 1959); Rev. Rul. 77-454 (1977-2 C.B. 351) (exhausting corpus). There is no indication that Congress intended to supersede this well-established case law and administrative ruling position when it enacted section 7520. Consequently, in the case of transfers prior to the effective date of these regulations, the question of whether a particular interest must be valued based on the tables will be resolved based on applicable case law and revenue rulings.

Special Analyses

It has been determined that this Treasury decision is not a significant regulatory action as defined

in EO 12866. Therefore, a regulatory assessment is not required. It also has been determined that section 553(b) of the Administrative Procedure Act (5 U.S.C. chapter 5) and the Regulatory Flexibility Act (5 U.S.C. chapter 6) do not apply to these regulations, and, therefore, a Regulatory Flexibility Analysis is not required. Pursuant to section 7805(f) of the Internal Revenue Code, the notice of proposed rulemaking preceding these regulations was submitted to the Small Business Administration for comment on its impact on small business.

Drafting Information

The principal author of these regulations is William L. Blodgett, Office of Assistant Chief Counsel (Passthroughs and Special Industries), IRS. However, other personnel from the IRS and Treasury Department participated in their development.

EXHIBIT B

59 Fed. Reg. 30180-01, 1994-2 C.B. 899

59 FR 30180-01, 1994-2 C.B. 899, 1994-28 I.R.B. 130, 1994 WL 249304 (F.R.)

PROPOSED RULES

DEPARTMENT OF THE TREASURY

Internal Revenue Service

26 CFR Parts 1, 20, and 25

(PS-26-93)

RIN 1545-AR56

Actuarial Tables Exceptions

Friday, June 10, 1994

*30180* AGENCY: Internal Revenue Service (IRS), Treasury.

ACTION: Notice of proposed rulemaking.

SUMMARY: This document contains proposed amendments to the income, estate, and gift tax regulations under the Internal Revenue Code relating to exceptions to the use of standard valuation tables for valuing annuities, interests for life or a term of years, and remainder or reversionary interests. These amendments are necessary in order to provide guidance consistent with court decisions that call for deviation from the use of standard valuation tables in valuing those interests. The proposed regulations would apply in valuing all interests that would, but for the exceptions, be valued under section 7520 of the Code.

DATES: Written comments and requests for a public hearing must be received by August 9, 1994.

ADDRESSES: Send submissions to: CC:DOM:CORP:T:R ((PS-26-93)), room 5228, Internal Revenue Service, POB 7604, Ben Franklin Station, Washington, DC 20044. In the alternative, submissions may be hand delivered to: CC:DOM:CORP:T:R (PS-26-93)), room 5228, Internal Revenue Service, 1111 Constitution Avenue NW, Washington, DC.

FOR FURTHER INFORMATION CONTACT: William L. Blodgett, telephone (202) 622-3090 (not a toll-free number).

SUPPLEMENTARY INFORMATION:

Background

This document contains proposed regulations (26 CFR 1.7520-3(b), 20.7520-3(b), and 25.7520-3(b)) for the valuation of certain partial interests in property under section 7520 of the Internal Revenue Code (Code), as added by section 5031 of the Technical and Miscellaneous Revenue Act of 1988, when the use of standard actuarial tables would produce unreasonable results. The regulations are proposed to be effective for valuation dates occurring after the date the regulations are published as final regulations in the Federal Register.

Explanation of Provisions

Section 7520(a), which is effective after April 30, 1989, provides that the value of annuities, interests for life or a term of years, and remainder or reversionary interests is to be determined under tables published by the IRS based on an interest rate equal to 120 percent of the applicable Federal mid-term rate (rounded to the nearest two-tenths of one percent) in effect under section 1274(d)(1) for the month in which the valuation date falls. Section 7520(b) provides that section 7520 shall not apply for purposes of any provision specified in regulations. The Conference Report to the Technical and Miscellaneous Revenue Act of 1988, H.R. Conf. Rep. No. 1104, 100th Cong., 2d Sess. 113 (1988), 1988-3 C.B. 603, explains that section 7520 does not apply to "situations specified in Treasury regulations."

The IRS has never attempted to include in the regulations all of the different actuarial factors that could apply to the many different kinds of vested and contingent annuity, income, and remainder interests that can arise in tax administration. The actuarial tables that have been set forth in the regulations from time to time have listed only those factors that are most frequently needed by taxpayers. Generally, these actuarial tables have included the one-life annuity, income, and remainder factors for ages 0 through 109 and the term-certain annuity, income, and remainder factors for periods of 1 through 60 years. These one-life and term-certain factors are often referred to in this notice of proposed rulemaking as "standard actuarial factors" or "standard section 7520 actuarial factors."

Other standard actuarial factors that are less frequently needed by taxpayers are included in tables that have been separately published by the IRS from time to time and that may be purchased from the Government Printing Office. The tables in these books include two-life actuarial factors, as well as many one-life factors and term-certain factors not found in the regulations tables. These publications also include a number of examples that illustrate how to compute special section 7520 actuarial factors such as the annuity, income, or remainder factor for a period limited to the lesser of a term certain or a lifetime. Special actuarial factors have for many years been referred to as such in the regulations. See, for example, §20.2055-2(f)(5). Other special section 7520 actuarial factors that may apply to more unusual situations may be computed by the taxpayer or, upon request, by the Internal Revenue Service for the taxpayer, by using actuarial methods consistent with those used to compute the standard section 7520 actuarial factors that appear in the tables in the regulations and in the Service's publications. Examples of these more unusual situations include an annuity payable for more than two lives, a

right to income for a term certain or until the prior death of the first to die of two individuals, and the right to receive a remainder after a term certain if an individual survives the term.
In calculating a standard section 7520 actuarial factor, certain assumptions are made. For all standard section 7520 actuarial factors in the single-life and term-certain tables in §20.2031-7(d), the interest rate for enjoyment or the postponement of enjoyment is the applicable section 7520 rate. In the case of a life annuity, income, or remainder factor, the basis for mortality rates for measuring lives is the data in Table 80 CNSMT. However, in unusual situations, where special section 7520 actuarial factors must be computed, one or more alternative assumptions may be appropriate. For example, if the actual income is known to be below applicable standards, the section 7520 interest rate may not be used to project the trust income yield. Similarly, if a measuring life is classified as terminally ill, the standard mortality data from Table 80 CNSMT may not be used as the mortality basis. But, even though one or both of these exceptions is applicable in a case, the section 7520 interest rate will ordinarily be used to discount the value of the right to any postponed enjoyment.

In cases requiring the valuation of ordinary annuities, income interests, and remainder and reversionary interests, the courts have consistently recognized the need to use the standard actuarial factors prescribed by the regulations. See Ithaca Trust v. United States, 279 U.S. 151 (1929).

However, the courts have recognized that the use of the standard actuarial factors is inappropriate in certain cases. Robinette v. Helvering, 318 U.S. 184 (1943) (reversionary interest with several interdependent contingencies); Stark v. United States, 477 F.2d 131 (8th Cir. 1973), cert. denied, 414 U.S. 975 (1973) (closely held stock that was not publicly traded and paid no dividends); O'Reilly v. Commissioner, 973 F.2d 1403 (8th Cir. 1992), rem'd, T.C.M. 1994-61 (disparity between .2 percent yield and 10 percent tables produced unrealistic and unreasonable result); and Commissioner v. Estate of Sternberger, 348 U.S. 187 (1955) (charitable bequest that would occur *30181* only if decedent's unmarried daughter died without issue surviving her and her mother). In addition, the courts have held that the standard actuarial factors cannot be used if the measuring life is terminally ill. Estate of McLendon v. Commissioner, T.C.M. 1993-459; Estate of Jennings v. Commissioner, 10 T.C. 323 (1948); and Estate of Denbigh v. Commissioner, 7 T.C. 387 (1946). See Rev. Rul. 80-80, 1980-1 C.B. 194, which provides that, in cases where the individual's death is imminent, the taxpayer may not use standard actuarial factors prescribed by the regulations. See also, Carter v. United States, 921 F.2d 63 (5th Cir. 1991), where the court refused to ascribe value to an income interest for purposes of the section 2013 credit where death of the measuring life was simultaneous with that of the decedent.

In Shapiro v. Commissioner, T.C. Memo 1993-483 (1993), the Tax Court allowed the taxpayer to improperly value an annuity with a standard one-life annuity actuarial factor from Table A in §20.2031-7(f) in a situation in which the annuity could have exhausted the fund from which the annuity was to be paid before the death of the annuitant. The Internal Revenue Service believes that the annuity factor that should have been used in this case is a special annuity factor for the right to receive annual payments for 4 years or until the prior death of the annuitant. See Rev. Rul. 77-454, 1977-2 C.B. 351. See also Moffett v. Commissioner, 269 F.2d 738 (4th Cir. 1959), and United States v. Dean, 224 f.2d 26 (1st Cir. 1955). Therefore, the Service will not follow the result in Shapiro.

Sections 1.7520-3(a), 20.7520-3(a), and 25.7520-3(a) set forth specific Code sections that are exempt from the valuation rules of section 7520. The proposed regulations contained in this notice describe other areas in which the valuation methodology applicable to standard and special section 7520 actuarial factors is not to be used. Generally, if the interest in property that is to be valued is not an ordinary annuity, income interest, or remainder interest, the standard annuity, income, and remainder factors in the tables of factors set forth in the regulations and IRS publications cannot be used. In some cases in which the standard factors from the regulations and publications tables cannot be used, a special factor may be computed by the taxpayer or by the Service upon the request of the taxpayer. In other cases where standard or special factors may not be used, the property interest may be valued using other valuation techniques. Depending upon the facts and circumstances, a property interest that cannot be valued using the standard or special section 7520 factors may have no ascertainable value. The proposed regulations establish two primary tests to determine whether the fair market value of the interest is computed by use of the standard section 7520 actuarial factors found in the regulations and IRS publications. The first test is whether the instrument of transfer provides the beneficiary with the degree of beneficial enjoyment that is consistent with the type of property interest that the standard valuation tables are designed to measure. In this regard, the rights of an annuity beneficiary must be adequately defined and, if the annuity is payable from a group of assets, the value of the assets must be sufficient to support all of the annuity payments. Similarly, the rights of an income beneficiary must be consistent with the rights of an outright owner of the property interest for the same period of time, and the rights of a remainder or reversionary beneficiary must be protected against invasion or erosion of the corpus.

The second test in the proposed regulations addresses the mortality component of the transferred interest. The Internal Revenue Service previously addressed this issue in Rev. Rul. 66-307, 1966-2 C.B. 429, and Rev. Rul 80-80. Rev. Rul. 66-307 set forth the rule that the value of a life or remainder interest would be determined by taking into account the health of the life tenant if it was known on the valuation date that the life tenant was afflicted with a fatal and incurable disease in its advanced stages and that the life tenant could not survive for more than a brief period of time. Rev. Rul. 80-80 clarified the "brief period" test in Rev. Rul. 66-307, and stated that the standard life actuarial factors are to be applied to value the interest unless death is clearly imminent. In the view of the Service, because the test for determining whether death is imminent set forth in Rev. Rul. 66-307 and Rev. Rul. 80-80 does not satisfactorily quantify the probability of death occurring within 1 year from the valuation date, this test may permit the use of standard actuarial factors in inappropriate situations. These regulations propose to explicitly quantify the applicable standard for purposes of applying this test.

Under the proposed regulations, if an individual who is a measuring life of the interest being transferred is known to be terminally ill, the mortality test of the proposed regulations is not satisfied and a special section 7502 actuarial factor, rather than a standard actuarial factor must be used in valuing the interest. Terminal illness is defined in the proposed regulations as an incurable illness or other deteriorating physical condition that would substantially reduce a person's life expectancy to the extent that there is at least a 50 percent probability that the individual will not survive for more than 1 year from the valuation date. Exceptions are made in the regulations for special situations under sections 2013, 2037, and 2042.

5

In the case of the simultaneous death of the transferor and an individual who is the measuring life of a property interest, the proposed regulations specifically preclude use of the standard factors in the tables to value that interest. This is pertinent in determining the previously taxed property credit under section 2013 and reaffirms the position of the Fifth Circuit in the Carter case.

Special Analyses

It has been determined that this notice of proposed rulemaking is not a significant regulatory action as defined in EO 12866. Therefore, a regulatory assessment is not required. It also has been determined that section 553(b) of the Administrative Procedure Act (5 U.S.C. chapter 5) and the Regulatory Flexibility Act (5 U.S.C. chapter 6) do not apply to these regulations, and, therefore, an initial Regulatory Flexibility Analysis is not required. Pursuant to section 7805(f) of the Internal Revenue Code, this notice of proposed rulemaking will be submitted to the Chief Counsel for Advocacy of the Small Business Administration for comment on its impact on small business.

Comments and Requests for a Public Hearing

Before these proposed regulations are adopted as final regulations, consideration will be given to any written comments that are submitted timely (preferably a signed original and eight copies) to the Internal Revenue Service. In particular, the Service invites comments on whether the proposed definition of terminal illness adequately deals with certain illnesses that are known to cause death in a short period of time but are often diagnosed more than 1 year before death. All comments will be available for public inspection and copying. A public hearing may be scheduled if requested in writing by a person that timely submits written comments. If a public hearing is scheduled, notice of the date, time, and place for the hearing will be published in the Federal Register.

*30182* Drafting Information

The principal author of these proposed regulations is William L. Blodgett, Office of Assistant Chief Counsel (Passthroughs and Special Industries), Internal Revenue Service. However, other personnel from the IRS and Treasury Department participated in their development.

6

<u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the foregoing PLAINTIFF'S ANSWER TO MOTION FOR SUMMARY JUDGMENT and PLAINTIFF'S BRIEF IN OPPOSITION OF UNITED STATES' MOTION FOR SUMMARY JUDGMENT were served on counsel for the defendant by mailing the same on November 5, 2004 in a postage paid wrapper addressed as follows:

Stephen T. Lyons
Tax Division
Department of Justice
P.O. Box 55
Ben Franklin Station
Washington, D.C. 20044

/s/ Edward DeFranceschi
EDWARD DeFRANCESCHI
Edward DeFranceschi, PC
6 Beacon Street, Suite 515
Boston, MA 02108-3802
(617) 723-6068

Dated: November 5, 2004