UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ESTATE OF JOHN R. DONOVAN, JR.,    )
Deceased, JOHN J. DONOVAN, SR.,    )    CIVIL ACTION NO.
Executor,                          )    04-10594-DPW
    Plaintiff,                     )
                   )
       v.                         )
                   )
UNITED STATES OF AMERICA,           )
    Defendant.                     )

MEMORANDUM AND ORDER
April 26, 2005

Plaintiff executor brings this tax refund action against the United States, contending that the future payments of lottery winnings to the estate of John R. Donovan were improperly valued by use of annuity tables provided by the Internal Revenue Code, 26 U.S.C. § 7520. Plaintiff argues that any valuation must include consideration of the non-marketability of the property interest at issue.

The question presented is one that may be answered as a question of law upon the stipulation of the parties.[1] For the reasons stated below, I reject the arguments of plaintiff and

_____

[1]Only the United States filed a motion for summary judgment. Plaintiff offered an opposition contending "[t]here is a genuine issue of material fact concerning the application of the section 7520 annuity tables to the decedent's interest in the remaining annual lottery payments." After hearing on the motion, I am satisfied the "genuine dispute," however, is one of law and not of fact and accordingly the matter can be resolved pursuant to Fed. R. Civ. P. 56.

grant the motion for summary judgment of the United States.

## I. BACKGROUND

The decedent, John R. Donovan, Jr., won the Massachusetts lottery on January 4, 1999.  On that date, Massachusetts issued him the first of twenty annual $100,000.00 checks.  Under Massachusetts law, he was not permitted to assign the winnings.  See Mass Gen. Laws ch. 10, § 28.  The January 4, 1999 check would be the only one the decedent would receive before his death on July 23, 1999.  His estate tax return, filed on April 9, 2000, showed no estate tax due.  The return listed the remaining nineteen payments as an asset valued by an appraiser at $367,482.00.

The Internal Revenue Service ("IRS") audited the return and calculated the asset as being worth $1,091,553.28 by reference to statutory annuity tables.[2]  This increase resulted in an additional $173,610.99 plus interest of tax liability, an amount the estate paid.  The estate filed a claim for refund of this amount with the IRS on July 31, 2001 and then, on May 1, 2002, executed a Waiver of Statutory Notice of Claim Disallowance.  The instant suit was brought on March 26, 2004.

## II.  VALUATION OF LOTTERY PAYMENTS FOR ESTATE TAX PURPOSES

The IRS imposes a tax "on the transfer of the taxable estate of every decedent who is a citizen or resident of the United

---

[2]The plaintiff does not contest the calculation by the IRS should the annuity tables be determined the appropriate source for valuation.

States."  26 U.S.C. § 2001(a).[3]  A decedent's estate, for tax
purposes, includes "all property, real or personal, tangible or
intangible."  26 U.S.C. § 2031(a).  Inclusion of property in an
estate is limited to the extent of the decedent's interest in
such property at the time of death.  26 U.S.C. § 2033.  The
parties do not dispute that the decedent's lottery winnings are
to be included in the estate.

Turning to the valuation of that property, however, the
disagreement between the parties materializes.  Pursuant to
Treasury Department regulations, "the value of every item of
property includible in a decedent's gross estate . . . is its
fair market value at the time of the decedent's death" and fair
market value is "the price at which the property would change
hands between a willing buyer and a willing seller . . . ."  26
C.F.R. § 20.2031-1(b).  Notably, the examples provided in the
relevant section of the regulations are property -- such as
corporate stock, farm equipment, and livestock -- difficult to
value without reference to a real or hypothetical market for the
items.

Federal regulations provide an alternative to this market
approach when calculating the value of private annuities.  "In
general, the value of a private annuity is determined by a factor

---

[3]The decedent's "taxable estate shall be determined by
deducting from the value of the gross estate the deductions
provided for in this part."  26 U.S.C. § 2051.

-3-

composed of an interest rate component and a mortality component. When the annuity is for a term of years rather than an interest for life, the mortality component is equal to the term of years." Cook v. Commissioner, 349 F.3d 850, 854 (5th Cir. 2003); see 26 U.S.C. § 7520; 26 C.F.R. § 20.7520-1(b). The threshold question in this case is whether the lottery prize here constitutes an annuity. Finding that it does, I turn to the fundamental contested issue, whether it is to be valued pursuant to the § 7520 tables.

### A.    Are the Lottery Ticket Proceeds An Annuity?

The few cases addressing the issue have all defined lottery winnings of the type at issue here as annuities, regardless of whether the ultimate determination was that the lottery winnings should be excepted from the § 7520 annuity tables in specific contexts. See, e.g., Cook, 349 F.3d at 855 ("The lottery prize, an unsecured right to a series of fixed payments for a certain term with virtually no risk of default, falls within the definition of a private annuity, valuable under the § 7520 tables."); Shackleford v. United States, 262 F.3d 1028, 1031 (9th Cir. 2001) ("Non-commercial annuities, such as the lottery payments at issue, are valued pursuant to table promulgated by the Secretary of Treasury, except when another regulatory provision applies."); Gribauskas v. Commissioner, 116 T.C. 142, 154 (2001) ("[W]e conclude that decedent's lottery winnings

-4-

constitute an annuity within the meaning of section 7520."),

rev'd and remanded, 342 F.3d 85, 87 n.1 (2d Cir. 2003)

(referencing the Tax Court's holding "that the prize constituted

an annuity" and observing that "the estate does not challenge

that ruling on appeal").  These prior cases, however, addressed

estates of decedents who died prior to the subsequently adopted

current tax regulations.

The current definition, put in effect as of December 14,

1995, provides broadly that:  "An ordinary annuity interest is

the right to receive a fixed dollar amount at the end of each

year during one or more measuring lives or for some other defined

period."  26 C.F.R. 20.7520-3(b)(1)(i)(A).  The plaintiff

contends that the lottery winnings are not an "ordinary annuity,"

but rather are a "restricted beneficial interest" excepted from

the § 7520 tables by 26 C.F.R. § 20.7520-3(b)(1)(ii).  That

regulation provides in pertinent part that

> A restricted beneficial interest is an annuity, income,
> remainder, or reversionary interest that is subject to
> any contingency, power, or other restriction, whether
> the restriction is provided for by the terms of the
> trust, will, or other governing instrument or is caused
> by other circumstances.

26 C.F.R. § 20.7520-3(b)(1)(ii).  The plaintiff relies on the

"other restriction" language, contending that the term is

extraordinarily broad.  In light of the caselaw's treatment of

the provisions and a reading of the remainder of the regulatory

section, I find that argument unpersuasive.

I concur with the Tax Court in Gribauskas, which in discussing the regulations (concededly not directly applicable in that case because the valuation date there was prior to December 14, 1995), addressed this argument by noting that, after providing for the beneficial interest exception,

> [t]he regulation then goes on to cite two examples where its provisions would be applicable, one of which involves a power to invade corpus that could diminish the income interest to be valued and the other of which addresses an annuity payment measured by the life of one with a terminal illness.

> In light of the examples given . . . the intent of this provision was to formalize the existing case law regarding the validity of the tabular assumptions in situations where facts show a clear risk that the payee will not receive the anticipated return.  Thus, a restriction within the meaning of the regulation is one which jeopardizes receipt of the payment stream, not one which merely impacts on the ability of the payee to dispose of his or her right thereto.  We cannot realistically accede to the view that an agreement for fixed payments backed by the full faith and credit of a State government raises any such concerns. Accordingly, even if applicable,[4] this regulation would not aid the estate.

Gribauskas, 116 T.C. at 164-65 (citations omitted).

Restrictions that limited a decedent's assurance in receiving the full payments potentially might warrant diverging from the annuity tables through the regulation's exception for

---

[4]And here, of course, the regulation is applicable because the valuation date is post-December 14, 1995.

-6-

"restricted beneficial interests."  That is not the posture

presented in this case.  The "restriction" on marketability of

lottery earnings is not one which justifies characterizing the

proceeds as a "restricted beneficial interest" under the

regulations.  Consequently, I find the plaintiff's lottery income

stream to be an annuity presumptively governed by 26 U.S.C. §

7520.

**B.    Does Application of the § 7520 Tables Produce an Unrealistic and Unreasonable Result?**

My finding that the property interest here is an annuity

does not inexorably lead to mechanical application of the § 7520

tables.  The tables must be used "unless it is shown that the

result is so unrealistic and unreasonable that either some

modification in the prescribed method should be made, or complete

departure from the method should be taken, and a more reasonable

and realistic means of determining value is available."  Weller

v. Commissioner, 38 T.C. 790, 803 (1962) (citations omitted); see

Cook, 349 F.3d at 854; Shackleford, 262 F.3d at 1031; O'Reilly v.

Commissioner, 973 F.2d 1403, 1407 (8th Cir. 1992).  In this

connection "[t]he party challenging applicability of the tables

has the substantial burden of demonstrating that the tables

produce an unreasonable result."  Cook, 349 F.3d at 854-55

(citing O'Reilly, 973 F.2d at 1409).  The plaintiff here has

failed to meet this burden.

The First Circuit has not spoken on whether the non-

-7-

marketability of lottery winnings warrants valuation outside the annuity table scheme. Among the few courts taking up the issue, a split has developed, with the Second and Ninth Circuits holding that non-marketability should be factored into the valuation of such interests, Gribauskas v. Commissioner, 342 F.3d 85 (2d Cir. 2003); Shackleford, 262 F.3d 1028, and the Fifth Circuit and the Tax Court finding that to do so would not be appropriate. Cook, 349 F.3d 850; Gribauskas, 116 T.C. 142.[5]

The approach adopted by the Second and Ninth Circuits strikes me as premised on an insufficiently nuanced application of general principles of property valuation which fails to give adequate appreciation to the practical usefulness of valuation tables.[6] Both courts put great emphasis on the principle that

---

[5]I again note that these cases took up the question under pre-December 14, 1995 regulations and consequently did not directly address the applicability of the § 20.7520-3(b) exceptions to the annuity tables. The provisions of that section, as described above, further support the position taken by the Tax Court and the Fifth Circuit, making clear that an interest should be excepted only when the assumptions underlying the annuity tables are inapplicable, i.e., when one might seriously question that the decedent would have received the entire payments or, in the event of a life interest, it is established that the interest holder had a terminal illness that would warrant diversion from the mortality tables.

[6]A similar approach was taken in a dissenting opinion to Cook. See Cook v. Commissioner, 349 F.3d 850, 857-60 (5th Cir. 2003) (Davis, J., dissenting). The dissent contended that factors relevant to the market value of an annuity must be considered and characterizes the majority opinion as "agree[ing] with the Commissioner that the annuity's non-marketability can not be considered." Id. at 858. My reading of Cook and my analysis here is based not on a finding that relevant factors may not be considered, but rather that marketability is not material

the "right to transfer is 'one of the most essential sticks in
the bundle of rights that are commonly characterized as
property.'" Shackleford, 262 F.3d at 1032 (citation omitted).
And further, that "an asset subject to marketability restrictions
is, as a rule, worth less than an identical item that is not so
burdened." Gribauskas, 342 F.3d at 88 (citing Shackleford, 262
F.3d at 1032).

Such basic economic tenets are, as a general matter, helpful
to valuing property, but that is because most property has little
ascertainable value (for tax purposes) apart from some reference
to what a willing (whether real or hypothetical) buyer would pay
for it.  For instance, without reference to a real or
hypothetical market, it would be difficult to determine what
value a tractor might have for purposes of imposing a tax.  And,
if one hypothesizes two tractors, identical but for a limitation
on the sale of one, the general principles relied upon by the
Shackleford and Gribauskas courts are eminently reasonable.

But that is not the context presented by the property here.
As recognized in the reasoning applied by the Fifth Circuit in
Cook, "[t]he result produced by the valuation tables is not

---

to calculating the value of lottery winnings for estate tax
purposes.  The Cook majority clearly considered, as have I,
marketability and found it has no bearing on calculating the
worth to the decedent of the annual payment of lottery winnings.
The Cook dissent, along with the Second and Ninth Circuit
opinions, ignores the question of value to whom, by assuming that
there is but one overarching value of an asset such as the
annuity in question.

unreasonable because the factor accounting for the disparity
between the expert and the table valuation, i.e., a marketability
discount, is not properly applied to the lottery prize." <u>Cook</u>,
349 F.3d at 856.  The <u>Cook</u> court noted that non-marketability "is
an assumption underlying the annuity tables" and that "the cases
in which courts have seen fit to depart from the valuation tables
have involved facts that disproved assumptions underlying the
tables." <u>Id.</u>  Departures in such instances are reasonable.  But
when dealing with lottery ticket proceeds, departure from the
tables would not be appropriate, particularly when the departure
is "based on the premise that the right to alienate is
fundamental to the valuation of <u>any</u> property." <u>Id.</u> (emphasis in
original).

      An instance such as that presented here -- where the
plaintiff has a right to receive a steady stream of income from a
party that is highly unlikely to go insolvent -- aligns itself
comfortably with the assumptions underlying the annuity tables.
While I heed the Ninth Circuit's call to consider "economic
reality," I do not view economic reality as monolithic.  It is
contextual.  While non-marketability is often a relevant factor
when valuing an asset for estate tax purposes, it is immaterial
as to the annuity here in light of the purpose underlying the
valuation of such an estate.

      Value here must be tethered to the "accumulated wealth" of
the decedent, <u>Shackleford v. United States</u>, 1998 U.S. Dist. LEXIS

-10-

12442, at *13 (E.D. Cal., July 29, 1998), aff'd, 262 F.3d 1028
(9th Cir. 2001), and not to a property interest's worth in the
hands of another party or in a hypothetical market.  The
unassignable nature of the lottery winnings does affect a value
of the property, simply not the relevant one.  The relevant value
is that held by the decedent at the time of his death.  See 26
U.S.C. § 2033 ("The value of the gross estate shall include the
value of all property to the extent of the interest therein of
the decedent at the time of his death.") (emphasis added).  At
the time of the decedent's death, he held an enforceable right to
receive set annual payments from a most reliable source.

        For purposes of valuing most property (e.g. tractors), the
willing buyer/seller approach is appropriate, because it is
somewhat symmetrical.  The property interest the buyer will hold
upon purchasing the property will be identical (or nearly
identical) to that held by the seller.  Therefore, the amount a
buyer would be willing to pay for the interest tells us a great
deal about the amount of wealth held by the seller at the time of
death.  In the lottery ticket setting, on the other hand, the
interest a buyer would acquire would be of a very different sort
than what the seller held.  See Gribauskas, 116 T.C. at 164
("Decedent died owning an enforceable right to a series of
payments.  Yet any purchaser buys only an unenforceable right and
so is necessarily valuing a different species of interest.").
The plaintiff, in arguing that the interest was worth less than

-11-

the annuity table would generate, actually highlights this point:

> A potential buyer of the payments . . . lacked the
> ability to perfect a security interest in the future
> payments.  In addition, a potential buyer of the
> payments ran the chance that he would be unable to
> collect future payments if the lottery prize winner
> became mentally ill, incompetent, or died.  A potential
> buyer had to factor in these risks when determining how
> much money he was willing to pay for the future
> payments.

(Pl.'s Brief Opp. Summ. J. at 7.)  Those risks would be relevant
here if the issue were valuation of the estate of a <u>buyer</u> of
lottery winnings.

    In this case, a real or hypothetical purchase price tells us
very little about the accumulated wealth of the decedent as
wrapped up in a property interest such as a right to future
lottery payments.[7]  <u>See</u> <u>Gribauskas</u>, 116 T.C. at 164 ("What a

---

[7]I note that if I were to apply the willing buyer/willing
seller approach here, the result would not necessarily change.
Here, the plaintiff assumes that what is valued is the right to
the payments going forward.  But, alternative markets can be
hypothesized that more accurately reflect the value of the
payments from the perspective of the estate, recognizing that the
estate holds an interest with virtually no risk.  The property to
be valued could just as easily be described as the money itself,
once received, thereby eliminating the risk to any hypothetical
buyer.  In essence, it would be 19 separate markets for $100,000,
not one for the right to received 19 annual payments.
    Hypothesizing that the first payment arrived today, one
would calculate the market value of $100,000 in cash at present.
Assuming there is no restriction on the seller to transfer the
cash immediately upon receipt, the answer is $100,000 -- a
rational seller would not accept less than $100,000, nor would a
rational buyer pay more.  Then, one would determine the market
value of the lump sum of $100,000 a year from now.  Progressing
into the future -- valuing each payment individually, as opposed
to as a right to future payments -- one would still reach the
result and embrace the assumptions reflected by the annuity
tables.  For the reasons stated in the main text, however, there

LOTTO prize might be worth to such a speculator hardly reflects its value in the hands of a legitimate owner.").

The interest here is, at its core, income, a property interest manifested through a contractual right with the state to payments of a liquidated amount.  The unassignable nature of that right does not lessen its worth to the decedent's estate in any way significant for tax purposes, or, more precisely, in a way not already contemplated by the annuity tables.  To be sure limitations on transferability may lessen its value; the limitations simply do not lessen its value below what a calculation consistent with the annuity tables already provides. Surely if one could receive a lump sum payment for a freely assignable right to the future payments, it potentially would have greater worth than it does as an unassignable right to payments which may not be accelerated.  But these factors do not make the interest less valuable (at least to the decedent) than the sum of the guaranteed payments discounted for the time value of money as embraced by the annuity tables.[8]

As a final note, the decisions to factor non-marketability

_____

is no need to go through such a process.  The statutory scheme has done so through the § 7520 tables without requiring such a separate exercise.

[8]It is this aspect of the Shackleford and Gribauskas analysis -- where the courts do not tease out value to whom and as compared to what, and where relevant versus irrelevant factors for purposes of tax liability are not delineated with specificity -- that the non-marketability discount approach to lottery winnings most clearly falters.

-13-

into the valuation of lottery winnings -- most explicitly in the

case of <u>Shackleford</u> -- seem to be influenced by the fact that an

estate is immediately responsible for the entire tax liability on

the valuation amount "without any concomitant source of revenue

to fund the payment." <u>Shackleford</u>, 262 F.3d 1028, 1030 (9th Cir.

2001). It is not entirely clear how the non-marketability

discount can properly address such an equitable concern, beyond

simply reducing the scale of the liability. The estate, even

after a non-marketability discount, is always responsible for

taxes on that entire amount. It could be argued, I suppose, that

if one is to pay the entire tax amount immediately, the relevant

value of the property should be the amount one could receive

immediately from a third party for the property. Such a

conclusion, however, is inconsistent with both the assumptions of

§ 7520 and confuses the legally material issue of what in fact

the payments are worth to the decedent at the time the tax is

assessed with the practical problem presented when cash flow is

restricted.[9]

    In any event, plaintiff's argument here does not rest on the

premise that the tax is inequitable because of its timing. In

fact, the plaintiff paid the tax, belying any assertion that the

_____

[9]Indeed, such a conclusion would be a repudiation of the
long-standing holding "that when valuation must be computed by
actuarial methods, all facts, except for those necessary to the
table must be ignored." Wendy C. Gerzog, <u>The Lottery Cases and</u>
Ithaca Trust, 101 Tax Notes 289, 289 (Oct. 13, 2003).

-14-

estate would be incapable of amassing the requisite funds. Moreover, there is no indication that the IRS does not provide methods of paying a tax liability taking such considerations into account.

Consequently, I "agree that the right to alienate is necessary to value a capital asset; however, [I] think it unreasonable to apply a non-marketability discount when the asset to be valued is the right, independent of market forces, to receive a certain amount of money annually for a certain term." Cook, 349 F.3d at 856.

### III. CONCLUSION

For the reasons set forth more fully above, the motion for summary judgment of defendant United States is hereby GRANTED.

/s/ Douglas P. Woodlock

_____

DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE